## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. HODA ELEMARY,

        Plaintiff,

        v.

PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR.,

        Defendants.

NO: 1:07-cv-00654-RCL

Hon. Royce C. Lamberth

Oral Argument Requested

### MOTION OF CERTAIN DEFENDANTS TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), Defendants B.L. Harbert International, LLC ("HILLC"); Harbert International Establishment, Inc. ("HIE, Inc."); Bill L. Harbert, Sr. ("Mr. Harbert, Sr."); and Billy Harbert, Jr. ("Mr. Harbert, Jr.") (collectively, "Movants") hereby respectfully move to transfer this action to the Northern District of Alabama. In support of this Motion, Movants submit the accompanying Memorandum of Law and [Proposed] Order.

Dated: June 27, 2007

Respectfully submitted,

  /s/ Roger S. Goldman
Roger S. Goldman
(D.C. Bar No. 333294)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: roger.goldman@lw.com

Of Counsel:
Matthew H. Lembke
   (*pro hac vice* pending)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Tel: (205) 521-8000
Fax: (205) 521-8800
Email: mlembke@bradleyarant.com

Attorneys for Defendants B.L. Harbert
International, LLC, Harbert International
Establishment, Inc., Bill L. Harbert, Sr., and
Billy Harbert, Jr.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. HODA ELEMARY, | NO: 1:07-cv-00654-RCL |
| Plaintiff, | |
| v. | Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., | Oral Argument Requested |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE MOTION OF CERTAIN DEFENDANTS TO TRANSFER VENUE**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTION ............................................................................................................1

PROCEDURAL BACKGROUND....................................................................................2

ARGUMENT ...................................................................................................................5

I.      The Northern District of Alabama Would Be a Proper Venue for Plaintiff's Claims. ................................................................................................................6

II.     Balancing the Relevant Factors Leaves No Doubt that Transfer is Warranted and Would Place this Action in a Significantly More Convenient District............................7

        A.    Private Interest Factors ......................................................................8

              1.    Plaintiff's Choice of Forum ..........................................................8

              2.    Movants' Preferred Forum..........................................................9

              3.    Location Where The Claim Arose ...............................................9

              4.    Convenience Of The Witnesses And Parties ............................10

              5.    Ease Of Access To Sources Of Proof .......................................14

        B.    Public Interest Factors....................................................................15

              1.    The Transferee's Familiarity With The Governing Law ...........15

              2.    The Relative Congestion Of The Courts....................................17

              3.    Local Interest In Deciding Local Controversies At Home ........17

CONCLUSION................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Brannen v. National Railroad Passenger Corp.*,
    403 F. Supp. 2d 89 (D.D.C. 2005) ......................................................................9

*Buesgens v. Coates*,
    435 F. Supp. 2d 1 (D.D.C. 2006),
    *aff'd*, No. 06-5314, 07-5011, 2007 U.S. App. LEXIS 7363
    (D.C. Cir. Mar. 27, 2007). ................................................................................10

*California. Farm Bureau Federation v. Badgley*,
    No. 02-2328 (RCL), 2005 WL 1532718 (D.D.C. June 29, 2005) ....................17

*Continental Grain Co. v. Barge FBL-585*,
    364 U.S. 19 (1960)............................................................................................17

*Devaughn v. Inphonic, Inc.*,
    403 F. Supp. 2d 68 (D.D.C. 2005) .....................................................................8

*District of Columbia v. Coleman*,
    667 A.2d 811 (D.C. 1995) ................................................................................15

*England v. ITT Thompson Industrial, Inc.*,
    856 F.2d 1518 (11th Cir. 1988) ........................................................................14

*FC Investment Group LC v. Lichtenstein*,
    441 F. Supp. 2d 3 (D.D.C. 2006).......................................................................17

*Fidelity & Deposit Co. of Md. v. Advance Industrial Construction, LLC*,
    No. 05 C 6390, 2006 WL 752943 (N.D. Ill. Mar. 21, 2006) ...........................14

*Gundle Lining Construction Corp. v. Fireman's Fund Insurance Co.*,
    844 F. Supp. 1163 (S.D. Tex. 1994) .................................................................10

*Hope v. Otis Elevator Co.*,
    389 F. Supp. 2d 1235 (E.D. Cal. 2005)..............................................................10

*In re Eastern District Repetitive Stress Injury Litigation*,
    850 F. Supp. 188 (E.D.N.Y. 1994) ...................................................................10

*In re Scott*,
    709 F.2d 717 (D.C. Cir. 1983) ...........................................................................6

*Kotan v. Pizza Outlet, Inc.*,
    400 F. Supp. 2d 44 (D.D.C. 2005) .................................................................6, 14

*Lagor v. Eli Lilly & Co.*,
    No. 06-1967, 2007 WL 1748888 (D.D.C. June 18, 2007)..................................9

*Lentz v. Eli Lilly & Co.*,
    464 F. Supp. 2d 35 (D.D.C. 2006) .....................................................................7

**Page(s)**

*National Wildlife Federation v. Harvey*,
    437 F. Supp. 2d 42 (D.D.C. 2006) ...................................................................8

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) .........................................................................................8

*SEC v. Savoy Industrial*,
    587 F.2d 1149 (D.C. Cir. 1978) .....................................................................17

*Savage v. Bioport, Inc.*,
    460 F. Supp. 2d 55 (D.D.C. 2006) ...................................................................7

*Shaw v. Marriott International, Inc.*,
    474 F. Supp. 2d 141 (D.D.C. 2007) ...............................................................15

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) .........................................................................................6

*Washkoviak v. Student Loan Marketing Association*,
    900 A.2d 168 (D.C. 2006) .............................................................................15

*Williams v. First Government Mortgage & Investors Corp.*,
    176 F.3d 497 (D.C. Cir. 1999) .......................................................................15

*Zeta-Jones v. Spice House*,
    372 F. Supp. 2d 568 (C.D. Cal. 2005) ...........................................................14

### STATUTES

28 U.S.C. § 1391(a)(2) ...............................................................................................6

28 U.S.C. § 1404(a) ...................................................................................................6

### OTHER AUTHORITY

17 JAMES WM. MOORE, ET AL.,
    MOORE'S FEDERAL PRACTICE § 111.13[1][f][iii] (3d ed. 2006) ......................10

Federal Court Management Statistics,
    U.S. District Court–Judicial Caseload Profiles (2006),
        *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl ...........................17

Defendants B.L. Harbert International, LLC ("HILLC"); Harbert International Establishment, Inc. ("HIE, Inc.");[1] Bill L. Harbert, Sr. ("Mr. Harbert, Sr."); and Billy Harbert, Jr. ("Mr. Harbert, Jr.") (collectively, "Movants") respectfully submit this Memorandum of Law in support of their Motion to Transfer Venue.

