**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. HODA ELEMARY, | NO: 1:07-cv-00654-RCL |
| Plaintiff, | |
| v. | Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., | Oral Argument Requested |
| Defendants. | |

**MOTION OF DEFENDANTS BILLY HARBERT, JR. AND
B.L. HARBERT INTERNATIONAL, LLC TO DISMISS**

Pursuant to Rules 12(b)(2), 12(b)(3), and 12(b)(6) of the Federal Rules of Civil

Procedure, Defendants Billy Harbert, Jr. ("Mr. Harbert, Jr.") and B.L. Harbert International, LLC

("HILLC") hereby respectfully move to dismiss Plaintiff's Complaint for lack of personal

jurisdiction, for improper venue, and for failure to state a claim upon which relief can be granted

against Mr. Harbert, Jr. or HILLC.  In support of this Motion, Mr. Harbert, Jr. and HILLC

submit the accompanying Memorandum of Law and [Proposed] Order.

Dated:  June 27, 2007                    Respectfully submitted,


    _/s/ Roger S. Goldman_____
    Roger S. Goldman
    (D.C. Bar No. 333294)
    LATHAM & WATKINS LLP
    555 11th Street, N.W.
    Suite 1000
    Washington, D.C. 20004
    Tel: (202) 637-2200
    Fax: (202) 637-2201
    Email: roger.goldman@lw.com

Of Counsel:
Matthew H. Lembke
    (*pro hac vice* pending)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Tel: (205) 521-8000
Fax: (205) 521-8800
Email: mlembke@bradleyarant.com

Attorneys for Defendants Billy Harbert, Jr. and
B.L. Harbert International, LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DR. HODA ELEMARY,

        Plaintiff,

    v.

PHILIPP HOLZMANN A.G.; WACHOVIA BANK,
N.A.; B.L. HARBERT INTERNATIONAL, LLC;
SABBIA AKTIENGESELLSCHAFT; HARBERT
INTERNATIONAL ESTABLISHMENT, INC.; BILL
L. HARBERT, SR.; AND BILLY HARBERT, JR.,

        Defendants.

NO: 1:07-cv-00654-RCL

Hon. Royce C. Lamberth

Oral Argument Requested

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE MOTION OF DEFENDANTS BILLY HARBERT, JR.**
**AND B.L. HARBERT INTERNATIONAL, LLC  TO DISMISS**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ........................................................................................................................1

PROCEDURAL BACKGROUND ...............................................................................................1

ARGUMENT ...............................................................................................................................5

I.     PERSONAL JURISDICTION OVER MR. HARBERT, JR. OR HILLC IS NOT
       PRESENT. ........................................................................................................................5

       A.     Neither Mr. Harbert, Jr. Nor HILLC Is Subject To General Jurisdiction In
              The District Of Columbia. .....................................................................................6

       B.     The Exercise Of Specific Jurisdiction Would Be Inappropriate. ............................7

              1.     Due Process ................................................................................................8

              2.     The District of Columbia Long-Arm Jurisdictional Statute ......................9

                     a.     Plaintiff's Alleged Injuries Did Not Occur In This District. .........10
                     b.     Mr. Harbert, Jr. And HILLC's Lack Of Relevant Activities
                            In The Forum State ........................................................................11

II.    PLAINTIFF CANNOT SHOW THAT THE DISTRICT OF COLUMBIA IS A
       PROPER VENUE UNDER 28 U.S.C. § 1391. .................................................................12

III.   THE COMPLAINT ALSO FAILS TO STATE A CLAIM UPON WHICH
       RELIEF CAN BE GRANTED AGAINST MR. HARBERT, JR. OR HILLC. ................14

       A.     Standard of Review ..............................................................................................14

       B.     Plaintiff Fails to State a Claim for Interference with Prospective Economic
              Advantage Against Mr. Harbert, Jr. or HILLC ....................................................15

       C.     Plaintiff Fails to State a Claim for Suppression of Facts (Fraud). .........................18

              1.     Plaintiff's Fraud Claim Is Time-Barred. ...................................................19

              2.     The Complaint Fails To Plead Fraud With Sufficient Particularity. .........22

       D.     Plaintiff's Civil RICO Claim Should Be Dismissed ............................................26

              1.     Plaintiff Has Failed To Allege Standing Under RICO .............................27

              2.     Plaintiff Has Failed To Allege Facts Satisfying The Necessary
                     Elements Of Her RICO Claim ..................................................................29

CONCLUSION ..........................................................................................................................31

# TABLE OF AUTHORITIES

## CASES

*Anderson v. USAA Cas. Ins. Co.*,
   221 F.R.D. 250 (D.D.C. 2004) ........................................................................................ 23

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
   383 F. Supp. 2d 32, 45 (D.D.C. 2005) ....................................................................... 17, 18

*Bell Atlantic Corp. v. Twombly*,
   127 S. Ct. 1955 (2007) ............................................................................................. 14, 15

*Bender v. Rocky Mountain Drilling Assocs.*,
   648 F. Supp. 330 (D.D.C. 1986) ................................................................................ 23, 25

*Bennett v. Kiggins*,
   377 A.2d 57 (D.C.1977) ........................................................................................... 23, 26

*Bergen v. Rothschild*,
   648 F. Supp. 582 (D.D.C. 1986) ................................................................................ 19, 20

*Browning v. Clinton*,
   No. 98-1991 WBB, 2001 U.S. Dist. LEXIS 24537 (D.D.C. Feb. 12, 2001) .......................... 26

*Chrisman v. Hill Home Dev., Inc.*,
   978 S.W.2d 535 (Tenn. 1998) ......................................................................................... 23

*Crane v. Carr*,
   814 F.2d 758 (D.C. Cir. 1987) ................................................................................. 6, 9, 10

*Ctr. for Law & Educ. v. Dep't of Educ.*,
   396 F.3d 1152 (D.C. Cir. 2005) ..................................................................................... 14

*Dayco Corp. v. Goodyear Tire & Rubber Co.*,
   523 F.2d 389 (6th Cir. 1975) ......................................................................................... 20

*Dickinson v. Land Developers Constr. Co., Inc.*,
   882 So. 2d 291 (Ala. 2003) ............................................................................................ 19

*Elemary v. Harbert*,
   No. CV06-4723 RGK (PJWx) (C.D. Cal. filed July 28, 2006) ......................................... 2, 3

*Elemary v. Philip Holzmann A.G.*,
   No. 1:07-cv-654 (D.D.C. filed Apr. 10, 2007) ..................................................................... 3

*Elemary v. Steering*,
   No. BC370218 (L.A. Super. Ct. filed Apr. 27, 2007) ............................................................ 3

*Fitzgerald v. Seamans*,
   553 F.2d 220 (D.C. Cir. 1977) ....................................................................................... 20

*Gandal v. Telemundo Group, Inc.*,
   997 F.2d 1561 (D.C. Cir. 1993) ................................................................................. 9

*Genetic Sys. Corp. v. Abbott Labs.*,
   691 F. Supp. 407 (D.D.C. 1988) ............................................................. 15, 16, 17, 18

*Glenn v. First Nat. Bank in Grand Junction*,
   868 F.2d 368 (10th Cir. 1989) ............................................................................... 28

*Goodman v. Kennedy*,
   18 Cal. 3d 335 (1976) ............................................................................................ 25

*Gorman v. Ameritrade Holding Corp.*,
   293 F.3d 506 (D.C. Cir. 2002) ............................................................................. 6, 7

*Gross v. Lowder Realty Better Homes & Gardens*,
   494 So. 2d 590 (Ala. 1986)…………………………………………………..… ......... 16

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
   199 F.3d 1343 (D.C. Cir. 2000) ................................................................. 6, 7, 8, 9

*Gussin v. Shockey*,
   725 F. Supp. 271 (D. Md. 1989) ........................................................................... 29

*Gustave-Schmidt v. Chao*,
   226 F. Supp. 2d 191 (D.C. 2002) ......................................................................... 14

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) ................................................................................................ 6

*Hicks v. Ass'n of Am. Medical Colleges*, No. 07-00123(ESH),
   2007 WL 1577841 (D.D.C.) (D.D.C. May 31, 2007) .......................................... 14

*Houlahan v. World Wide Ass'n of Specialty Programs and Schools*,
   No. 04-01161 (HHK), 2006 WL 2844190 (D.D.C. Sept. 29, 2006) ................ 15, 17

*Hoyte v. Yum! Brands, Inc.*,
   2007 WL 1302590 (D.D.C. May 2, 2007) ............................................................ 22

*In re: Vitamins Antitrust Litig.*,
   2001 WL 849928 (D.D.C. Apr. 11, 2001) ............................................................ 23

*Int'l Shoe v. Washington*,
   326 U.S. 310 (1945) ................................................................................................ 6

*Keck v. Dryvit Systems, Inc.*,
   830 So. 2d 1 (Ala. 2002) ....................................................................................... 22

*King v. Kitchen Magic Inc.*,
   391 A.2d 1184 (D.C. App. 1978) .......................................................................... 19

*Kline v. Williams*,
   2006 WL 2265414 (D.D.C. Aug. 8, 2006) ........................................................... 10

*Knight v. Furlow,*
    553 A.2d 1232 (D.C. 1989) ........................................................................................ 19

*Kopff v. Battaglia,*
    425 F. Supp. 2d 76, 80-81 (D.D.C. 2006) ................................................... passim

*Kowal v. MCI Commc'ns Corp., .,*
    16 F.3d 1271 (D.C. Cir. 1994) ............................................................................... 15

*Kuwait Airways Corp. v. Am. Sec. Bank, N.A.,*
    890 F.2d 456 (D.C.Cir.1989) ................................................................................. 19

*Lerner v. Fleet Bank, N.A.,*
    318 F.3d 113 (2d Cir. 2003) ................................................................................... 27

*Magpali v. Farmers Group, Inc.,*
    47 Cal. App. 4th 471 (1996) ................................................................................... 25

*Manax v. McNamara,*
    842 F.2d 808 (5th Cir. 1988) ............................................................................... 30

*Meehan v. United States Office Prods. Co.,*
    *251 F. Supp. 2d 77 (D.D.C. 2003)* ....................................................................... 23

*Miller v. Holzmann,*
    No. Civ. A. 95-1231 RCL JMF, 2006 WL 568722 (D. D.C. March 9, 2006) ...................... 20

*Miranda v. Ponce Fed. Bank,*
    948 F.2d 41 (1st Cir. 1991) ................................................................... 23, 26, 27

*Modaressi v. Vedadi,*
    441 F. Supp. 2d 51 (D.D.C. 2006) ........................................................................ 12