## INTRODUCTION

Movants request that this case be transferred to the United States District Court for the Northern District of Alabama. This case should be transferred because of that District's substantial connection to potential witnesses, Plaintiff's claims, and relevant records. By contrast, the District of Columbia has virtually no connection to any of the Defendants, Plaintiff's claims, the witnesses, or records.

Another federal court has already determined that the Northern District of Alabama is the proper venue for claims based on Plaintiff's allegations against Movants. Plaintiff previously filed an action against Movants and numerous other individuals and entities asserting claims nearly identical to those in this new lawsuit. Because the majority of events on which Plaintiff based her claims took place in Alabama, the court granted a motion filed by several defendants case to transfer that action to the United States District Court for the Northern District of Alabama. After the transfer, Plaintiff quickly dismissed her complaint. Because the issue of whether transfer is appropriate is virtually identical in this case, the California court's order transferring the first case and the doctrine of collateral estoppel dictate that this action be transferred for the same reasons.

---

[1] HIE, Inc. is sometimes referred to by Plaintiff as "Bilhar." On page vii of her "Incorporated Schedule" filed along with her Complaint, Plaintiff makes clear that she is referring to HIE, Inc. when she refers to "Bilhar." Defendants will use "HIE, Inc." to refer to this entity for the remainder of this Memorandum of Law.

## PROCEDURAL BACKGROUND

As briefly discussed above, this is not the first action in which Plaintiff Elemary has brought claims against Movants.  Nor is it the only pending lawsuit by her against Mr. Harbert, Sr., Mr. Harbert, Jr., and related individuals and companies.  In a spree of repetitive and overlapping litigation, Plaintiff has now filed *four* lawsuits surrounding her purported termination as a "Case Manager" for Mr. Harbert, Sr.  Although this is the first time Plaintiff has appeared as a party before this Court, she has made nearly identical claims against Mr. Harbert, Sr., Mr. Harbert, Jr., and other individuals and entities in at least two other actions, spinning a bewildering tale filled with wild claims of irrelevant self-importance, Compl. ¶ 4 ("A majority of the United States Senators . . .have credited Plaintiff with playing a pivotal role in lobbying Congress to support Operation Desert Storm . . . ."), and outlandish accusations.  *See id.* ¶ 20 (accusing Defendants of seeking "a rogue Federal Bureau of Investigation agent to . . . 'terminate' [Plaintiff] for a lofty price . . . .").  (Indeed, in recent correspondence, Plaintiff's counsel has gone so far as to assert that Plaintiff "used her influence and contacts to secure a ruling from the District Court that dismissed Mr. Harbert from the False Claims Case.")[2]  These lawsuits are part of Plaintiff's continuing effort to harass Defendants with nonstop frivolous litigation.

In July 2006, Plaintiff filed in the Central District of California a nearly identical complaint, raising nearly identical claims, against Mr. Harbert, Jr. and twenty-one other defendants—including co-Defendants Mr. Harbert, Sr., HILLC, Wachovia Bank, N.A., Sabbia Aktiengessellschaft, and Harbert International Establishment, Inc., and no fewer than nine attorneys and law firms.  *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed July

---

[2] Letter from Brian J. Jacobs to Yasmin N. Best et al. (June 14, 2007) (attached as Exhibit 1 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

28, 2006).  Because the majority of events on which Plaintiff based her claims took place in

Alabama, Mr. Harbert, Jr. and several other defendants in that suit moved to transfer the case to the

United States District Court for the Northern District of Alabama.  The court granted the motion on

February 28, 2007.  Compl. ¶ 5.[3]  By that time, Plaintiff had filed a *second* lawsuit in that court,

seeking liquidated damages purportedly triggered by the filing of the motion to transfer and

personal jurisdiction challenges by Mr. Harbert, Jr. and other defendants.[4]

Refusing to accept the Central District of California's determination that her claims

properly belong in Alabama, Plaintiff quickly dismissed the complaint after her initial suit was

transferred.  Compl. ¶ 5.[5]  She then filed this action—Plaintiff's *third* lawsuit—in this Court

against Mr. Harbert, Jr., Mr. Harbert, Sr., and several Harbert-related entities she had previously

joined as defendants in the now-dismissed suit.[6]  The seven-count Complaint in this case contains

nearly identical claims and allegations as Plaintiff's original (and now-dismissed) complaint.[7]

Apparently not satisfied with having previously filed three lawsuits, Plaintiff filed a

*fourth* on April 27, 2007 in the Superior Court of the State of California for the County of Los

---

[3] *See* Civil Minutes, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. Feb. 28, 2007) (attached as Exhibit 2 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[4] *See* Complaint, *Elemary v. Harbert*, No. SA CV07-0217 RGK (PJWx) (C.D. Cal. filed Feb. 20, 2007) (attached as Exhibit 3 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[5] Notice of Voluntary Dismissal, *Elemary v. Harbert*, Civil Action No. 07-AR-0457-5 (filed March 20, 2007) (attached as Exhibit 11 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[6] Plaintiff also for the first time joined Philipp Holzmann A.G. as a co-Defendant in this case.