*Multimin USA, Inc. v. Walco International, Inc.,*
    2006 WL 1046964 (E.D. Cal. Apr. 11, 2006) ...................................................... 12

*Naartex Consulting Corp. v. Watt,*
    722 F.2d 779 (D.C. Cir. 1983) ............................................................................... 12

*Nix v. Hoke,*
    62 F. Supp. 2d 110 (D.D.C. 1999) .......................................................... 27, 28, 29

*Perkins v. Nash,*
    697 F. Supp. 527 (D.D.C. 1988) ........................................................................... 20

*Potter v. First Real Estate Co., Inc.,*
    844 So. 2d 540 (Ala. 2002) ................................................................................... 19

*Reves v. Ernst & Young,*
    507 U.S. 170 (1993) ............................................................................................... 30

*Richards v. Duke Univ.,*
    480 F. Supp. 2d 222 .................................................................................. 11, 19, 22

*Scheck v. Gen. Elec. Corp.*,
   No. 91-1594, 1992 WL 13219 (D.D.C. Jan. 7, 1992) ..................................................... 27, 29

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) .................................................................................................... 27, 29

*Shekoyan v. Sibley Int'l Corp.*,
   217 F.Supp.2d 59 (D.D.C.2002) .......................................................................................... 22

*Sisso v. Islamic Republic of Iran*,
   448 F. Supp. 2d 76 (D.D.C. 2006) ....................................................................................... 12

*Smith v. Brown & Williamson Tobacco Corp.*,
   3 F. Supp. 2d 1473 (D.D.C.1998) ........................................................................................ 19

*Smith v. Hope Village, Inc.*,
   481 F. Supp. 2d 172 (D.D.C. 2007)…………………………………………………..……....…15

*Smith-Haynie v. District of Columbia*,
   155 F.3d 575 (D.C.Cir. 1998) .............................................................................................. 19

*Steinberg v. Int'l Criminal Police Org.*,
   672 F.2d 927 (D.C. Cir. 1981) ............................................................................................... 6

*Stevenson v. Baum*,
   65 Cal. App. 4th 159 (1998) ................................................................................................. 25

*U.S. ex rel. Miller v. Philipp Holzmann A.G., et al.*,
   No. 95-1231 WBB, at ¶ 1(D. D.C. filed Jan. 16, 2001) ...................................................... 21

*U.S. v. Bill Harbert International Construction, Inc., et al.*,
   No. CR-01-PT-0302-S, at ¶¶ 2–3 (N.D. Ala. filed July 25, 2001) ...................................... 21

*Walker v. Pharm. Research & Mfrs. of Am.*,
   461 F. Supp. 2d 52 (D.D.C. 2006) ....................................................................................... 19

*Weinberger v. Tucker*,
   391 F. Supp. 2d 241 (D.D.C. 2005) ....................................................................................... 7

*Whitfield v. Corp. for Pub. Broadcasting*,
   No. 90-1960 (JHG), 1990 WL 204695 (D.D.C. Nov. 30, 1990) .......................................... 26

*Williams v. Fed. Nat'l Mortgage Ass'n*,
   No. 05-1483 (JDB), 2006 WL 1774252 (D.D.C. Jun. 26, 2006) ......................................... 17

*Witherspoon v. Philip Morris Inc.*,
   964 F. Supp. 455 (D.D.C. 1997) .......................................................................................... 25

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ............................................................................................................... 8

*Wright v. Towns*,
   No. 90-0565(JHG), 1991 WL 100388 (D.D.C. May 30, 1991) ............................................ 26

## STATUTES

15 U.S.C. § 1 ............................................................................................................ 21

18 U.S.C. § 1962(c) ......................................................................................... 29, 30

18 U.S.C. § 1964(c) ................................................................................................ 27

28 U.S.C. § 1391(a) ...................................................................................... 1, 13, 14

28 U.S.C. § 1391(a)(1) .......................................................................................... 13

28 U.S.C. § 1391(a)(2) .......................................................................................... 14

28 U.S.C. § 1391(a)(3) .......................................................................................... 14

Ala. Code § 6-2-38 ................................................................................................ 19

Cal. Civ. Code § 1710(3) ...................................................................................... 22

D.C. Code § 13-423(a)(4) .................................................................................. 9, 11

Fed. R. Civ. P. 12(b)(2) .......................................................................................... 1

Fed. R. Civ. P. 12(b)(3) .......................................................................................... 1

Fed. R. Civ. P. 4(k)(1)(A) ...................................................................................... 7

## OTHER AUTHORITIES

15 Wright, Miller, & Cooper, Federal Practice & Procedure § 3826 (2d ed. 1986
 & Supp. 2006) ................................................................................................... 12

17 James Wm. Moore et al., Moore's Federal Practice § 110.05 (Matthew Bender
 3d ed.) ............................................................................................................... 12

4 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure
 § 1067.5 (3d ed. 2002) ........................................................................................ 7

## RULES

Fed. R. Civ. P. 9(b) .............................................................................................. 22

# INTRODUCTION

Defendants Billy Harbert, Jr. ("Mr. Harbert, Jr.") and B.L. Harbert International, LLC

("HILLC") hereby respectfully move this Court to dismiss them as defendants under Plaintiff Hoda

Elemary's Complaint (the "Complaint"). This Court lacks personal jurisdiction over Mr. Harbert,

Jr. and HILLC because they have very few contacts, and no contacts relevant to this action, with

the District of Columbia. Fed. R. Civ. P. 12(b)(2). Even if jurisdiction could be exercised over

Mr. Harbert, Jr. or HILLC, the District of Columbia is an improper venue for this action because

none of the events that give rise to Plaintiff's claims against Mr. Harbert, Jr. and HILLC

occurred within this District. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1391(a).

Plaintiff's Complaint also fails to state a claim upon which relief can be granted against Mr.

Harbert, Jr. or HILLC. The Complaint fails to plead sufficient facts (and, with respect to Plaintiff's

Fraud claim, with anywhere near the requisite particularity) to satisfy the necessary elements of

Plaintiff's Interference with Prospective Economic Advantage, Fraud, and Civil RICO claims.

Accordingly, this Court should dismiss Mr. Harbert, Jr. as a Defendant under Plaintiff's First,

Fifth, and Sixth Causes of Action, and HILLC as a Defendant under Plaintiff's First and Fifth

Causes of Action.[1]

# PROCEDURAL BACKGROUND

In a spree of repetitive and overlapping litigation, Plaintiff has now filed *four* lawsuits

surrounding her purported termination as a "Case Manager" for co-Defendant Bill L. Harbert, Sr.

("Mr. Harbert, Sr.") in other litigation. Although this is the first time Plaintiff has appeared as a

party before this Court, she has made nearly identical claims against Mr. Harbert, Sr., Mr.

Harbert, Jr., and other Harbert-related individuals and entities in at least two other actions,

---

[1] Mr. Harbert Jr. and HILLC also incorporate herein the facts and arguments contained in the Motion of Defendants Bill L. Harbert, Sr. and Harbert International Establishment, Inc. to Dismiss, filed concurrently herewith.

spinning a bewildering tale filled with wild claims of irrelevant self-importance, Compl. ¶ 4 ("A majority of the United States Senators . . .have credited Plaintiff with playing a pivotal role in lobbying Congress to support Operation Desert Storm . . . ."), and outlandish accusations. *See id.* ¶ 20 (accusing Defendants of seeking "a rogue Federal Bureau of Investigation agent to . . . 'terminate' [Plaintiff] for a lofty price . . . ."). (Indeed, in recent correspondence, Plaintiff's counsel has gone so far as to assert that Plaintiff "used her influence and contacts to secure a ruling from the District Court that dismissed Mr. Harbert from the False Claims Case.")[2] These lawsuits are part of Plaintiff's continuing effort to harass Defendants with nonstop frivolous litigation.

In July 2006, Plaintiff filed in the Central District of California a nearly identical complaint, raising nearly identical claims, against Mr. Harbert, Jr. and twenty-one other defendants—including co-Defendants Mr. Harbert, Sr., HILLC, Wachovia Bank, N.A., Sabbia Aktiengessellschaft, and Harbert International Establishment, Inc., and no fewer than nine attorneys and law firms. *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed July 28, 2006). Because the majority of events on which Plaintiff based her claims took place in Alabama, Mr. Harbert, Jr. and several other defendants in that suit moved to transfer the case to the United States District Court for the Northern District of Alabama. The court granted the motion on February 28, 2007. Compl. ¶ 5.[3] By that time, Plaintiff had filed a *second* lawsuit in that court, seeking liquidated damages purportedly triggered by the filing of the motion to transfer and

---

[2] Letter from Brian J. Jacobs to Yasmin N. Best et al. (June 14, 2007) (attached as Exhibit 1 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[3] *See* Civil Minutes, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. Feb. 28, 2007) (attached as Exhibit 2 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

personal jurisdiction challenges by Mr. Harbert, Jr. and other defendants.[4]  Mr. Harbert, Jr. and Mr.

Harbert, Sr. are contemporaneously filing motions to dismiss that case.

Refusing to accept the Central District of California's determination that her claims

properly belong in Alabama, Plaintiff quickly dismissed the complaint after her initial suit was

transferred.  Compl. ¶ 5.[5]  She then filed the instant action—Plaintiff's *third* lawsuit—in this Court

against Mr. Harbert, Jr., Mr. Harbert, Sr., and several Harbert-related entities she had previously

joined as defendants in the now-dismissed suit.[6]  The seven-count Complaint in this case contains

nearly identical claims and allegations as Plaintiff's original (and now-dismissed) complaint.[7]

Apparently not satisfied with having previously filed three lawsuits, Plaintiff filed a *fourth*

on April 27, 2007 in the Superior Court of the State of California for the County of Los Angeles.[8]

Instead of naming the same defendants whom she named in her prior complaints, however,

Plaintiff this time brought suit against only three named defendants—Mr. Harbert, Jr., Mr. Harbert,

Sr., and Jerry L. Steering—and twenty-five other "Doe" defendants.  On June 5, 2007, Mr.

Harbert, Jr. and Mr. Harbert, Sr. removed the case to the Central District of California, on the

grounds that Defendant Steering was fraudulently joined and the court has diversity jurisdiction.

---

[4] *See* Complaint, *Elemary v. Harbert*, No. SA CV07-0217 RGK (PJWx) (C.D. Cal. filed Feb. 20, 2007)  (attached as Exhibit 3 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[5] Notice of Voluntary Dismissal, *Elemary v. Harbert*, Civil Action No. 07-AR-0457-5 (filed March 20, 2007)  (attached as Exhibit 11 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[6] Plaintiff also for the first time joined Philipp Holzmann A.G. as a co-Defendant in this case.