[7] *Compare* Complaint for Damages, *Elemary v. Philip Holzmann A.G.*, No. 1:07-cv-654 (D.D.C. filed Apr. 10, 2007), *with* First Amended Complaint for Damages, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed Oct. 30, 2006) (attached as Exhibit 4 to Certain Defendants' Request for Judicial notice, filed concurrently herewith).

Angeles.[8]  Instead of naming the same defendants whom she named in her prior complaints, however, Plaintiff this time brought suit against only three named defendants—Mr. Harbert, Jr., Mr. Harbert, Sr., and Jerry L. Steering—and twenty-five other "Doe" defendants.  On June 5, 2007, Mr. Harbert, Jr. and Mr. Harbert, Sr. removed the case to the Central District of California, on the grounds that Defendant Steering was fraudulently joined and the court has diversity jurisdiction.  Mr. Harbert, Jr. and Mr. Harbert, Sr. have filed motions to dismiss and to transfer that case to the Northern District of Alabama, which are currently pending before the court.

Plaintiff was still not through filing lawsuits against the Harbert family.  Plaintiff's *fifth* complaint was filed on June 8, 2007 in the Superior Court of the State of California for the County of Los Angeles.[9]  In that action, Plaintiff brought suit only against Mr. Harbert, Sr., alleging this time that she and Mr. Harbert, Sr. have been secretly married for the last fifteen years and demanding money for various alleged slights by Mr. Harbert, Sr.  That case remains pending in California state court.

Plaintiff's actions in the eleven months that have elapsed since she first filed suit against Mr. Harbert, Sr. and Mr. Harbert, Jr. demonstrate a cavalier disregard for the judicial process and a singular obsession with avoiding proper venue for her claims.  She has now filed four actions in two federal courts and one action in state court related to her alleged claims.  This abuse of the legal system, which has imposed substantial costs on the various Defendants, should not be countenanced or allowed to continue.  To the extent that Plaintiff has valid claims, which Defendants deny, they obviously should be litigated in a single forum.  As Judge Klausner in the

---

[8] *See* Complaint, *Elemary v. Steering*, No. BC370218 (L.A. Super. Ct. filed Apr. 27, 2007) (attached as Exhibit 5 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[9] Complaint for Damages, *Elemary v. Harbert*, No. SC094189 (L.A. Super. Ct. filed June 8, 2007) (attached as Exhibit 12 to Certain Defendants' Request for Judicial Notice).

Central District of California already concluded, the appropriate forum is the Northern District of Alabama. This Court should curb Plaintiff's abuse of the courts and grant Defendants' Motion to Transfer.

## ARGUMENT

In this action, Plaintiff, a resident of the Central District of California, brings various claims against a total of seven defendants, none of whom is a District of Columbia resident. Of those Defendants, the only two individual Defendants are residents of the Northern District of Alabama, while two companies have their principal place of business in that District. Two other Defendants are companies based in Europe. The remaining corporate Defendant is a national banking association having its designated main office in the State of North Carolina. *See* Compl. ¶ 1.

Plaintiff's Complaint asserts five state law causes of action and two claims for violation of the federal Racketeer Influenced and Corrupt Organizations Act. The majority of Plaintiff's state law claims sound in tort, although she alleges a breach of contract by one of the Defendants. Virtually all of her claims relate to the termination of her status as independent contractor by Mr. Harbert, Sr., which she purports occurred because of wrongful actions by an Alabama resident.

Plaintiff's claims, if not dismissed by this Court pursuant to motions to dismiss filed contemporaneously herewith by Movants, should be transferred to the Northern District of Alabama for the convenience of the necessary witnesses in this case and to prevent the waste of time and money. Plaintiff's claims are based on her relationship with individuals and businesses located in the Northern District of Alabama, and this District has no significant connection to those claims other than Plaintiff's residence here. All of Plaintiff's claims should be heard in the Northern District of Alabama, instead of in several different actions in several different courts.

Pursuant to the federal statute governing transfer of venue, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of this statute is "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotation marks omitted).

As a threshold matter, § 1404(a) is applicable only to cases that are initially filed in a proper venue. *See, e.g.*, *Kotan v. Pizza Outlet, Inc.*, 400 F. Supp. 2d 44, 48 (D.D.C. 2005) (citing *In re Scott*, 709 F.2d 717, 719–20 (D.C. Cir. 1983)). As noted in the Motions to Dismiss filed by certain of the Movants, Movants do not believe this District to be a proper venue for any of Plaintiff's claims in this action, and accordingly Movants argue that those claims should be dismissed. In the event that the Court finds that venue is proper as to some or all claims against any of them, however, Movants request that the action be transferred to the Northern District of Alabama.

## I.      THE NORTHERN DISTRICT OF ALABAMA WOULD BE A PROPER VENUE FOR PLAINTIFF'S CLAIMS.

Venue for this case is proper in the Northern District of Alabama. Under Section 1404(a), a court may only transfer an action to a court where the plaintiff could have brought her claims in the first place. Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(2). A substantial portion of Plaintiff's allegations concern activities that purportedly occurred in Alabama. *See, e.g.*, Compl. ¶¶ 10–14, 23, 26(a), 37, 39, 43, 45, 49, 71–77, 80, 91–103. Furthermore, those Defendants who are not Alabama residents have significant contacts with Alabama that are related to Plaintiff's claims in this action. Therefore, personal jurisdiction over

all of the Defendants would exist in the Northern District of Alabama were this case to be transferred. *See, e.g.*, *Savage v. Bioport, Inc.*, 460 F. Supp. 2d 55, 61 (D.D.C. 2006) (noting that "[s]pecific jurisdiction requires that a claim 'arise out of' or 'be related to' the [defendant's] minimum contacts with the forum state"). Had this case been brought in the Northern District of Alabama, that court's subject matter jurisdiction would also be satisfied, as it is in this Court, by the diversity of citizenship between Plaintiff and the Defendants and because the amount in controversy exceeds $75,000. *See, e.g.*, Compl. ¶¶ 43–44 (listing various specific damages amounts greater than $75,000 sought by Plaintiff).