[7] *Compare* Complaint for Damages, *Elemary v. Philip Holzmann A.G.*, No. 1:07-cv-654 (D.D.C. filed Apr. 10, 2007), *with* First Amended Complaint for Damages, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed Oct. 30, 2006)  (attached as Exhibit 4 to Certain Defendants' Request for Judicial notice, filed concurrently herewith).

[8] *See* Complaint, *Elemary v. Steering*, No. BC370218 (L.A. Super. Ct. filed Apr. 27, 2007) (attached as Exhibit 5 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

Mr. Harbert, Jr. and Mr. Harbert, Sr. have filed motions to dismiss and to transfer that case to the Northern District of Alabama, which are currently pending before the court.

Plaintiff was still not through filing lawsuits against the Harbert family. Plaintiff's *fifth* complaint was filed on June 8, 2007 in the Superior Court of the State of California for the County of Los Angeles.[9] In that action, Plaintiff brought suit only against Mr. Harbert, Sr., alleging this time that she and Mr. Harbert, Sr. have been secretly married for the last fifteen years and demanding money for various alleged slights by Mr. Harbert, Sr. That case remains pending in California state court.

Plaintiff's actions in the eleven months that have elapsed since she first filed suit against Mr. Harbert, Sr. and Mr. Harbert, Jr. demonstrate a cavalier disregard for the judicial process and a singular obsession with avoiding proper venue for her claims. She has now filed some four actions in two federal courts and one state court related to her alleged claims. This abuse of the legal system, which has imposed substantial costs on the various Defendants, should not be countenanced or allowed to continue. To the extent that Plaintiff has valid claims, which Defendants deny, they obviously should be litigated in a single forum. As Judge Klausner in the Central District of California already concluded, the appropriate forum is the Northern District of Alabama. Mr. Harbert, Jr., Mr. Harbert, Sr., HILLC, and Harbert International Establishment, Inc. today are filing a motion to transfer this case to the Northern District of Alabama concurrently with their respective Motions to Dismiss. This Court should curb Plaintiff's abuse of the courts and grant Defendants' Motion to Transfer. In the alternative, this Court should dismiss Plaintiff's claims against Defendant Billy Harbert, Jr. and HILLC, for the reasons stated below.

---

[9] Complaint for Damages, *Elemary v. Harbert*, No. SC094189 (L.A. Super. Ct. filed June 8, 2007) (attached as Exhibit 12 to Certain Defendants' Request for Judicial Notice).

**ARGUMENT**

I.  **PERSONAL JURISDICTION OVER MR. HARBERT, JR. OR HILLC IS NOT PRESENT.**

Plaintiff has failed to establish that either Mr. Harbert, Jr. or HILLC is subject to personal jurisdiction in the District of Columbia.[10] "Plaintiffs bear the burden of establishing personal jurisdiction over each defendant.  In order to meet that burden, plaintiffs must allege specific facts upon which personal jurisdiction may be based, and they cannot rely on conclusory allegations."  *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80-81 (D.D.C. 2006) (citation and internal quotation marks omitted).

Nowhere in her Complaint does Plaintiff even attempt to provide any basis for this Court to exercise personal jurisdiction over Mr. Harbert, Jr. or HILLC.  Instead, she vaguely alleges that "jurisdiction" is generally proper in this District because of a purported agreement between her and *Mr. Harbert, Sr.*, in which they purportedly "expressly conveyed their will for jurisdiction and venue" to be proper in the Central District of California.  Compl. ¶ 4.  Next, Plaintiff further alleges that she and Mr. Harbert, Sr. executed a letter on January 7, 2004, in which they "agreed that the proper and second choice for venue is the United States District Court for the District of Columbia."  *Id.*  However, Plaintiff does not attach this letter to her Complaint, nor does she explain how this "letter" could have bound Mr. Harbert, Jr. or HILLC,

---

[10] As an initial matter, Plaintiff appears to be confused about the identity of HILLC. HILLC is a corporation formed in 1999 to undertake general contracting and construction business.  Declaration of Billy Harbert, Jr. ("Harbert Decl.") ¶ 7.

Plaintiff correctly asserts that HILLC is incorporated in Delaware and has its principal place of business in Alabama.  However, in her Complaint, Plaintiff asserts that HILLC, among numerous other Defendants and non-parties, "intended to engage in illegal bid-rigging or were aware of such intentions" on the part of others.  Compl. ¶ 59.  As this Court is aware, based upon a recently completed trial in this District regarding the alleged bid-rigging to which Plaintiff refers, it has been established that the bid-rigging was alleged to have taken place during the 1980s, a decade or more before HILLC even came into existence.

when it is clear from the context of her allegations that she and Mr. Harbert, Sr. were the only alleged parties to the letter.  *Id.*

Because Mr. Harbert, Jr. does not reside within the District of Columbia and HILLC neither is incorporated in the District of Columbia nor maintains its principal place of business in the District, under established constitutional principles, they must have some minimum contacts with the forum before this Court may exercise jurisdiction over them.  *See, e.g.*, *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (citing *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945)).  A defendant may be subject to general jurisdiction or specific jurisdiction.  *See, e.g.*, *Kopff*, 425 F. Supp. 2d at 81 (quoting *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)).

### A.     Neither Mr. Harbert, Jr. Nor HILLC Is Subject To General Jurisdiction In The District Of Columbia.

General jurisdiction is clearly not present in the District of Columbia for Mr. Harbert, Jr. or HILLC.  General jurisdiction is defined in this Circuit as "'all purpose' adjudicatory authority to entertain a suit against a defendant without regard to the claim's relationship *vel non* to the defendant's forum-linked activity."  *Id.* (quoting *Steinberg v. Int'l Criminal Police Org.*, 672 F.2d 927, 928 (D.C. Cir. 1981)).  General jurisdiction is only present when the defendant has contacts with the forum district that are "continuous and systematic," *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509-10 (D.C. Cir. 2002) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984)), and approximates a type of "presence" in the forum.  *See Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987).

In this case, Mr. Harbert, Jr. travels to the District of Columbia only once a year to meet with the State Department regarding his company's construction of embassies overseas.  *See* Harbert Decl. ¶ 4.  He does not own property or have any business contacts in the District of

Columbia, nor does he employ anyone in the District. *Id.* at ¶¶ 3, 5. HILLC has never had any operations or employees in the District of Columbia, nor has it ever been authorized to do business in the District of Columbia. *Id.* at ¶ 8. All of its business records are maintained in Alabama. *Id.* at ¶ 16. There is clearly an absence of "contacts that are sufficiently continuous and systematic to justify haling" Mr. Harbert, Jr. or HILLC into a District of Columbia court for any and all claims that may be brought against them there, as general jurisdiction would permit. *Gorman*, 293 F.3d at 510 n.2 (quoting 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (3d ed. 2002)). Any attempt by Plaintiff to invoke this Court's general jurisdiction over Mr. Harbert, Jr. or HILLC would be without any basis in law or fact.

> **B.    The Exercise Of Specific Jurisdiction Would Be Inappropriate.**

Specific jurisdiction is not present in this case because neither Mr. Harbert, Jr. nor HILLC has any contacts with the District of Columbia that are related to Plaintiff's claims, and it would be unreasonable and unfair to hale them into court there. In addition, the exercise of personal jurisdiction over Mr. Harbert, Jr. or HILLC would be inappropriate under the governing local jurisdictional statute. Because there is no federal statute governing personal jurisdiction applicable to Plaintiff's claims in this action, this Court must apply District of Columbia law to determine whether it may exercise personal jurisdiction over the defendants in this case. *See GTE New Media Servs.*, 199 F.3d at 1347; *accord Weinberger v. Tucker*, 391 F. Supp. 2d 241, 243 (D.D.C. 2005) (citing Fed. R. Civ. P. 4(k)(1)(A)). "In order to establish specific jurisdiction over a non-resident defendant in a diversity case . . . , plaintiffs must plead facts that (1) bring the case within the scope of the District of Columbia's long-arm statute, and (2) satisfy the constitutional requirement of due process." *Kopff*, 425 F. Supp. 2d at 81 (citing cases) (citation omitted). Neither due process nor the District of Columbia's more restrictive long-arm

jurisdictional statute permit the exercise of personal jurisdiction over Mr. Harbert, Jr. or HILLC for Plaintiff's claims in this case.

### 1.    Due Process

The exercise of this Court's personal jurisdiction over Mr. Harbert, Jr. or HILLC would be improper in this case because Plaintiff's claims are unrelated to their very limited contacts with this District. "[T]he Due Process Clause requires that plaintiffs demonstrate a sufficiently close connection between their asserted injuries and the defendant's contacts with the forum so that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Kopff*, 425 F. Supp. 2d at 82-83 (quoting *GTE New Media Servs.*, 199 F.3d at 1347); *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there."). Accordingly, unless Plaintiff's claims in this case have a "sufficiently close connection" with Mr. Harbert, Jr. and HILLC's contacts with the District of Columbia, Plaintiff's claims cannot subject them to personal jurisdiction in this District.

Any contacts Mr. Harbert, Jr. or HILLC may have with this District have nothing to do with this lawsuit. As noted above, Mr. Harbert, Jr.'s contacts are limited to annual visits to meet with State Department officials regarding the construction of overseas embassies. Harbert Decl. ¶ 4. Plaintiff's claims clearly are not in any way related with these visits or the embassies. Mr. Harbert, Jr. has never seen, spoken to, nor taken any other action with regards to Plaintiff while in the District of Columbia. *Id.* ¶ 6. And to the extent Plaintiff's claims against HILLC are based upon the alleged actions of its agents, officers, or employees, Mr. Harbert, Jr. has never done so while acting on behalf of HILLC. *Id.* ¶ 15. Because due process permits the exercise of specific jurisdiction only with regards to claims that concern "the very business transacted" in

the forum, any effort by Plaintiff to invoke specific jurisdiction here would also be without any

basis in fact or law.

### 2. The District of Columbia Long-Arm Jurisdictional Statute

The District of Columbia's long-arm statute does not provide a basis to subject Mr.

Harbert, Jr. to personal jurisdiction in this Court.  Because Plaintiff does not allege that Mr.

Harbert, Jr., HILLC, or HILLC's agents, officers, or employees transacted any business in the

District, the only potentially relevant portion of that statute is subsection (a)(4), which permits

the exercise of personal jurisdiction by District of Columbia courts over a person who:

> caus[es] tortious injury in the District of Columbia by an act or
> omission outside the District of Columbia if he regularly does or
> solicits business, engages in any other persistent course of conduct,
> or derives substantial revenue from goods used or consumed, or
> services rendered, in the District of Columbia.