Because the Northern District of Alabama would have jurisdiction over this action and Defendants and would be a proper venue, Plaintiff could have brought her action in that court. Accordingly, the threshold requirement for transfer under § 1404(a) is satisfied.

## II.    BALANCING THE RELEVANT FACTORS LEAVES NO DOUBT THAT TRANSFER IS WARRANTED AND WOULD PLACE THIS ACTION IN A SIGNIFICANTLY MORE CONVENIENT DISTRICT.

After establishing that another district would be a proper venue for the plaintiff's claims, an analysis of a number of factors should be conducted to determine whether transfer is appropriate in the particular case before the court. Those factors include public and private public interests:

> The relevant private interest factors include, but are not limited to: (1) plaintiffs' privilege of choosing the forum; (2) defendant's preferred forum; (3) location where the claim arose; (4) convenience of the parties; (5) convenience of witnesses, but only to the extent that witnesses may be unavailable for trial in one of the fora; and (6) ease of access to sources of proof. Public interest considerations include: (1) the transferee's familiarity with the governing law; (2) the relative congestion of the courts of the transferor and potential transferee; and (3) the local interest in deciding local controversies at home.

*Lentz v. Eli Lilly & Co.*, 464 F. Supp. 2d 35, 37 (D.D.C. 2006). These factors strongly favor transfer of this action.

## A.    Private Interest Factors

### 1.    Plaintiff's Choice of Forum

Typically, a plaintiff's choice of forum is entitled to significant weight.  However, "courts afford substantially less deference to that choice where the plaintiff is not a resident of that forum or where the claims lack substantial connections to that forum."  *Devaughn v. Inphonic, Inc.*, 403 F. Supp. 2d 68, 72 (D.D.C. 2005) (internal quotation marks omitted); *accord Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981)).

Here, Plaintiff is not a resident of this forum, but rather is a resident of California. Compl. ¶ 1.  Furthermore, the District of Columbia lacks significant contacts with the activities alleged in her Complaint.  Plaintiff's claims arise out of her termination of her status as an independent contractor by an Alabama resident.  No significant activities that form the basis of Plaintiff's claims in this case occurred in this District.[10]  Accordingly, "the deference given to the plaintiff's choice of forum is diminished" because this District "has no meaningful ties to the controversy and no particular interest in the parties or subject matter."  *Nat'l Wildlife Fed'n v. Harvey*, 437 F. Supp. 2d 42, 46 (D.D.C. 2006) (internal quotation marks omitted).  Indeed, Plaintiff's own actions reveal that she herself does not put much stock in her claims' connection to this District: she has filed Complaints based on essentially the same facts three times, and this action is the only time she has filed it in this District.[11]

---

[10] Although Plaintiff alleges that she was employed to manage litigation that was ongoing in this district, her claims in this case all arise out of activities allegedly undertaken by Defendants in Alabama as part of a purported conspiracy against her.  *See, e.g.*, Compl. ¶¶ 12, 53, 71.

[11] *Compare* Complaint for Damages, *Elemary v. Philip Holzmann A.G.*, No. 1:07-cv-654 (D.D.C. filed Apr. 10, 2007), *with* First Amended Complaint for Damages, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed Oct. 30, 2006) (attached as Exhibit 4 to Certain Defendants' Request for Judicial notice, filed concurrently herewith), *and* Complaint, *Elemary v. Steering*, No. BC370218 (L.A. Super. Ct. filed Apr. 27, 2007) (attached as Exhibit 5 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

Because Plaintiff is not a resident of her chosen forum and that forum has little or no relevance to any of the claims at issue in this case, this factor, which virtually always favors a plaintiff opposing transfer, should be given little weight here.

### 2.  **Movants' Preferred Forum**

Whereas Plaintiff's choice of forum for her allegations in this case varies from lawsuit to lawsuit, Movants have consistently asserted that the Northern District of Alabama was the only proper venue for Plaintiff's claims.  Because Movants' preferred forum has significant ties to Plaintiff's allegations, this factor weighs in favor of transfer.  *See, e.g.*, *Lagor v. Eli Lilly & Co.*, No. 06-1967 (JDB), 2007 WL 1748888, at *3 (D.D.C. June 18, 2007) (finding that transfer was appropriate in part because "there [wa]s a substantial nexus between defendants' forum choice and the facts of this case"); *accord Brannen v. Nat'l R.R. Passenger Corp.*, 403 F. Supp. 2d 89, 93 (D.D.C. 2005) (citing cases).  As the Central District of California has already found in Plaintiff's initial case there based on virtually identical allegations, "a substantial portion of Plaintiff's allegations concern activities that purportedly occurred in the Northern District of Alabama."[12]  Accordingly, this factor strongly supports transfer of this case to the Northern District of Alabama.

### 3.  **Location Where The Claim Arose**

As noted immediately above, a federal court has already examined allegations by Plaintiff virtually identical to those in her Complaint in this case and determined that her claims were based on alleged activities in the Northern District of Alabama.  Therefore, this factor also strongly supports transfer of this case to that jurisdiction.

---

[12] *See* Civil Minutes at 4, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. Feb. 28, 2007) (attached as Exhibit 2 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

4. **Convenience Of The Witnesses And Parties**

The chosen venue's convenience for the witnesses is often called "the most important factor in determining whether to transfer because of the inconvenience of the forum." *Hope v. Otis Elevator Co.*, 389 F. Supp. 2d 1235, 1243 (E.D. Cal. 2005); *see also In re E. Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 194 (E.D.N.Y. 1994); *Gundle Lining Constr. Corp. v. Fireman's Fund Ins. Co.*, 844 F. Supp. 1163, 1166 (S.D. Tex. 1994); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.13[1][f][iii] (3d ed. 2006). This factor significantly favors transfer of this action.