D.C. CODE § 13-423(a)(4).  This subsection is the only potentially relevant clause in the

District's long-arm statute because Plaintiff's claims against Mr. Harbert, Jr. and HILLC sound

in tort, but she does not allege that Mr. Harbert, Jr. committed any act or omission while he was

inside the District, either in his personal capacity or while acting on behalf of HILLC.[11]

Significantly, this clause is construed narrowly, so that the jurisdiction of the District of

Columbia's courts over torts alleged to have been committed outside the District is more

restrictive than the constitutional limits of due process.  *See GTE New Media Servs.*, 199 F.3d at

1347 (quoting *Crane*, 814 F.2d at 762); *accord Gandal v. Telemundo Group, Inc.*, 997 F.2d

1561, 1564-65 (D.C. Cir. 1993) (noting that subsection (a)(4) requires injury inside District of

---

[11] This reasoning is in accord with the conclusion reached in an analogous decision
considering the District of Columbia's long-arm statute.  There, the court found that subsection
(a)(4) was the applicable long-arm clause because the plaintiffs' claims "d[id] not arise out of
any contractual or transactional relationship involving the District," but rather were "based on
alleged conduct in the nature of a tort; and because defendants' alleged conduct occurred solely
outside the borders of the District, the only potentially applicable long-arm provision is section
13-423(a)(4)." *Kopff*, 425 F. Supp. 2d at 82.

Columbia and "another 'plus factor' that demonstrates [the defendant's] activity in the District"). This "plus factor" above and beyond federal due process requirements "serve[s] to filter out cases in which the inforum impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the forum." *Kline v. Williams*, 2006 WL 2265414, at *3 (D.D.C. Aug. 8, 2006) (quoting *Crane*, 814 F.2d at 762) (alteration in *Kline*). The requirements of this plus-factor analysis under the long-arm statute are not satisfied here.

### a.    Plaintiff's Alleged Injuries Did Not Occur In This District.

Plaintiff does not allege that she has suffered any damages in the District of Columbia. In her claims brought against Mr. Harbert, Jr. and HILLC, Plaintiff asserts that she suffered damages to her future income and to her reputation.[12] Compl. ¶¶ 40, 64, 85. Plaintiff claimed in the preceding litigation in California, which arose out of virtually identical facts, that her alleged damages were suffered in her home state of California.[13] Specifically, she noted that her "loss of income, both arising from the damages to her standing within the political community resulting from the fraud and her loss of income from the September 21 Agreement resulting from the wrongful termination of her employment, as well as her emotional distress, took place in [the Central District of California]."[14] In its order granting certain defendants' motion to transfer venue, the court found that Plaintiff's alleged damages were indeed suffered, if at all, in that district. *See* Exhibit 2, p. 3. Plaintiff has not alleged that she has suffered any injury within the

---

[12] Plaintiff also contends that she was the victim of an attack in California that Mr. Harbert allegedly directed. Compl. ¶ 78. Mr. Harbert, Jr. has disputed that allegation here (Harbert Decl. ¶ 15), and accordingly this Court need not accept this allegation as true. *See, e.g.*, *Kopff*, 425 F. Supp. 2d at 81. For purposes of the issue of specific jurisdiction, however, the Court need only note that Plaintiff does not contend that she suffered any injury from the alleged attack in the District of Columbia.

[13] *See, e.g.*, Exhibit 6, Plaintiff's Memorandum of Law in Opposition to Motion of Defendant Billy Harbert, Jr. to Dismiss, at 10 (attached as Exhibit 6 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

[14] *Id.*

District of Columbia, and thus she has failed to satisfy the mandatory first prong of the governing clause of the long-arm statute. *See* D.C. CODE § 13-423(a)(4).

> **b.**     **Mr. Harbert, Jr. And HILLC's Lack Of Relevant Activities In The Forum State**

Neither Mr. Harbert, Jr. nor any of HILLC's agents, officers, or employees has committed any of the actions listed in subsection (a)(4) of the District of Columbia's long-arm statute that would subject them to personal jurisdiction in this Court. As noted above, Mr. Harbert, Jr., in his personal capacity or on behalf of HILLC, conducts only extremely limited business in the District in the form of annual meetings with State Department officials to advance and support his company's overseas embassy construction work. Harbert Decl. ¶ 4. It is not alleged that Mr. Harbert, Jr. or HILLC derives any revenue from goods used or services rendered here.

These meetings with government officials do not satisfy the requirements to establish personal jurisdiction under the District of Columbia's long-arm statute. Even if a once-a-year meeting with government officials could constitute "doing business" or a "persistent course of conduct," those meetings cannot provide a basis for this Court's exercise of personal jurisdiction over Mr. Harbert, Jr. or HILLC due to the "government contacts" exception, which allows such government-related activities to be conducted within the District without subjecting the involved non-residents to the jurisdiction of District of Columbia courts on unrelated claims. *See, e.g.*, *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 230 (finding that "government relations and lobbying connections to the District of Columbia . . . do not form a basis for asserting personal jurisdiction because of a long-recognized 'government contacts' exception to the 'transacting business' provision of a long-arm statute to allow for petitioning the government and the redress

of grievances") (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).[15]

Because Mr. Harbert, Jr.'s contacts with the District of Columbia are insufficient to satisfy the

"plus factor" test, this Court should decline to exercise personal jurisdiction over him or HILLC.

## II.    PLAINTIFF CANNOT SHOW THAT THE DISTRICT OF COLUMBIA IS A PROPER VENUE UNDER 28 U.S.C. § 1391.

Even if a District of Columbia court could exercise personal jurisdiction over Mr.

Harbert, Jr. or HILLC, this Court is not a proper venue for the claims brought by Plaintiff in this

action.  Plaintiff bears the burden of establishing that venue is proper in this District.[16]  *See, e.g.*,

*Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006) (citing, *inter alia*, 15 WRIGHT,

MILLER, & COOPER, FEDERAL PRACTICE & PROCEDURE § 3826 (2d ed. 1986 & Supp. 2006)).

This case is a diversity action brought pursuant to 28 U.S.C. § 1332.  Venue for this action is

thus governed by 28 U.S.C. § 1391(a), which provides:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in
>
> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
>
> (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

---

[15] Without this exception, any of the thousands of people who occasionally come to the District of Columbia to meet with United States officials or to interact with the federal government in some other manner could thereby subject themselves to this Court's jurisdiction due to those routine business-related visits.

[16] Indeed, in this multiple-defendant, multiple-claim action, Plaintiff must establish both that venue is appropriate for each defendant and that venue is appropriate for each claim against that Defendant.  *See, e.g.*, *Sisso v. Islamic Republic of Iran*, 448 F. Supp. 2d 76, 82 n.8 (D.D.C. 2006) (citing cases); *Multimin USA, Inc. v. Walco International, Inc.*, 2006 WL 1046964, at *2 (E.D. Cal. Apr. 11, 2006) (citing cases from various jurisdictions); 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 110.05 (Matthew Bender 3d ed.).

28 U.S.C. § 1391(a). A brief analysis of these provisions makes clear that this Court is not an appropriate venue for this action.

Subsection (a)(1), which establishes venue in any district "where any defendant resides," does not apply here. Plaintiff does not assert that any Defendant resides in the District of Columbia. Furthermore, even if a Defendant did reside within the District, this subsection is only applicable when "all defendants reside in the same State." 28 U.S.C. § 1391(a)(1). This is not the case here. For instance, while Mr. Harbert, Jr. and Mr. Harbert, Sr. are residents of Alabama (Compl. ¶ 2; Harbert Decl. ¶¶ 2, 12), Plaintiff's handwritten addresses on the first page of her Complaint, as well as the allegations therein, indicate that other Defendants are corporate residents of other states and foreign countries, not Alabama. *See, e.g.*, Compl. ¶ 1 (asserting, for example, that co-Defendant Philipp Holzmann AG is a German corporation, while Sabbia Aktiengesellschaft is a Liechtenstein corporation). No venue exists that would be proper under § 1391(a)(1).

Similarly, subsection (a)(2), which establishes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," provides no basis to establish venue in this District for Plaintiff's claims against Mr. Harbert, Jr. or HILLC.[17]   None of the events on which Plaintiff bases her claims against Mr. Harbert, Jr. and HILLC occurred in the District of Columbia. *See supra* § B.2.b. Therefore, Plaintiff has failed to satisfy § 1391(a)(2)'s requirement that "a substantial part of the events or omissions giving rise to" her claims against Mr. Harbert, Jr. and HILLC occurred in this District, and venue is accordingly not proper here under that subsection for those claims.

---

[17] The second clause of subsection (a)(2) is inapplicable to this action because this action is not related to any property. *See* 28 U.S.C. § 1391(a)(2) (establishing venue in district where "a substantial part of property that is the subject of the action is situated").

Finally, § 1391(a)'s fallback venue provision, which applies only "if there is no district in which the action may otherwise be brought," 28 U.S.C. § 1391(a)(3), is inapplicable here because the Northern District of Alabama is a proper venue under subsection (a)(2). Venue would be proper in that district for all of the claims in Plaintiff's Complaint because many of the Defendants in this action are located there and many of the alleged actions occurred in that district. Therefore, under § 1391(a)(2)'s standard, that district would be a proper venue, not only for Mr. Harbert, Jr. and HILLC but for all Defendants, because a substantial part of the purported acts that are the basis of Plaintiff's Complaint occurred there. Because venue is not proper in the District of Columbia for Plaintiff's claims against Mr. Harbert, Jr. or HILLC, the Court should dismiss them from this action.

## III.    THE COMPLAINT ALSO FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST MR. HARBERT, JR. OR HILLC.

### A.    Standard of Review

A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007); *accord Hicks v. Ass'n of Am. Medical Colleges*, No. 07-00123(ESH), 2007 WL 1577841, *2 (D.D.C.) (D.D.C. May 31, 2007). When assessing a motion to dismiss pursuant to Rule 12(b)(6), a court may consider the factual allegations in the complaint, any documents attached to or incorporated in the complaint, and matters appropriate for judicial notice. *See Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.C. 2002). The Court "must accept as true all facts alleged by the nonmoving party and must draw all inferences in favor of the nonmoving party." *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1156 (D.C. Cir. 2005). "However, the court need not accept inferences drawn by plaintiffs if such inferences are

unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).  To the contrary, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do; instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Bell Atlantic*, 127 S.Ct. 1955, 1965.[18]

### B.    Plaintiff Fails to State a Claim for Interference with Prospective Economic Advantage Against Mr. Harbert, Jr. or HILLC.