If many of the witnesses with knowledge relevant to the plaintiff's allegations are located in a particular district, then transfer of the action is justified on convenience grounds. *See Buesgens v. Coates*, 435 F. Supp. 2d 1, 5 (D.D.C. 2006), *aff'd*, No. 06-5314, 07-5011, 2007 U.S. App. LEXIS 7363 (D.C. Cir. Mar. 27, 2007). Although it is obviously premature for Movants to have developed any plan for which witnesses they will call in this action, Plaintiff references a number of non-parties in her Complaint. A significantly greater number of those non-parties identified by Plaintiff reside in the Northern District of Alabama than anywhere else.

The identified non-parties who reside in the Northern District, and the aspects of this case regarding which they may testify, include the following: **1)** Earl Hilliard ("Mr. Hilliard"), a former U.S. Congressman, who Plaintiff asserts was the victim of an attempted murder at the direction of Mr. Harbert, Jr. (Compl. ¶¶ 7, 22(c), 53, 76-77, 80; Declaration of Billy Harbert, Jr. ("Harbert Decl.") ¶ 18); **2)** Evangeline Hoover, executive assistant to Mr. Harbert, Sr., who Plaintiff alleges was part of a conspiracy to forge letters in Mr. Harbert, Sr.'s name and to terminate Plaintiff (Compl. ¶ 12; Harbert Decl. ¶ 19); **3)** Billy Bryan, the "rogue Federal Bureau of Investigation agent" referred to by Plaintiff who allegedly offered to kill Plaintiff for a fee

10

(Compl. ¶ 20);[13] **4)** Anne Moulton, who is Mr. Harbert, Sr.'s daughter and the sister of Mr.

Harbert, Jr., and who Plaintiff states had input regarding the management of her father's

litigation (Compl. ¶ 43; Harbert Decl. ¶ 13); **5)** Elizabeth Harbert Cornay, who is Mr. Harbert,

Sr.'s daughter and the sister of Mr. Harbert, Jr., and who Plaintiff states had input regarding the

management of her father's litigation (Compl. ¶ 43; Harbert Decl. ¶ 13); **6)** Alan Hall, the Senior

Vice President, Chief Financial Officer, and Secretary of HILLC, who Plaintiff states had input

regarding the management of Mr. Harbert, Sr.'s litigation (Compl. ¶ 43; Harbert Decl. ¶ 20); **7)**

Henry Frohsin, an attorney who Plaintiff accuses of assisting Mr. Harbert, Jr. to the detriment of

Mr. Harbert, Sr. (Compl. ¶ 74; Harbert Decl. ¶ 21); **8)** Rusty Moulton, brother-in-law of Mr.

Harbert, Jr., who Plaintiff alleges connected Mr. Harbert, Jr. with the man Plaintiff accuses of the

attempted murder of Mr. Hilliard (Compl. ¶ 76; Harbert Decl. ¶ 22); **9)** members of the

Birmingham police force, who Plaintiff accuses of failing to investigate the car accident in which

Mr. Hilliard was allegedly involved (Compl. ¶ 77); and **10)** any Alabama notaries public who

notarized a relevant document and reside in the Northern District of Alabama. *See, e.g.*,

Incorporated Schedule to Plaintiff's Compl. at p. iv (discussing involvement of Alabama notary

public Carla Faile).

Plaintiff also identifies in her Complaint the following non-parties who are not residents

of the Northern District of Alabama: **1)** Robert Southby, who Plaintiff asserts is a resident of

Dothan, Alabama (located in the Middle District of Alabama), who Plaintiff accuses of

attempting to murder Mr. Hilliard and insinuates that said attempt came at the behest of Mr.

Harbert, Jr. (Compl. ¶¶ 76-77); **2)** William M. Sharp, Sr., a resident of the State of Florida, a tax

---

[13] First Amended Complaint for Damages ¶ 54, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed Oct. 30, 2006) (naming Billy Bryan as FBI agent that is subject of this allegation) (attached as Exhibit 4 to Certain Defendants' Request for Judicial notice, filed concurrently herewith).

attorney whom Plaintiff accuses of, among other things, conspiring to have her terminated (Compl. ¶¶ 11, 43; Harbert Decl. ¶ 23); **3)** Bryan Lavine, an Atlanta, Georgia attorney accused of, *inter alia*, threatening Plaintiff's life and who Plaintiff claims has "admitted in evidence" the conspiracy Plaintiff asserts in this action (Compl. ¶¶ 10, 20, 23, 53, 71-72, 74-75; Harbert Decl. ¶ 24); **4)** June Ann Sauntry, another Atlanta, Georgia attorney who Plaintiff claims has "admitted in evidence" the conspiracy Plaintiff asserts in this action (Compl. ¶ 23; Harbert Decl. ¶ 25); and **5)** Dr. Alexander Tischler, a California physician who allegedly treated Plaintiff for injuries suffered in the alleged assault against her (Compl. ¶ 78).

These non-parties all reside in the Northern District of Alabama or live much closer to that district than to this District. There are only three persons mentioned in the Complaint who *may* reside in this District, and two of those witnesses would provide the same testimony on the same subject: **1)** Robert J. Dole, a former U.S. Senator who now works in Washington, D.C. and who Plaintiff references on several occasions in her Complaint as having knowledge of the parties' alleged actions (Compl. ¶¶ 14, 18, 25); **2)** Carolyn G. Mark, a Department of Justice ("DOJ") attorney in Washington, D.C. who handled part of Mr. Harbert, Sr.'s litigation (Compl. ¶¶ 2, 25, 36); and **3)** Keith Morgan, another DOJ attorney in Washington, D.C. who handled part of Mr. Harbert, Sr.'s litigation (Compl. ¶ 2). Plaintiff does not assert that Mr. Morgan's testimony would include anything beyond Ms. Mark's testimony regarding Plaintiff's presence in the District of Columbia. Compl. ¶ 2.

Because many of the witnesses reside in the Northern District of Alabama, and the others reside much closer to that district than this District, the Court should grant Movant's motion to transfer under § 1404(a) for the convenience of the witnesses, as that is the stated purpose of that

statute. Even if witnesses located in distant districts could be convinced to travel to this District to testify, the burdens on them would be significant in terms of time and expense.