To survive threshold dismissal on her claim for tortious interference with prospective economic advantage ("TIPEA"), Plaintiff must allege facts showing: "(1) the existence of a valid business relationship or expectancy, (2) knowledge of the relationship or expectancy on the part of the interferer, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, and (4) resultant damage."  *Genetic Sys. Corp. v. Abbott Labs.*, 691 F. Supp. 407, 422–23 (D.D.C. 1988); *see Houlahan v. World Wide Ass'n of Specialty Programs and Schools*, No. 04-01161 (HHK), 2006 WL 2844190, at *1 (D.D.C. Sept. 29, 2006).  Plaintiff has failed to allege facts satisfying the necessary elements of her TIPEA claim against Mr. Harbert, Jr. or HILLC, and this Court should therefore dismiss Plaintiff's first cause of action against Mr. Harbert, Jr. and HILLC.[19]

*First*, this Court should dismiss Plaintiff's TIPEA claim because the Complaint contains *no* facts whatever showing that Mr. Harbert, Jr. had "knowledge of the relationship or

---

[18] Mr. Harbert, Jr. and HILLC assert that under District of Columbia choice of law rules, Alabama law would apply to Plaintiff's claims.  *See, e.g.*, *Smith v. Hope Village, Inc.*, 481 F. Supp. 2d 172, 207 n.28 (D.D.C. 2007).  For purposes of this Motion, however, Mr. Harbert, Jr. and HILLC assume that District of Columbia law applies.

[19] The Complaint contains no allegation specific to HILLC, and Plaintiff's TIPEA claim against HILLC is entirely derivative of her claim against Mr. Harbert, Jr.  *See* Compl. ¶ 37 (alleging that "Billy Harbert Jr. act[ed] in his personal capacity and on behalf of HILLC").

expectancy." [20]  *Genetic Sys.*, 691 F. Supp. at 422–23.  Plaintiff in her Complaint alleges that

"Defendant Billy Harbert Jr.'s disruption of the settlement negotiations between DOJ and

Plaintiff constituted intentional interference with the terms of the September 21 Agreement,"

under which Plaintiff purportedly would have been entitled to a "a five percent (5%) success fee,

in addition to her monthly compensation, on any savings negotiated from Mr. Harbert, Sr.'s

$34,000,000 and $22,000,000 (on behalf of Harbert Corporation) obligations under the False

Claims Case."  Compl. ¶¶ 39, 35.  Plaintiff, however, fails to allege any facts showing that Mr.

Harbert, Jr. even *knew about* the so-called September 21 Agreement between Plaintiff and Mr.

Harbert, Sr.  Rather, the Complaint alleges only that "[t]he *provisions* of the September 21

Agreement were known to Defendants because Plaintiff had been working with *John* Harbert

since 1979 and had been acting as exclusive case manager on the False Claims Case since April,

2001."  Compl. ¶ 38 (emphasis added).  Plaintiff's claim regarding Mr. Harbert, Jr.'s awareness

of the September 21 Agreement is a *non sequitur*:  It is simply not reasonable  to infer that Mr.

Harbert, Jr. knew of the existence of the written instrument between Plaintiff and Mr. Harbert,

Sr., or the nature and extent of their alleged relationship and potential future interactions, by

virtue of Plaintiff's prior dealings with John Harbert—a third party and Mr. Harbert, Sr.'s

brother (Compl. ¶ 16)—or her role as case manager.

    *Second*, even if the Complaint can reasonably be read to show that Mr. Harbert, Jr. knew

about the September 21 Agreement, Plaintiff alleges no facts even remotely suggesting that Mr.

Harbert, Jr. acted "*intentionally and maliciously*" to deprive Plaintiff of "actual and prospective

business relationships."  *Genetic Sys.*, 691 F. Supp. at 422 (emphasis added).  Under District of

---

[20] The same result would also obtain under Alabama law.  *See Gross v. Lowder Realty Better Homes & Gardens*, 494 So. 2d 590, 597 (Ala. 1986) (setting forth necessary elements of claim under Alabama law).

Columbia law, "a general intent to interfere is not enough; there must be a 'strong showing of intent' in order to make a prima facie case for tortious interference." *Williams v. Fed. Nat'l Mortgage Ass'n*, No. 05-1483 (JDB), 2006 WL 1774252, at *9 (D.D.C. Jun. 26, 2006); *see also Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 45 (D.D.C. 2005) ("Plaintiff cannot establish liability without a 'strong showing of intent' to disrupt ongoing business relationships . . . ."). The alleged interference must involve "egregious" conduct—such as "libel, slander, physical coercion, fraud, misrepresentation, or disparagement"—in order to support a claim for tortious interference with prospective economic advantage. *Genetic Sys.*, 691 F. Supp. at 423; *Bannum*, 383 F. Supp. 2d at 45.

The Complaint contains *no* facts suggesting that Harbert, Jr. acted with the requisite intent to deprive Plaintiff of prospective economic advantage. At most, Plaintiff alleges that Mr. Harbert, Jr. declined to approve or execute "a $15 million settlement [with] the United States negotiated on March 15, 2005," because he "insisted that he could do a better job than Plaintiff in negotiating a lower figure than $15 million . . . ." Compl. ¶ 10. Mr. Harbert, Jr.'s general *awareness* that his efforts to negotiate a lower settlement could entail the rejection of any settlement Plaintiff allegedly negotiated simply does not constitute the "strong showing of intent" required for Plaintiff's IPEA claim to survive threshold dismissal. *Genetic Sys.*, 691 F. Supp. at 423 ("A general intent to interfere or knowledge that conduct will injure the plaintiff's business dealings is insufficient to impose liability."). And Plaintiff's bald and conclusory allegations that Mr. Harbert, Jr.'s conduct was "willful, wanton, fraudulent, oppressive and malicious, inflicted . . . with the intention . . . to deprive Plaintiff of property or legal rights or otherwise causing injury, and was despicable conduct," Compl. ¶ 41, is simply insufficient as a matter of law to rescue her TIPEA claim. *See, e.g., Houlahan*, 2006 WL 785326, at * 4

17

(granting defendants' motion to dismiss because plaintiff offered no facts in support of her conclusory allegation that she had a reasonable business expectancy); *Bannum*, 383 F. Supp. 2d at 45 (granting defendants' motion for summary judgment because plaintiff's allegations were "vague and unsupported by the evidence and . . . thus insufficient to establish a claim"); *Genetic Sys.*, 691 F. Supp. at 423 ("[A]llegations that [defendant] intentionally interfered, induced, or caused a breach or termination of [a] relationship or expectancy are too vague to withstand . . . motions [to dismiss].").

### C.    Plaintiff Fails to State a Claim for Suppression of Facts (Fraud).

Plaintiff's cause of action for fraud—to the extent it can be discerned from the bewildering and manic tale the Complaint attempts to spin—appears to be based solely on two broad and conclusory allegations. First, Plaintiff alleges that when she agreed, sometime in the 1980s, to intercede with Egyptian authorities to enable a joint venture of the "Harbert Contractors" to perform work on a waste water treatment project in Cairo, Egypt, Defendants (Plaintiff does not detail who) fraudulently failed to "disclose to her their intentions to engage in bid-rigging and disgrace Plaintiff by violating United States law and the spirit of the [Camp David] Accords." Compl. ¶ 62; *see also id.* ¶¶ 8, 15–16. Second, Plaintiff alleges that when she agreed, in August 2002, to serve as the "case manager" for a False Claims Act suit based on that alleged bid-rigging, "Defendants concealed from Plaintiff the extent of their culpability in the bid-rigging scheme." *Id.* ¶ 62.

Neither variant of Plaintiff's fraud claim is sufficient to withstand dismissal, for two reasons. First, as described in detail below, Plaintiff's claim is time-barred under the three-year statute of limitations. Plaintiff's own allegations show that she had notice of the wrongdoing she now alleges was concealed from her well before April 10, 2004—three years prior to the filing of this lawsuit. Second, Plaintiff has failed to plead fraud with the particularity required by Rule

18

9(b).  This Court should accordingly dismiss Plaintiff's fraud claim against Mr. Harbert, Jr. and HILLC.

### 1.    Plaintiff's Fraud Claim Is Time-Barred.

This Court should dismiss Plaintiff's fraud claim because it is untimely under the District of Columbia's three-year statute of limitations.  *See King v. Kitchen Magic Inc.*, 391 A.2d 1184, 1186 (D.C. App. 1978) ("[An action for fraud] must be brought within three years from the time the fraud either is discovered or reasonably should have been discovered").[21]  Plaintiff filed her initial Complaint in this case on April 10, 2007.  Accordingly, Plaintiff's fraud claim must have accrued—and therefore triggered the three-year limitations period—no earlier than April 10, 2004 in order to survive dismissal.  *See, e.g.*, *Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 235-36 (D.D.C. 2007) (statute of limitations begins to run once the claim accrues).

Under District of Columbia law, a cause of action for fraud or mistake accrues "'when the plaintiff *has knowledge of (or by the exercise of reasonable diligence should have knowledge of)* (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'"[22] *Richards*, 480 F. Supp. 2d at 235 (quoting *Knight v. Furlow,* 553 A.2d 1232, 1234 (D.C. 1989)).  In this regard, it is "well-established that an injured party has a positive duty to use diligence in discovering his cause of action within the limitations period."  *Bergen v. Rothschild,* 648 F. Supp. 582, 585 (D.D.C. 1986); *see Walker v. Pharm. Research & Mfrs. of Am.*, 461 F. Supp. 2d

---

[21] A defendant may raise the affirmative defense of statute of limitations in a Rule 12(b)(6) motion to dismiss where, as here, the facts that give rise to the defense are clear from the face of the complaint.  *See, e.g.*, *Smith-Haynie v. District of Columbia,* 155 F.3d 575, 578 (D.C. Cir. 1998).  If "no reasonable person could disagree on the date" on which the cause of action accrued, the court may dismiss a claim on statute of limitations grounds.  *See, e.g.*, *Smith v. Brown & Williamson Tobacco Corp.,* 3 F. Supp. 2d 1473, 1475 (D. D.C. 1998) (citing *Kuwait Airways Corp. v. Am. Sec. Bank, N.A.,* 890 F.2d 456, 463 n. 11 (D.C. Cir. 1989)).

[22] Similarly, Alabama's two-year statute of limitations for fraud actions begins to run from the time a reasonable person would have been put on notice of the alleged wrongdoing.  *See* Ala. Code § 6-2-38; *Potter v. First Real Estate Co., Inc.*, 844 So. 2d 540, 545 (Ala. 2002); *Dickinson v. Land Developers Constr. Co., Inc.*, 882 So. 2d 291, 299 (Ala. 2003).