Plaintiff is in a much better position to bear that burden than Movants and certain of the witnesses. Plaintiff is an experienced world traveler, as demonstrated by the references to her work in the Middle East in her Complaint, and has spent much time in this district, across the country from her home, over the past two decades. *See, e.g.*, Compl. ¶¶ 2, 4, 15-16, 26(c), 29. She has been to Birmingham, Alabama on numerous occasions to meet with Mr. Harbert, Sr. Harbert Decl. ¶ 17. Conversely, Mr. Harbert, Sr. is elderly with significant health problems, and now rarely if ever travels. *See* Harbert Decl. ¶¶ 12, 14. Furthermore, Evangeline Hoover ("Ms. Hoover"), Mr. Harbert, Sr.'s executive assistant for the past fifty-six years, is also elderly and as a result chooses not to travel. Declaration of Evangeline Hoover ("Hoover Decl."), ¶¶ 3-4. Ms. Hoover, a resident of the Northern District of Alabama, would not be willing to travel to the District of Columbia to serve as a witness in this case. *Id.* at ¶ 5. However, her testimony would be crucial, as Plaintiff alleges that Ms. Hoover was solely responsible for actually forging Mr. Harbert, Sr.'s signature on the letters that Plaintiff contends are forgeries. Compl. ¶ 12. The relevance of Ms. Hoover to Plaintiff's claims and the underlying allegations is illustrated by the fact that Plaintiff named Ms. Hoover as a defendant in the initial lawsuit filed in California and again in her Complaint for Liquidated Damages filed in federal court in California.[14]

The difficulty or unwillingness on the part of Ms. Hoover to travel to this District to testify further support Movants' motion to transfer this action. A court should take note of medical obstacles to travel when considering a motion to transfer venue on convenience grounds.

---

[14] First Amended Complaint for Damages, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed Oct. 30, 2006) (attached as Exhibit 4 to Certain Defendants' Request for Judicial notice, filed concurrently herewith). Plaintiff dismissed Ms. Hoover, along with Alan Hall, as defendants in the liquidated damages action earlier this month.

*See, e.g.*, *Kotan*, 400 F. Supp. 2d at 50 (giving little weight to plaintiff's claims of inconvenience in traveling to transferee district because plaintiff "ha[d] not demonstrated any great hardship such as inability to travel, significant expense, or medical disability that would adversely affect his ability to litigate" in transferee district); *England v. ITT Thompson Indus., Inc.* 856 F.2d 1518, 1520 (11th Cir. 1988) (denying motion to transfer in part because physically disabled plaintiff would have difficulty traveling to new venue); *Fidelity & Deposit Co. of Md. v. Advance Indus. Constr., LLC*, No. 05 C 6390, 2006 WL 752943, at *3 (N.D. Ill. Mar. 21, 2006) (finding transfer appropriate where "one of the Defendants[] is elderly and has medical conditions that would make it difficult for him to travel"); *Zeta-Jones v. Spice House*, 372 F. Supp. 2d 568, 576 (C.D. Cal. 2005) (granting motion to transfer venue in part because "traveling to California [from Nevada] may pose a greater inconvenience to [the president of a corporate defendant] because of his medical condition").

On balance, this factor favors transfer for the convenience of the large majority of the potential witnesses who do not reside in this District.  One party and at least one important witness essentially cannot travel at all, and requiring the parties and witnesses to travel, en masse, to the District of Columbia would result in precisely the sort of inefficiencies and inconvenience that federal law seeks to prevent.

## 5.    Ease Of Access To Sources Of Proof

Because very few, if any, of the events and occurrences that are the subject of this action took place in the District of Columbia, there is essentially no evidence that would be easier to access in this District than in the Northern District of Alabama.  Because many of the events took place in the latter district, and many of the Defendants are located there and maintain their business records there (Harbert Decl. ¶ 16), a substantially larger portion of the evidence relative

to this action is found in the Northern District of Alabama.    This factor is yet another reason to transfer this action to Alabama.

Five of the six private interest factors strongly support transfer of this action to the Northern District of Alabama.  The importance of the only one lending any support to Plaintiff, her choice of this forum, is greatly diminished because she is not a resident of the District of Columbia and this District has little, if any, connection to Plaintiff's claims.  Accordingly, this claim should be transferred to the Northern District of Alabama.

### B.    Public Interest Factors

#### 1.    The Transferee's Familiarity With The Governing Law

In determining what law to apply in a diversity case such as this one, "the law of the forum state supplies the applicable choice-of-law standard."  *Shaw v. Marriott Int'l, Inc.*, 474 F. Supp. 2d 141, 147 (D.D.C. 2007) (quoting *Williams v. First Gov't Mortgage & Investors Corp.*, 176 F.3d 497, 499 (D.C. Cir. 1999)).   The District of Columbia "employ[s] 'a modified governmental interests analysis which seeks to identify the jurisdiction with the most significant relationship to the dispute."  *Shaw,* 474 F. Supp. 2d at 147-48 (quoting *Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168, 180 (D.C. 2006)).  This analysis is described as follows:

> [W]e evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review. . . .  As part of this analysis, we also consider the four factors enumerated in the Restatement (Second) of Conflict of Laws § 145:
>
> a) the place where the injury occurred;
>
> b) the place where the conduct causing the injury occurred;
>
> c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
>
> d) the place where the relationship is centered.

*Washkoviak*, 900 A.2d at 180 (quoting *District of Columbia v. Coleman*, 667 A.2d 811, 816

(D.C. 1995)).  Under this test, as explained below, Alabama law should apply to Plaintiff's claims, and accordingly the Northern District of Alabama will be quite familiar with the governing law.