52, 60 (D.D.C. 2006). "'Any fact that should excite his suspicion is the same as actual

knowledge of the claim; the means of knowledge is the same thing, in effect, as the knowledge

itself.'" *Bergen*, 648 F. Supp. at 585 (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523

F.2d 389, 394 (6th Cir. 1975)).[23]

These principles, applied here, compel the conclusion that Plaintiff's fraud claim is time-

barred because according to her own allegations Plaintiff was on notice—and was aware of facts

sufficient to make a reasonably prudent person suspicious—of the purported wrongdoing she

now alleges long before April 10, 2004. Plaintiff herself alleges in her Complaint that beginning

in April 2001, she provided services to Defendant Bill L. Harbert, Sr. (ultimately becoming his

"sole spokesperson and exclusive case manager" by no later than August 2002) in a False Claims

Act case brought by the United States. Compl. ¶ 18; *see also id.* ¶¶ 38, 43, 52, 62.[24] The

complaints in that case unequivocally accused Bill L. Harbert, Sr. and other parties of

participating in the very bid-rigging scheme Plaintiff now claims was concealed from her. The

relator's complaint, for example, accuses Defendants Bill L. Harbert, Sr., Bill Harbert

International Construction, Inc. ("BHIC"), and Harbert International Establishment, Inc. ("HIE

---

[23] *See also Perkins v. Nash,* 697 F. Supp. 527, 535 (D.D.C. 1988) (dismissing plaintiff's fraud and RICO claims, among others, because plaintiff pled facts showing he was aware of such conduct at least three years before filing suit, and therefore, "the only result [could] be that he was not diligent in filing any claims," and further stating that "[t]o hold otherwise would be to unfairly disturb the repose to which a prospective defendant is entitled"); *Fitzgerald v. Seamans,* 553 F.2d 220, 227 (D.C. Cir. 1977) ("[T]he fact of injury was sufficiently plain for [plaintiff's] cause of action to accrue even though the extent and precise nature of the injury had not yet developed.").

[24] That case was originally filed in 1995 as a *qui tam* action by relator Richard Miller, and the United States in 2001 filed a complaint in intervention. The original complaint named Defendants BHIC; Harbert International Establishment, Inc.; Harbert International, Inc.; and Harbert U.K. Services, Ltd., among other defendants. *See Miller v. Holzmann,* No. Civ. A. 95-1231 RCL JMF, 2006 WL 568722, at *2 (D. D.C. March 9, 2006) (detailing partial procedural history of the case). In January 2001, the relator added Defendants Bill L. Harbert, Sr. and Roy Anderson. *See id.* The government's complaint in intervention named Defendants BHIC; Harbert International Establishment, Inc.; Harbert Corporation; Harbert International, Inc.; Harbert U.K. Services, Ltd.; and Roy Anderson, among others. *See id.*

Inc."), among others, of "conspir[ing] to rig the bidding for construction contracts paid for by the

United States Agency for International Development ("USAID")."[25]  The government's

complaint in intervention not only echoed the relator's allegations, it also alleged the February 4,

2002 agreement of Bilhar International Establishment ("Bilhar"), signed by Defendant Bill L.

Harbert, Sr., *to plead guilty and pay a $54 million fine* in a prior criminal prosecution.[26]  That

plea agreement confirmed that had the case gone to trial, the United States would have presented

evidence that, among other things, Bilhar, "through its officers and employees," participated in a

conspiracy "to rig bids on certain USAID funded construction contracts in Egypt."[27]

As the alleged exclusive case manager for this case from 2002, Plaintiff was aware of

these facts and allegations made by the relator and the government.  And these facts were

sufficient as a matter of law to put Plaintiff on notice of the alleged fraud well before April 10,

2004.  Indeed, Plaintiff herself concedes that her claims arise "in part out of the transactions

---

[25]  Second Amended Complaint For False Claims Act Violations And Demand For Jury Trial, *U.S. ex rel. Miller v. Philipp Holzmann A.G., et al.*, No. 95-1231 WBB, at ¶ 1(D. D.C. filed Jan. 16, 2001) (attached as Exhibit 7 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith); *see also id.* at ¶ 30 ("As a consequence of the illegal conspiracy to rig the bidding for Contract 20A, Harbert/Jones (and its owners, Defendants Harbert and Jones) made a profit far in excess of the profit that would have been possible in open competition.").

[26]  United States' First Amended Complaint, *U.S. ex rel. Miller v. Philipp Holzmann A.G., et al.*, No. 95-1231 WBB, at ¶¶ 90–91 (D.D.C. filed Dec. 10, 2002) (attached as Exhibit 8 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith).

In July 2001, a federal grand jury indicted BHIC, Bilhar International Establishment, and Bilhar's former President of one count of violation of the Sherman Act, 15 U.S.C. § 1, and one count of conspiracy to defraud the United States, 18 U.S.C. § 371.  The indictment charged "defendants and others" with conspiracy "to *rig the bids* on certain United States-funded construction contracts in Egypt . . . ."  Indictment, *U.S. v. Bill Harbert International Construction, Inc., et al.*, No. CR-01-PT-0302-S, at ¶¶ 2–3 (N.D. Ala. filed July 25, 2001) (emphasis added) (attached as Exhibit 9 to Certain Defendants' Request for Judicial Notice, filed concurrently herewith); *see also* Compl. ¶ 27 ("[T]he Harbert Contractors . . . paid a $54 million criminal fine for bid-rigging government contracts."), ¶ 11 (acknowledging a February 4, 2002 plea agreement in which Mr. Harbert Sr. made a "payment of $54 million to satisfy a criminal fine imposed by the United States").

[27]  Plea Agreement, *U.S. v. Bill Harbert International Construction, Inc., et al.*, No. CR-01-PT-0302-S, at ¶ 4(b) (N.D. Ala. filed Feb. 4, 2002), attached as Exhibit 10 to Request for Judicial Notice.

stated in the United States' false claims case, Civil Action No. 95-1231 (RCL/JMF) currently in

trial in the United States District Court for the District of Columbia (the "False Claims Case"),

which cites the primary defendants named in this action for bid-rigging government contracts."

Compl. ¶ 8.  Assuming *arguendo* that Plaintiff's allegations are true, a reasonable person

exercising diligence would have at least *suspected* at a time earlier than April 2004 that the

claims Plaintiff now brings existed.  The notice Plaintiff had was sufficient to trigger the three-

year statute of limitations applicable to Plaintiff's fraud claim, and Plaintiff at the time was

obligated to decide whether to file suit or sit on her rights.  Having chosen the latter, she is now

barred from bringing her stale fraud claim.

### 2.    The Complaint Fails To Plead Fraud With Sufficient Particularity.

Even if Plaintiff's fraud claim were timely brought, it should still be dismissed for failure

to satisfy Rule 9(b), which requires that, "the circumstances constituting fraud or mistake shall

be stated with particularity."  Fed. R. Civ. P. 9(b).  Rule 9(b) requires dismissal of Plaintiff's

fraud claim because Plaintiff has failed to plead, "with the required specificity," sufficient facts

satisfying the necessary elements of that claim.  *See, e.g.*, *Richards v. Duke Univ.*, 480 F. Supp.

2d at 237 ("[T]he circumstances of fraud must be detailed with particularity, specifically 'the

time, place and content' of the misrepresentations.").[28]  In this regard, it is not enough for

Plaintiff to plead magic words and phrases.  *See, e.g.*, *Shekoyan v. Sibley Int'l Corp.*, 217

F.Supp.2d 59, 73 (D.D.C.2002) ("Conclusory allegations that a defendant's actions were

---

[28]  To satisfy the necessary elements of her fraud claim under District of Columbia law, Plaintiff must allege: "(1) a false representation, (2) in reference to a material fact, (3) made with the knowledge of its falsity, (4) with intent to deceive, and (5) action taken by [plaintiff] in reliance upon representation, (6) which consequently resulted in provable damages.  *See, e.g.*, *Richards v. Duke Univ.*, 480 F. Supp. 2d at 237.  *Cf. Keck v. Dryvit Systems, Inc.*, 830 So. 2d 1, 11 (Ala. 2002) (describing elements of fraudulent suppression claim under Alabama law).  The only element for which Rule 9(b) permits a general allegation is scienter, and Plaintiff must plead the other elements of her fraud claim with particularity.  *Hoyte v. Yum! Brands, Inc.*, 2007 WL 1302590, at *1, n.5 (D.D.C. May 2, 2007).

fraudulent and deceptive are not sufficient to satisfy 9(b).”); *Bennett v. Kiggins*, 377 A.2d 57, 60 (D.C.1977) (“[A]llegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient”).  Instead, the Complaint must set forth sufficient details to adequately inform each Defendant of the specific acts or omissions alleged to have been false or misleading and why the acts or omissions were false or misleading.  *See id.*; *Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336 (D.D.C. 1986).  In other words, Plaintiff must describe the “who, what, when, where, and how” of the alleged fraud.  *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 253 (D.D.C. 2004).  Plaintiff’s Complaint comes nowhere near to providing these necessary specifics; her pleadings “though copious, are vague and inexplicit.” *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 45 (1st Cir. 1991).

*First*, Plaintiff brings her fraud claim against six Defendants, but provides *no* facts of circumstances in which any of those defendants owed Plaintiff a duty to disclose the allegedly concealed information—a necessary element of any fraudulent concealment or suppression claim.  *See*, *e.g.*, *Meehan v. United States Office Prods. Co.*, 251 F. Supp. 2d 77, 99-100 (D.D.C. 2003); *In re: Vitamins Antitrust Litig.*, 2001 WL 849928, at *7 (D.D.C.  Apr. 11, 2001) (quoting *Chrisman v. Hill Home Dev., Inc.,* 978 S.W.2d 535, 539 (Tenn. 1998)) (“‘The tort of fraudulent concealment is committed *when a party who has a duty to disclose* a known fact or condition fails to do so, and another party reasonably relies upon the resulting misrepresentation, thereby suffering injury.’”).  This is so because a failure to disclose information—however material—is not actionable fraud absent a fiduciary relationship or other circumstances giving rise to a duty to disclose.  *See*, *e.g.*, *id.*  Here, Plaintiff generally alleges that she was “ignorant of Defendants’ intentions to engage in, and subsequent participation in, bid-rigging.”  Compl. ¶ 62.  The Complaint, however, does not attribute any specific omission to any particular defendant, instead

grouping the defendants together without specifically explaining when, where, or how each defendant breached a duty to cure Plaintiff of her claimed ignorance. Plaintiff improperly lumps all named Defendants together without any specific designation and makes bare statements that accuse them of collectively defrauding her, denying these defendants the right to be informed of the specific acts or omissions they must defend.