The four factors listed above demonstrate that Alabama clearly has a much more significant relationship with this dispute than the District of Columbia.  A federal court has concluded that Plaintiff's alleged injury occurred, if at all, in the State of California.[15]  In addition, the alleged breach of contract for which Plaintiff seeks damages was a purported contract with Mr. Harbert, Sr., a resident of Alabama, whereas there are no allegations that Plaintiff suffered any injury in the District of Columbia.

The alleged cause of Plaintiff's injuries was a purported conspiracy among a number of residents of Alabama to terminate Plaintiff.  *See, e.g.*, Compl. ¶ 12.  Plaintiff does not claim that her alleged injuries were caused by any action undertaken in the District of Columbia.  This factor firmly demonstrates that Alabama's relationship with this dispute is the most significant. The next factor, the residence of the parties, also strongly favors Alabama.  Four of the seven Defendants are Alabama residents or corporations with their principal place of business there, whereas no party resides in the District of Columbia.  Finally, to the extent there is any relationship between Plaintiff and any Defendant, it allegedly arose out of a contract with Alabama resident.

These factors conclusively demonstrate that Alabama has a far more significant relationship with this dispute than the District of Columbia.  Accordingly, under the District of Columbia's conflict-of-law test, Alabama law would govern Plaintiff's claims, and the Northern

---

[15] *See* Civil Minutes at 3, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. Feb. 28, 2007) (attached as Exhibit 2 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

District of Alabama would be very familiar with the law it would need to apply as transferee state. This factor favors transfer of this action.

### 2.    The Relative Congestion Of The Courts

This factor considers the "relative docket congestion and potential speed of resolution" *vis a vis* the transferor and potential transferee courts. *FC Inv. Group LC v. Lichtenstein*, 441 F. Supp. 2d 3, 14 (D.D.C. 2006) (quoting *SEC v. Savoy Indus., Inc.*, 587 F.2d 1149, 1156 (D.C. Cir. 1978)). A review of federal court management statistics indicates that, in 2006, the Northern District of Alabama had more pending cases per judge than the District of Columbia, but that civil cases filed in the Northern District of Alabama proceeded to disposition somewhat more quickly. *See* Fed. Ct. Mgmt. Statistics, U.S. District Court—Judicial Caseload Profiles (2006), *available at* http://www.uscourts.gov/cgi-bin/cmsd2006.pl. This factor is likely a draw.

### 3.    Local Interest In Deciding Local Controversies At Home

Movants concede that this case does not constitute a controversy that is local to Alabama, as Plaintiff is a resident of the State of California and residents of Florida and Georgia will be important witnesses. However, many cases that are transferred pursuant to 1404(a) involve parties from different states; indeed, several of the factors considered above would be irrelevant were a matter strictly "local." This factor should be given little weight.

On balance, the private interest factors weigh heavily in favor of transferring this case to the Northern District of Alabama, while the public interest factors somewhat less strongly favor transfer. Accordingly, there is no valid reason to decline to transfer this case to the Northern District of Alabama.[16]

---

[16] Transfer may ultimately serve another goal, in that it may avoid duplicative litigation regarding Plaintiff's allegations. In the very similar lawsuit filed by Plaintiff against them that has been removed to the Central District of California, Mr. Harbert, Sr. and Mr. Harbert, Jr. have also filed a motion to transfer venue to the Northern District of Alabama. If that motion were to

## CONCLUSION

For the foregoing reasons, this Court should transfer this case to the Northern District of

Alabama.

Dated: June 27, 2007                        Respectfully submitted,

                                             /s/ Roger S. Goldman
                                            Roger S. Goldman
                                            (D.C. Bar No. 333294)
                                            LATHAM & WATKINS LLP
                                            555 11th Street, N.W.
                                            Suite 1000
                                            Washington, D.C. 20004
                                            Tel: (202) 637-2200
                                            Fax: (202) 637-2201
                                            Email: roger.goldman@lw.com

                                            Of Counsel:
                                            Matthew H. Lembke
                                                (*pro hac vice* pending)
                                            BRADLEY ARANT ROSE & WHITE LLP
                                            One Federal Place
                                            1819 Fifth Avenue North
                                            Birmingham, AL 35203
                                            Tel: (205) 521-8000
                                            Fax: (205) 521-8800
                                            Email: mlembke@bradleyarant.com

                                            Attorneys for Defendants B.L. Harbert
                                            International, LLC, Harbert International
                                            Establishment, Inc., Bill L. Harbert, Sr., and
                                            Billy Harbert, Jr.

---

be granted, transfer of this case to that district would permit consolidation of Plaintiff's claim and would avoid the "waste[] of time, energy and money that § 1404(a) was designed to prevent." *Cal. Farm Bureau Fed'n v. Badgley*, No. 02-2328 (RCL), 2005 WL 1532718, at *1 (D.D.C. June 29, 2005) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)).

## CERTIFICATE OF SERVICE

I, Roger Goldman, hereby certify on this 27th day of June 2007, that I filed the foregoing {Motion to Transfer Venue, Memorandum of Law and Proposed Order} via the Court's CM/ECF system, which will send a notice of electronic filing to the following CM/ECF users:

**Mark Butler Bierbower**
mbierbower@hunton.com

I further certify that the foregoing documents were sent via first class mail, postage pre-paid to the following non CM/ECF user:

**HODA ELEMARY**
21 Le Conte
Laguna Niguel, CA 92677

/s/ Roger Goldman
Roger Goldman

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DR. HODA ELEMARY,<br><br>Plaintiff,<br><br>v.<br><br>PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR.,<br><br>Defendants. | NO: 1:07-cv-00654-RCL<br><br>Hon. Royce C. Lamberth |

## DECLARATION OF EVANGELINE HOOVER

I, EVANGELINE HOOVER, Defendant in the above-styled action, declare as follows:

1.     I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.     I am a resident of the State of Alabama.

3.     I am Bill L. Harbert, Sr.'s executive assistant. I have held this position for fifty-six years.

4.     I am eighty-three (83) years of age. With the exception of a trip to Washington, D.C. in response to a court subpoena in 2007, I have not traveled outside of Alabama in the past five (5) years. I have limited mobility due to, among other things, a hip replacement surgery approximately eight (8) years ago.