For example, Plaintiff alleges (under the first variant of her fraud claim) that "Defendants" had a duty to disclose to her "their *intentions* to engage in bid-rigging and disgrace Plaintiff by violating United States law and the spirit of the Accords." Compl. ¶ 62 (emphasis added). But Plaintiff alleges no facts whatever showing that, at the time Plaintiff was purportedly hired to approach Egyptian authorities, any of the Defendants *in fact* had a present intent to engage in bid-rigging *in the future*. Plaintiff cites no document, statement, or any other evidence showing that any of the Defendants had that intention in mind at the time; in other words, Plaintiff has not even alleged that the information that was purportedly concealed even *existed*. Plaintiff has therefore failed to allege with the requisite particularity that any of the Defendants concealed that fact, let alone that any one had a duty to disclose the fact to Plaintiff. Under the heightened pleading requirements for fraud, she cannot simply state the required element of the claim and fail to provide facts making the necessary factual showing.

*Second*, Plaintiff also fails to set forth the specific *facts* she believes were concealed from her, the information she did have and operated under, or the type of communications in which the concealed facts should have been disclosed. Instead, Plaintiff provides a vague description of the "facts" allegedly concealed from her as Defendants' "*intentions* to engage in bid-rigging" and "the *extent* of their culpability in the bid-rigging scheme." Compl. ¶ 62 (emphases added). Such formless statements deprive Defendants of a meaningful opportunity to defend themselves.

The rest of her fraud pleading provides no clarity: Under the second variant of her fraud claim, Plaintiff alleges that she was aware of *some* aspects, but not the full "extent," of Defendants' culpability, but then fails to specify what she knew and did not know. This prevents Defendants from contesting the materiality of the allegedly concealed information, or the reasonableness of Plaintiff's reliance under the circumstances. *See*, *e.g.*, *Witherspoon v. Philip Morris Inc.*, 964 F. Supp. 455, 460 (D.D.C. 1997).[29]

Indeed, if Plaintiff had described to Defendants the specific facts she claims were concealed with the appropriate amount of detail, Defendants might be able to identify her fraud claim as is anticipated by Rule 9(b) and prepare a proper defense. For example, they might challenge Plaintiff's fraud claim on the ground that the allegedly concealed facts were completely accessible to her at the time she became "exclusive case manager" for the False Claims Act case, and Defendants therefore had no duty to disclose those facts to her. *See*, *e.g.*, *Goodman v. Kennedy*, 18 Cal. 3d 335, 348 (1976) (no fraudulent concealment where the plaintiff has "readily apparent and available sources of information"); *Bender*, 648 F. Supp. at 336 (Plaintiffs' receipt of an offering memorandum that indicated the speculative nature of the proposed investment "refute[d] thoroughly plaintiffs' allegations of misrepresentation and failure to disclose"); *Magpali v. Farmers Group, Inc.*, 48 Cal. App. 4th 471, 482 (1996) (employer had no duty to disclose information that was "completely accessible" to plaintiff); *Stevenson v. Baum*, 65 Cal. App. 4th 159, 166 (1998) (no duty to disclose facts "immediately ascertainable

---

[29] It certainly would strain reason for Plaintiff to claim that the "extent of [Defendants'] culpability in the bid-rigging scheme" could have been material as a matter of law to Plaintiff's decision to serve a critical role in conducting the defense in a False Claims Act case that, as discussed above, involves allegations of the *very misconduct* Defendants allegedly concealed from her—allegations that had already formed the basis of criminal indictments, a guilty plea, and a $54 million fine. *See supra* Section III.C.1 (discussing Plaintiff's notice of the alleged wrongdoing).

from public records"). Plaintiff, however, has deprived Defendants of the opportunity Rule 9(b)

affords them to make that challenge at this threshold stage.

The particularity with which Plaintiff has pled the circumstances surrounding

Defendants' purportedly fraudulent acts and omissions is woefully deficient.[30] Her occasional

boilerplate references to isolated background facts among other conclusory allegations of fraud

injects neither precision nor any semblance of substantiation into Plaintiff's allegation of fraud.

It is in violation of Rule 9(b), and this Court should therefore dismiss Plaintiff's fraud claim.

### D. Plaintiff's Civil RICO Claim Should Be Dismissed

To state a claim for Civil RICO, a plaintiff must establish that the "defendants engage[d]

'in a pattern of racketeering activity' in a manner forbidden by § 1962, 'and the racketeering

activities injure[d] the plaintiff in his business or property.'" *Wright v. Towns,* No. 90-

0565(JHG), 1991 WL 100388, at *3 (D.D.C. May 30, 1991). She must do so by alleging facts

that "identify the speakers, the dates and times of the communications or the context thereof, the

recipients of the information, or the substance of the allegedly fraudulent statements." *Id.*; *see

also Whitfield v. Corp. for Pub. Broadcasting*, No. 90-1960 (JHG), 1990 WL 204695, at *4

(D.D.C. Nov. 30, 1990). The need to hold Plaintiff to her pleading burden is particularly acute

with respect to civil RICO claims, because "'[c]ivil RICO is an unusually potent weapon—the

litigation equivalent of a thermonuclear device.'" *Browning v. Clinton*, No. 98-1991 WBB, 2001

U.S. Dist. LEXIS 24537, at *36 (D.D.C. Feb. 12, 2001), *aff'd in part, rev'd in part*, 292 F.3d 235

---

[30] Plaintiff also fails to allege facts demonstrating that she was actually damaged by the allegedly fraudulent conduct. She summarily alleges that "Defendants effectively, and knowingly, destroyed Plaintiff's source of income for life an amount to be ascertained, but Plaintiff is informed and believes, and thereon alleges, that such damages exceed Three Million Dollars ($3,000,000)." Compl. ¶ 65. Such a bald assertion is insufficient as a matter of law. *See, e.g.*, *Bennett v. Kiggins*, 377 A.2d 57, 60 (D.C. 1977) ("Facts which will enable the court to draw an inference of fraud must be alleged, and allegations in the form of conclusions on the part of the pleader as to the existence of fraud are insufficient.").

(D.C. Cir. 2002) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991). In this regard, "'it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering.'" *Id.* at \*36-37. Accordingly, courts exercise "'particular care . . . to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants.'" *Id.* at \*36.

These principles, applied to the bare and conclusory allegations of Plaintiff's Complaint, require dismissal of Plaintiff's civil RICO claim, for two reasons. First, Plaintiff has failed to allege that she suffered an injury to her "business or property" as a proximate result of Defendants' alleged RICO violations, and therefore has failed to demonstrate standing to bring the claim. Second, Plaintiff has failed to show that Defendants "associated with" or participated in conducting the affairs of HILLC, the alleged RICO "enterprise," or that HILLC had any connection to the predicate acts of "extortion" Plaintiff alleges. Plaintiff therefore has failed to satisfy the necessary elements of her RICO claim.

### 1.    Plaintiff Has Failed To Allege Standing Under RICO

Only a person "injured in his business or property by reason of a violation of section 1962" has standing to bring a civil RICO claim. 18 U.S.C. § 1964(c). A RICO plaintiff must therefore show "that the proximate cause of his injury is the defendant's conduct." *Nix v. Hoke*, 62 F. Supp. 2d 110, 115 (D.D.C. 1999); *see also Scheck v. Gen. Elec. Corp.*, No. 91-1594, 1992 WL 13219, at \*3 (D.D.C. Jan. 7, 1992) (dismissing plaintiff's Civil RICO claim for lack of standing, where plaintiff's complaint alleged only "vague suggestions that [his] career was negatively affected").[31]    "Proximate cause may be found in the RICO context if the alleged

---

[31]    *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 120 (2d Cir. 2003).

violation of § 1962 is 'a substantial factor in the sequence of responsible causation.'"  *Nix*, 62 F.

Supp. 2d at 115.

In this case, Plaintiff alleges that Billy Harbert, Jr. engaged in a scheme involving two

predicate acts of "extortion" in violation of RICO.  *See* Compl. ¶ 76–78.  They involve:

(1)     a March 2, 2005 automobile accident involving former Congressman Hilliard that

Plaintiff (based on information she allegedly received from an unidentified

source) somehow traces to Mr. Billy Harbert, Jr., Compl. ¶ 77; and

(2)     an April 14, 2005 incident at Plaintiff's home involving an alleged "hitman"

purportedly dispatched by Mr. Harbert, Jr. to retrieve certain bank records, *id.*

¶ 78.

Despite these wild accusations, however, Plaintiff alleges no facts demonstrating that the alleged

acts of extortion proximately caused any injury to her "business or property."  Plaintiff in her

Complaint simply states that "[b]y reason of the violation of 18 U.S.C. § 1962(c) committed by

Defendants, Plaintiff was injured in her business or property in a sum at present unknown, but in

excess of $210,000, including, but not limited to, by payment of attorney's fees."  Compl. ¶ 85.

Plaintiff otherwise pleads only that she will "amend the Complaint to set forth said damages as

such time as they have been ascertained."  *Id.*  Plaintiff's conclusory allegation is not enough to

overcome her burden of demonstrating standing to bring a RICO claim.  It is Plaintiff's burden to

demonstrate how she suffered a $210,000 injury to her "business or property" as a proximate

result of the RICO Defendants' alleged extortion.  *See, e.g.*, *Glenn v. First Nat'l Bank in Grand

Junction*, 868 F.2d 368, 372 (10th Cir. 1989) (a court is not "obligated to construct a [RICO]

cause of action from allegations in a complaint filed by a party who was unwilling or unable to

plead the cause of action himself").  Plaintiff fails to carry that burden, offering only the bare

legal conclusion that she was "injured in her business and property." Such an allegation is insufficient as a matter of law, and this Court should dismiss Plaintiff's Civil RICO claim. *See*, *e.g.*, *Nix*, 62 F. Supp. 2d at 116; *Scheck*, 1992 WL 13219, at *3.