5.     I do not plan on attempting to travel outside Alabama in the future. It would be extremely inconvenient, if not impossible, for me to travel to the District of Columbia to

participate in legal proceedings in this action.  If requested to travel to the District of Columbia to testify, I would not be willing to do so.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on June 27, 2007.

_Evangeline Hoover_
Evangeline Hoover

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. HODA ELEMARY,

          Plaintiff,

          v.

PHILIPP HOLZMANN A.G.; WACHOVIA BANK,
N.A.; B.L. HARBERT INTERNATIONAL, LLC;
SABBIA AKTIENGESELLSCHAFT; HARBERT
INTERNATIONAL ESTABLISHMENT, INC.; BILL
L. HARBERT, SR.; AND BILLY HARBERT, JR.,

          Defendants.

NO: 1:07-cv-00654-RCL

Hon. Royce C. Lamberth

## DECLARATION OF BILLY HARBERT, JR.

I, BILLY HARBERT, JR., Defendant in the above-styled action, declare as follows:

1.      I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.      I am a resident of the State of Alabama.

3.      I do not own property in the District of Columbia.

4.      I travel to the District of Columbia an average of once a year to meet with officials from the State Department. The purpose of these trips is to discuss construction projects related to overseas embassies in which Bill L. Harbert International, LLC ("HILLC"), of which I am the President, is involved.

5.      I do not conduct any personal business in the District of Columbia. I do not personally employ any person who lives in the District of Columbia, nor do I hold any licenses issued by the District of Columbia or any department or official thereof.

6.     I have never seen, spoken to, or taken any other action, on my own behalf or while acting for HILLC, with regards to Hoda Elemary, Plaintiff in this action, while in the District of Columbia.

7.     HILLC was formed in 1999. It is a Delaware limited liability corporation having its principal place of business is in Birmingham, Alabama.

8.     HILLC has never had any operations in the District of Columbia, nor has it ever been authorized to do business in the District of Columbia.

9.     Harbert International Establishment, Inc. ("HIE, Inc.") was also formed in 1999. It is an Alabama corporation with its principal place of business in Birmingham, Alabama.

10.    HIE, Inc. has never conducted any business anywhere. It is a "shelf" corporation that is maintained solely for purposes of preserving that corporate name.

11.    HIE has never had any operations or employees in the District of Columbia, and has never been authorized to do business in the District of Columbia.

12.    My father, Bill L. Harbert, Sr., a co-Defendant in this action, is eighty-three (83) years old and a resident of Alabama. He has been diagnosed as suffering from dementia. In connection with litigation in the United States District Court for the District of Columbia, testimony concerning his medical condition was recently submitted. A copy of that testimony is attached hereto as Exhibit A. In response to that testimony, the court ruled that my father would not be required to give testimony in that action.

13.    My father has executed a durable power of attorney. My two sisters (Anne Moulton and Elizabeth Cornay) and I are authorized to act jointly as his attorneys-in-fact, and we will collectively manage his defense in this litigation. My two sisters reside in Birmingham, Alabama.

2

14.    My father has not left the State of Alabama in over eighteen months except to travel to a beach home in Florida that is less than seventy-five (75) miles beyond Alabama's border. He cannot travel without assistance, and, even with assistance, travel is difficult for him physically and emotionally.

15.    I have reviewed the allegations made in Plaintiff's Amended Complaint pertaining to a "hitman" that I allegedly dispatched to harm her on April 14, 2005. I did not dispatch any such "hitman" in April 2005 or at any other time, and the allegations in the Amended Complaint of my involvement concerning the individual who purportedly visited Plaintiff's home and assaulted her on April 14, 2005, are false. I have no knowledge concerning any physical attack or assault on Plaintiff or resulting injuries to her that occurred in April 2005 or any other time. I have never hired or otherwise directed any person to physically harm, injure, or murder Plaintiff, nor am I aware of any other person ever having hired or otherwise directed anyone to do so. I also have never hired or otherwise directed anyone to visit Plaintiff's home for any purpose.

16.    Any records pertaining to Hoda Elemary's employment as an independent contractor for Bill L. Harbert, Sr. are kept and maintained by Evangeline Hoover, my father's secretary, in Birmingham, Alabama. The business records of corporations related to that employment are maintained in Alabama, as are the business records of HILLC. My father and I also maintain our business records in Alabama.

17.    Hoda Elemary has visited Birmingham, Alabama to meet with Bill L. Harbert, Sr. on several occasions in the last five years.

18.    Earl Hilliard resides in Birmingham, Alabama.

19.    Evangeline Hoover resides in Birmingham, Alabama.

3

20.    Alan Hall resides in Birmingham, Alabama.

21.    Henry Frohsin resides in Birmingham, Alabama.

22.    Rusty Moulton is my brother-in-law and resides in Birmingham, Alabama.

23.    William M. Sharp, Sr. resides in the State of Florida.

24.    Bryan Lavine resides in Atlanta, Georgia.

25.    June Ann Sauntry resides in Atlanta, Georgia.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on June 27, 2007.


_Bill L. Harbert_
_____
Billy L. Harbert, Jr.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. HODA ELEMARY, | NO: 1:07-cv-00654-RCL |
| Plaintiff, | |
| v. | Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., | |
| Defendants. | |

## [PROPOSED] ORDER

The Matter came before the Court on _____, 2007 on the Motion of Certain Defendants to Transfer Venue.  The Court being fully advised in the premises, IT IS HEREBY ORDERED that Defendants' Motion is GRANTED.

The Court FURTHER ORDERS that this Matter be, and hereby is, TRANSFERRED to the United States District Court for the Northern District of Alabama.

IT IS SO ORDERED.

ENTERED:

By the Court:

Date:_____                    _____
                                          Hon. Royce C. Lamberth
                                          United States District Judge

cc:

Roger S. Goldman
(D.C. Bar No. 333294)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

Matthew H. Lembke
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677