**2.    Plaintiff Has Failed To Allege Facts Satisfying The Necessary Elements Of Her RICO Claim**

Even if Plaintiff has demonstrated standing, this Court should nevertheless dismiss Plaintiff's RICO claim because she has failed to allege sufficient facts satisfying the necessary elements of that claim.[32]

*First*, Plaintiff has failed to allege any facts proving that Mr. Harbert, Jr. was "employed by or associated with" HILLC, the putative RICO "enterprise." The Complaint is utterly devoid of any facts describing Mr. Harbert, Jr.'s role in or relationship with HILLC—let alone facts showing that the he associated with HILLC "to carry on a pattern of racketeering activity." *Gussin v. Shockey*, 725 F. Supp. 271, 277 (D. Md. 1989) ("The association must include an aspect of purpose to violate the act."). Instead, the Complaint alleges only that "Billy Harbert, Jr. was 'associated with' [HILLC] in that such Defendant actively took part in the *scheme* to extort Plaintiff as herein alleged, furthered such *scheme* by cooperation or request, lent aid or encouragement to wrongdoers or ratified and adopted acts committed by other Defendants for such Defendant's benefit." Compl. ¶ 69 (emphasis added).

This purely conclusory allegation regarding Mr. Harbert, Jr.'s contributions to a "scheme" says nothing at all about the relationship between Mr. Harbert, Jr. and the "enterprise"

---

[32] Section 1962(c) makes it unlawful for any person who is "employed by or associated with any enterprise . . . to conduct or participate . . . in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). In order to state a viable cause of action under Section 1962(c), therefore, a plaintiff who has demonstrated standing must also allege, at a minimum, that a defendant who was "employed by or associated with an enterprise" participated in the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L.*, 473 U.S. at 496.

or between HILLC and the alleged racketeering activity. Indeed, Plaintiff appears to refer to HILLC only as a matter of convenience—as an entity separate and apart from Mr. Harbert, Jr. that Plaintiff can baldly allege to be the operative "enterprise."[33] The Complaint otherwise alleges no facts whatever showing how any of the alleged instances of racketeering activity was related to HILLC. Plaintiff was required to plead sufficient facts to establish a connection between HILLC and the allegedly illegal "schemes" beyond her own conclusory statements. *See*, *e.g.*, *Scheck*, 1992 WL 13219, at *3 (Plaintiff's "vaguely pleaded, bald allegation" that defendants "through their relationships with one another are an enterprise" was insufficient to establish a RICO enterprise); *Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir. 1990) (alleged "scheme" cannot form part of a pattern of racketeering activity where the complaint alleges no "relationship between [the] scheme and the named enterprises"). Her failure to do that is fatal to her RICO claim. *See id.*

  *Second*, Plaintiff has failed to allege facts showing that Mr. Harbert, Jr. "conducted or participated in the conduct" of HILLC's affairs by "participat[ing] in the operation or management of the enterprise itself" and playing "some part in directing the enterprise's affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993); 18 U.S.C. § 1962(c). The Complaint is devoid of *any* facts demonstrating that Mr. Harbert, Jr. performed *any services* for HILLC, let alone participated in the "operation or management" of HILLC through a pattern of racketeering activity, as Section 1962(c) requires. As such, Plaintiff's RICO claim should be dismissed. *See Reves*, 507 U.S. at 185 ("[L]iability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.") (emphasis in

---

[33] In this regard, the Complaint's conclusory allegation that "HILLC is an 'enterprise' within the meaning of 18 U.S.C. § 1961(4)," Compl. ¶ 43, is patently insufficient to satisfy Plaintiff's pleading burden. *See Scheck*, 1992 WL 13219, at *3 ("'Plaintiffs in a RICO claim must plead specific facts, not merely conclusory allegations, which establish the enterprise'") (quoting *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988)).

original).

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff Hoda Elemary's First, Fifth,

and Sixth Causes of Action against Defendant Billy Harbert, Jr., and Plaintiff's First and Fifth

Causes of Action against Defendant B.L. Harbert International, LLC.

Dated:  June 27, 2007                              Respectfully submitted,

                                                     /s/ Roger S. Goldman
                                                    Roger S. Goldman
                                                    (D.C. Bar No. 333294)
                                                    LATHAM & WATKINS LLP
                                                    555 11th Street, N.W.
                                                    Suite 1000
                                                    Washington, D.C. 20004
                                                    Tel: (202) 637-2200
                                                    Fax: (202) 637-2201
                                                    Email: roger.goldman@lw.com

                                                    Of Counsel:
                                                    Matthew H. Lembke
                                                        (*pro hac vice* pending)
                                                    BRADLEY ARANT ROSE & WHITE LLP
                                                    One Federal Place
                                                    1819 Fifth Avenue North
                                                    Birmingham, AL 35203
                                                    Tel: (205) 521-8000
                                                    Fax: (205) 521-8800
                                                    Email: mlembke@bradleyarant.com

                                                    Attorneys for Defendants Billy Harbert, Jr. and
                                                    B.L. Harbert International, LLC

**CERTIFICATE OF SERVICE**

I, Roger Goldman, hereby certify on this 27th day of June 2007, that I filed the foregoing {Motion to Dismiss, Memorandum of Law and Proposed Order} via the Court's CM/ECF system, which will send a notice of electronic filing to the following CM/ECF users:

**Mark Butler Bierbower**
mbierbower@hunton.com

I further certify that the foregoing documents were sent via first class mail, postage pre-paid to the following non CM/ECF user:

**HODA ELEMARY**
21 Le Conte
Laguna Niguel, CA 92677


/s/ Roger Goldman
Roger Goldman

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. HODA ELEMARY, <br><br> Plaintiff, <br><br> v. <br><br> PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., <br><br> Defendants. | NO: 1:07-cv-00654-RCL <br><br><br> Hon. Royce C. Lamberth |

### DECLARATION OF BILLY HARBERT, JR.

I, BILLY HARBERT, JR., Defendant in the above-styled action, declare as follows:

1.     I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration. This Declaration is based upon my personal knowledge.

2.     I am a resident of the State of Alabama.

3.     I do not own property in the District of Columbia.

4.     I travel to the District of Columbia an average of once a year to meet with officials from the State Department. The purpose of these trips is to discuss construction projects related to overseas embassies in which Bill L. Harbert International, LLC ("HILLC"), of which I am the President, is involved.

5.     I do not conduct any personal business in the District of Columbia. I do not personally employ any person who lives in the District of Columbia, nor do I hold any licenses issued by the District of Columbia or any department or official thereof.

6.    I have never seen, spoken to, or taken any other action, on my own behalf or while acting for HILLC, with regards to Hoda Elemary, Plaintiff in this action, while in the District of Columbia.

7.    HILLC was formed in 1999. It is a Delaware limited liability corporation having its principal place of business is in Birmingham, Alabama.

8.    HILLC has never had any operations in the District of Columbia, nor has it ever been authorized to do business in the District of Columbia.

9.    Harbert International Establishment, Inc. ("HIE, Inc.") was also formed in 1999. It is an Alabama corporation with its principal place of business in Birmingham, Alabama.

10.    HIE, Inc. has never conducted any business anywhere. It is a "shelf" corporation that is maintained solely for purposes of preserving that corporate name.

11.    HIE has never had any operations or employees in the District of Columbia, and has never been authorized to do business in the District of Columbia.

12.    My father, Bill L. Harbert, Sr., a co-Defendant in this action, is eighty-three (83) years old and a resident of Alabama. He has been diagnosed as suffering from dementia. In connection with litigation in the United States District Court for the District of Columbia, testimony concerning his medical condition was recently submitted. A copy of that testimony is attached hereto as Exhibit A. In response to that testimony, the court ruled that my father would not be required to give testimony in that action.

13.    My father has executed a durable power of attorney. My two sisters (Anne Moulton and Elizabeth Cornay) and I are authorized to act jointly as his attorneys-in-fact, and we will collectively manage his defense in this litigation. My two sisters reside in Birmingham, Alabama.

2

14. My father has not left the State of Alabama in over eighteen months except to travel to a beach home in Florida that is less than seventy-five (75) miles beyond Alabama's border. He cannot travel without assistance, and, even with assistance, travel is difficult for him physically and emotionally.

15. I have reviewed the allegations made in Plaintiff's Amended Complaint pertaining to a "hitman" that I allegedly dispatched to harm her on April 14, 2005. I did not dispatch any such "hitman" in April 2005 or at any other time, and the allegations in the Amended Complaint of my involvement concerning the individual who purportedly visited Plaintiff's home and assaulted her on April 14, 2005, are false. I have no knowledge concerning any physical attack or assault on Plaintiff or resulting injuries to her that occurred in April 2005 or any other time. I have never hired or otherwise directed any person to physically harm, injure, or murder Plaintiff, nor am I aware of any other person ever having hired or otherwise directed anyone to do so. I also have never hired or otherwise directed anyone to visit Plaintiff's home for any purpose.

16. Any records pertaining to Hoda Elemary's employment as an independent contractor for Bill L. Harbert, Sr. are kept and maintained by Evangeline Hoover, my father's secretary, in Birmingham, Alabama. The business records of corporations related to that employment are maintained in Alabama, as are the business records of HILLC. My father and I also maintain our business records in Alabama.

17. Hoda Elemary has visited Birmingham, Alabama to meet with Bill L. Harbert, Sr. on several occasions in the last five years.

18. Earl Hilliard resides in Birmingham, Alabama.

19. Evangeline Hoover resides in Birmingham, Alabama.

3

20.    Alan Hall resides in Birmingham, Alabama.

21.    Henry Frohsin resides in Birmingham, Alabama.

22.    Rusty Moulton is my brother-in-law and resides in Birmingham, Alabama.

23.    William M. Sharp, Sr. resides in the State of Florida.

24.    Bryan Lavine resides in Atlanta, Georgia.

25.    June Ann Sauntry resides in Atlanta, Georgia.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed on June 27, 2007.


_Bill L. Harbert_

_____
Billy L. Harbert, Jr.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. HODA ELEMARY, | NO: 1:07-cv-00654-RCL |
| Plaintiff, | |
| v. | Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., | |
| Defendants. | |

## [PROPOSED] ORDER

The matter came before the Court on _____, 2007 on the Motion of

Defendants Billy Harbert, Jr. and B.L. Harbert International, LLC to Dismiss.  The Court being

fully advised in the premises, IT IS HEREBY ORDERED that Defendants' Motion is

GRANTED.

The Court hereby ORDERS that Counts One, Five, and Six of Plaintiff Hoda Elemary's

Complaint against Billy Harbert, Jr. be, and hereby are, DISMISSED.

The Court FURTHER ORDERS that Counts One and Five of Plaintiff Hoda Elemary's

Complaint against B.L. Harbert International, LLC be, and hereby are, DISMISSED

ENTERED:

By the Court:

Date:_____

_____
Hon. Royce C. Lamberth
United States District Judge

cc:

Roger S. Goldman
(D.C. Bar No. 333294)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

Matthew H. Lembke
   (pro hac vice pending)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677