RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 JUL 30  PM 11: 05

NANCY M.
MAYER-WHITTINGTON
CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DR. HODA ELEMARY, | ) |
| Plaintiff, | ) Case No. 1:07-cv-00654-RCL |
| | ) |
| vs. | ) Hon. Royce C. Lamberth |
| | ) |
| PHILIPP HOLZMANN A.G | ) Oral Argument Requested |
| WACHOVIA BANK, N.A.; B.L. | ) |
| HARBERT INTERNATIONAL, LLC; | ) |
| SABBIA AKTIENGESELLSCHAFT; | ) |
| HARBERT INTERNATIONAL | ) |
| ESTABLISHMENT, INC.; BILL L. | ) |
| HARBERT, SR.; AND BILLY | ) |
| HARBERT, JR., | ) |
| Defendants | ) |
| | ) |
| | ) |

**MEMORANDUM IN OPPOSITION TO THE MOTION OF DEFENDANTS
BILLY HARBERT, JR. AND B.L. HARBERT INTERNATIONAL, LLC TO
DISMISS; REQUEST FOR JUDICIAL NOTICE**

RECEIVED

JUL 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

RECEIVED

JUL 3 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

L

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DR. HODA ELEMARY, | ) | |
| | ) | Case No. 1:07-cv-00654-RCL |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Hon. Royce C. Lamberth |
| | ) | |
| PHILIPP HOLZMANN A.G | ) | Oral Argument Requested |
| WACHOVIA BANK, N.A.; B.L. | ) | |
| HARBERT INTERNATIONAL, LLC; | ) | |
| SABBIA AKTIENGESELLSCHAFT; | ) | |
| HARBERT INTERNATIONAL | ) | |
| ESTABLISHMENT, INC.; BILL L. | ) | |
| HARBERT, SR.; AND BILLY | ) | |
| HARBERT, JR., | ) | |
| Defendants | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

I.   INTRODUCTION                                                          1

II.  AN OVERVIEW OF A REBUTTAL TO DEFENDANTS' SCORCHED
     EARTH LITIGATION PRACTICES (Case Facts)                              2

III. PROCEDURAL BACKGROUND (General Facts...........................      8

IV.  ARGUMENT                                                            10

   A.  THIS COURT HAS PERSONAL JURISDICTION OVER BILLY
       HARBERT JR. AND HILLC                                             14

   B.  VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER
       28 U.S.C.§139128 U.S.C.                                           15

V.   THE FIRST CAUSE OF ACTION OF THE COMPLAINT
     PROPERLY STATES A CLAIM FOR INTERFERENCE
     WITH PROSPECTIVE ECONOMICADVANTAGE
     AGAINST BILLY HARBERT JR. AND HILLC AND
     SHOULD NOT BE DISMISSED                                             16

VI.  THE FIFTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES
     A CLAIM FOR FRAUD AGAINST BILLY HARBERT JR. AND HILLC AND
     SHOULD NOT BE DISMISSED                                             17

   A.  DEFENDANTS' CONCEALMENT OF THE FACTS UNDERLYING THE FIFTH
       CAUSE OF ACTION TOLLED THE STATUTE OF LIMITATIONS UNTIL 2004

       17

   B.  DEFENDANTS' FRAUD IS ADEQUATELY PLEADED                           20

VII.. THE SIXTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES
     A CIVIL RICO CLAIM AGAINST BILLY HARBERT JR. AND SHOULD NOT
     BE DISMISSED                                                        22

VIII. INCORPORATED SCHEDUAL: A FULL REBUTTAL TO DEFENDANTS'
     SCORCHED EARTH LITIGATION TACTICS ENUMERATING SPECIFIC
     PRACTICES BY DEFENDANTS, **REQUEST FOR JUDICIAL NOTICE**
     (Facts)                                                             25

IX.  CONCLUSION                                                          26

i

# TABLE OF AUTHORITIES

### Cases

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,
232 F.3d 1082, 1087-88 (9th Cir. 2000)    7

Banks v. Wolk,
918 F.2d 418, 421 (3d Cir. 1990)    15

Bates v. C&S Adjusters, Inc.,
980 F.2d 865, 867 (2d Cir. 1992)    9

Berger v. Rothschild,
648 F.Supp. 582, 585 (D.D.C. 1986)  11

Burger King Corp. v. Rudzewich,
471 U.S. 462, 479-80, 105 S.Ct. 2174,
2186, 85 L.Ed.2d 528 (1985)  6

Calder v. Jones,
465 U.S. 783, 785, 104 S.Ct. 1482,
1485, 70 L.Ed.2d 804 (1984)  6

Dole Food Co., Inc. v. Watts,
303 F.3d 1104, 1111 (9th Cir. 2002)  6

First of Mich. Corp. v. Bramlet,
141 F.3d 260, 264 (6th Cir. 1998)    9

Gandal v. Telemundo Group, Inc.,
997 F.2d 1561, 1564-65 (D.C. Cir. 1993)    8

Gordy v. Daily News L.P.,
95 F.3d 829, 834 (9th Cir. 1996)    8

Gulf Ins. Co. v. Glasbrenner,
417 F.3d 353, 356 (2d Cir. 2005)    9

Hinman v. Westinghouse Elec. Co.
(1970) 2 Cal.3d 956, 959-960    16

Jenkins Brick Co. v. Bremmer,
321 F.3d 1366, 1371 (11th Cir. 2003)    9

Keeton v. Hustler Magazine, Inc
465 U.S. 770, 773, 779-80, 104 S.Ct. 1473,
1477-78, 1481, 79 L.Ed.2d 790 (1984)        7

Lewis v. Fresne,
252 F.3d 352, 359 (5th Cir. 2001)      6

Lisa M. v. Henry Mayo Newhall Memorial Hospital
(1995) 12 Cal.4th 291, 296      15

Marketing West, Inc. v. Sanyo Fisher (USA) Corp., 6 Cal.App.4th 603, 613, 7 Cal.Rptr.2d
839, 864 (1992)        14

Mary M. v. City of Los Angeles
(1991) 54 Cal.3d 202,208                16

Moore v. AT&T Latin America Corp.,
177 F.Supp.2d 785, 789 (N.D.Ill. 2001)        10

Myers v. Barnett Law Offices,
238 F.3d 1068, 1076 (9th Cir. 2001)        9

Naartex Consulting Corp. v. Watt,
722 F.2d 779, 787 (D.C. Cir. 1983)        8

Newton v. Thomason,
22 F.3d 1455, 1463-64 (9th Cir. 1994)        9

Norgart v. Upjohn Co.,
21 Cal.4th 383, 399 n. 4, 87 Cal.Rptr.2d
453, 464 n. 4 (1995)                1

Parsons v. Tickner,
31 Cal.App.4th 1513, 1526, 37 Cal.Rptr.2d
810, 817(1995)                12

Richards v. Duke Univ.,
480 F.Supp.2d 222, 235-36 (D.D.C. 2007)      11

Rogers v. Warden
20 Cal.2d 286, 289, 125 P.2d 7, 9 (1942)        14

Sinatra v. National Enquirer, Inc.,
854 F.2d 1191, 1195-98 (9th Cir. 1988)        7

Sunderland v. Lockhead Martin Aeroutical Systems Support Co.,
130 Cal.App.4th 1, 8-9 (2005)          16

TIG Ins. Co. v. NAFCO Ins. Co., Ltd.,
177 F.Supp.2d 561, 567 (N.D.Tex. 2001)    10

TruServ Corp. v. Neff,
6 F.Supp.2d 790, 792 (N.D.Ill. 1998)      9

WNS, Inc. v. Farron,
884 F.2d 200, 204 (5th Cir. 1989)         7

Yahoo! Inc. v. La Ligue Contre Le
Racisme Et L'Antisémitisme,
433 F.3d 1999, 1205-06 (9th Cir. 2006)    6

## STATUTES

18 U.S.C. § 1951(a)    14

18 U.S.C. §1956(a)(1)(A)      5

18 U.S.C. §1961(l)    15

18 U.S.C.§1964        7

28 U.S.C. §1391(a)(2) 9

D.C. Code §13-423(a)(4)       8

Hobbs Act, 18 U.S.C.§1951   5

Federal Rule of Civil Procedure 9(b) 13

Federal Rule of Civil Procedure 12(b)(2)    5, 6, 7, 9

Federal Rule of Civil Procedure 12(b)(3)    5, 9
Federal Rule of Civil Procedure 12(b)(6)    5, 13I.

# INTRODUCTION

The within action arises in its entirety out of the events and circumstances attending plaintiff Dr. Hoda Elemary ("Plaintiff')'s activities as spokesperson in association with Senator Bob Dole for Bill L. Herbert (true and correct copies of documents obtained from Senator Dole, Mr. Harbert with Dr. Elemary are attached collectively hereto as Exhibit "A" and made a part hereof.) Plaintiff was also employed by Mr. Harbert as exclusive case manager of a qui tam case United States of America ex rel. Richard F. Miller v. Philipp Holzmann A.G. et al., United States District Court for the District of Columbia case no. 1:95CV01231 WBB (the "False Claims Case"), the trial of which recently concluded in this Court and which is referenced in paragraph 8 of the Complaint for Damages culminating in the execution and delivery of the November 3 2003 trust and the September 21 Agreement in 2004 between Mr. Harbert and Plaintiff as described in paragraph 43 of the Complaint.

With a premeditated intent to cause Plaintiff irreparable damage to secure the lion share of Mr. Harbert's Estate, Defendant Billy Harbert, Jr. convinced Mr. Harbert under duress enticing him with an illusionary likel ihood that the Harbert Defendants would prevail against the United States in the FalseClaim Case if they go to trial, Mr. Harbert elected to breach his agreements with Plaintiff, who had negotiated with the Department of Justice and with the help of Senator Dole and John F. Boese a dramatically lesser amount of $15,000,000 settlement ( than the ultimate verdict assessed the damages

1

to be ). Attached hereto is a true and correct copy of the Department of Justice March 18, 2005 confirmation of the $15,000,000 settlement as Exhibit "B" and made a part hereof, which Mr. Harbert reneged on paying after agreeing to do so.

## II. AN OVERVIEW OF A REBUTTAL TO DEFENDANTS' SCORCHED EARTH LITIGATION PRACTICES

*A LEGAL PRESENTATION* UNDER THE CAPTION "ARGUMENT" IS PROVIDED HEREINBELOW IN SECTION IV.   *A PRESENTATION OF THE FACTS* CAN BE FOUND IN SECTION II PAGE 1 "AN OVERVIEW OF A REBUTTAL..." AND IN THE 'INCORPORATED SCHEDULE' VALIDATED BY OFFICIAL EVIDENCE FROM THE UNITED STATES THAT EXPOSES DEFEDANTS FOR FABRICATION OF FALSE ALEGATIONS IN THE INSTANT CASE.

The Court's rulings depend on the credibility of facts presented by counsel. However, unless the facts are rebutted and proven to be false, the Court does not have the time to research the validity of every fact presented to it. Plaintiff provides herein independent documents, including letters from the United States Senate, the President of the United States -- as well as a legally transcribed recording of a conversation with Defendant Bill L. Herbert, based on mutual consent, in addition to the actual recording of Bill L. Harbert ("Mr. Harbert .") conducted on May 16, 2007 -- as prima facie evidence to rebut counsel Lembke's and Goldman's knowingly fabricated statements to

2

mislead the Court in their statements cited in the motion of Defendant Billy

Harbert, Jr. and B.L. Harbert International, LLC to dismiss, in a similar motion by Mr.

Harbert Sr. and defendants motion to transfer venue.

In the interests of brevity, Plaintiff will prove that 11 of the referenced 13 lines

have no basis in fact or law, and constitute the basis provided by Defendants to make it

impossible for any court interested in justice to grant their motion based on Messrs.

Lembke's and Goldman's flagrant and daring attempt to trick the Court to grant their

motion on false grounds. Based on the multiple misrepresentations in the first 13 line

paragraph, it is evident that the systematic deliberate misrepresentations, which are

fraught through out the document making it impossible for the Court to rely on the

credibility of Defendants' alleged facts. In the interest of brevity listed herein below and

continued in the " Incorporated Schedule" are an example of Defendants

misrepresentations numbered in Arabic Numerals.

1- In point of fact, in the aforementioned initial 13 lines of the "Procedural

Background" section, Defendants reference "[Plaintiff's] spinning a bewildering tale

filled with wild claims of irrelevant self importance, Compl. Para. 4 ('a majority of the

United States Senators . . . have credited Plaintiff with playing a pivotal role in lobbying

Congress to support Operation Desert Storm ...')".

**Messrs. Lembke and Goldman have deliberately misled the Court into**

**believing that indeed Plaintiff spun a bewildering tale filled with wild claims of**

**irrelevant self importance. However, the quotation referenced by these counsel**

**misquoted and deliberately undermined the serious work of a United States**

3

Senator seeking to provide necessary security for Plaintiff in her travels on behalf of the United States in the troubled Middle East.

Attached hereto is a true and correct copy of Senator Dianne Feinstein's letter as Exhibit "C" and made a part hereof. Senator Feinstein stated in her request to a foreign leader ". . . It is based on the vital services Ms. Elemary provided Congress, which have been determined to serve U.S. national interests. A majority of the United States Senators have overwhelmingly endorsed Ms. Elemary's work and have credited her with playing a private role in lobbying the Congress to support Operation Desert Storm, as it did on January 12, 1991; forgive Egypt's $7 billion debt, as it did on October 19, 1990; and, undertake many supportive initiatives."

*Plaintiff respectfully requests the Court to take judicial notice of Senator Feinstein's letter and of the 2nd page of Defendant Billy Harbert Jr.'s motion to dismiss, which contains the above mentioned misrepresentation , a true and correct copy of which is annexed hereto as Exhibit "D" and incorporated herein by this reference.*

*It is evident that an official statement of the United States Congress crediting and defining Plaintiff's achievements on behalf of the United States has been despicably disfigured and misrepresented to the Court, placing unwarranted blame on Plaintiff for "making wild claims of irrelevant self-importance" for statements that were never made by Plaintiff but by a United States Senator, with whom Messrs. Lembke & Goldman should vent their dissatisfaction and disagreement as the author of the letter, for daring to acknowledge Plaintiff's work. Accordingly, by granting*

4

*this motion the Court would be granting Messrs. Lembke and Goldman the power to control what Congress writes about Plaintiff, if the Court elects to believe their fabricated allegation. But if it does not, the Court has an obligation to rule on the basis of the truth and deny this motion.*

*To this end, the Court and Plaintiff have been reduced to engaging in an unpleasant disciplinary action to correct child-like trickery. It is through these stabs in the dark that civility in the courtroom has nearly ceased to exist and regrettably replaced by a new methodology by Defendants to obviate justice. The end result is that Plaintiff's constitutional right to have his or her day in court has been submerged with courts permitting this course of conduct to go on unnoticed.*

*The Court, in light of the misrepresentation cited herein, must deny Defendants' motion and restrict Mr. Lembke's conduct to only make factual statements to the Court if he is to continue to appear in front of this Court. During his two year involvement of this matter, Mr. Lembke managed to presume, violate and insult Senator Bob Dole, Attorney General Alberto Gonzales, Mr. Michael F. Hertz of the Civil Division, Department of Justice and a host of Senators and Ju*

The Court has the power to regulate the conduct of attorneys appearing before it. Mr. Lembke, who submitted the initial draft of the referenced (motion to dismiss) to Mr. Goldman (of Latham & Watkins) and who is not admitted to practice before this Court, was recently granted leave by the Court to appear in this case pro hac vice. Accordingly, this Court retains the power to restrict or withdraw this privilege in light of Mr. Lembke's abuse of the privilege to practice

5

before it. In particular, Mr. Lembke's initiative knowingly to perpetrate a fraud on this Court and Plaintiff's ability to provide the Court in a timely manner with sufficient grounds to deny Defendants' motion to dismiss because it will be exposed by independent documents herein that Defendants' motion is based on false and fabricated statements and illusionary facts.

Messrs. Lembke and Goldman have not only intentionally misinformed the Court and fabricated facts, but have failed to serve Plaintiff with copies of the filed documents, which constitutes additional grounds for denying the motion. Fortunately, Plaintiff learned as recently as a few days ago, on July 21, 2007, upon receipt of the Court's July 16, 2007 order that notified Plaintiff that Defendants had responded. It is evident that Defendants sought to intentionally withhold from Plaintiff their false and fictional submission to the Court of motions to dismiss by fraudulently misleading and misinforming the Court of proof of service when in fact Defendants despicably and willfully refrained from mailing copies of their motions to plaintiff.

In so doing, Defendants unlawfully sought to trick the Court into believing that Plaintiff's silence signals plaintiff's agreement with Defendants' concocted facts, when nothing could be further from the truth. Plaintiff vehemently objects to Defendants' dishonorable conduct in this incident as well as on their Physical attempt on the lives of Plaintiff and former U.S. Congressman Earl Hilliard, first black Congressman since reconstruction from the State of Alabama. Plaintiff respectfully request the Court for Judicial Notice of official U.S. and state documents including Police Reports of these incidents. True and correct copies of these official documents are collectively attached

hereto as Exhibit "E" and made a part hereof.

## PLAINTIFF RESPECTFULLY REQUEST THE COURT, IN LIGHT OF DEFENDANTS' S DISHONORABLE CONDUCT,TO PROCEED WITH OUT DELAY AND WITHOUT CONSENTING TO FURTHER DELIATORY TACTICS BY DEFENDANTS TO OBVIATE THIS COURT OF EVER HEARING PLAINTIFF'CLAIMS AND FURTHER INTIMIDATE PLAINTIFF AND HER ASSOCIATES, THUS CIRCUMVENT PLAINTIFF'S RIGHT TO A FAIR HEARING AND INSURE THAT BILLY HARBERT, Jr. WOUL WALK AWAY UNPUNISHED FOR HIS LEGALTRANSGRESSIONS.

Through the motions of Billy Harbert Jr. and Mr. Harbert Sr. to dismiss, which Mr. Harbert Sr. was not informed of, and the motion to transfer venue, Messrs. Lembke and Goldman now seek the Court's approval -- not only to whitewash their client **Billy Harbert Jr.'s serious crimes,, but further to discredit Plaintiff's credibility to ensure the Court grants their motions on a false basis and to destroy Plaintiff's reputation within the United States Congress.**

Messrs. Lembke and Goldman state in the motion to dismiss by Billy Harbert Jr., Mr. Harbert Sr. and their motion to transfer venue under the caption "PROCEDURAL BACKGROUND" no less than five fabricated and false statements in the first paragraph of this section. The remainder of the motion to dismiss by Billy Harbert Jr. and a similar motion by Mr. Harbert Sr., as well as their motion to transfer venue, are fraught with deliberate misrepresentations to the Court as are contained in the first 13 lines of "PROCEDURAL BACKGROUND." *dges.*

7

## III. **PROCEDURAL BACKGROUND**

The fundamental dispute stems from Mr. Harbert Sr.'s providing Dr. Hoda Elemary assets and financial support over a period of 15 years, commencing in 1992. Billy Harbert Jr. reacted violently to his father's support for and work with Plaintiff, which Mr. Harbert Sr. acknowledged repeatedly in writing had profited him $51,300,000, including, but not limited to, Plaintiffs role in assisting to secure the United States Agency for International Development's award of three contracts on a waste water project in Cairo, Egypt, where Plaintiffs father and uncle were Prime Ministers, particularly during the time period these contracts were being awarded. In April 2001, Dr. Elemary became exclusive case manager and sole personal spokesperson for her husband Mr. Harbert Sr. in the False Claims Case. Dr. Elemary retained Senator Bob Dole; Charles F. Rule of Fried, Frank, Harris, Jacobson & Shriver ("Fried, Frank"); as well as Barry Coburn of then Shirtler & Coburn. Early in 2002, Billy Harbert Jr. initially coerced his father to allow him to fire counsel Charles F. Rule (former Director, Anti-Trust Division, U.S. Department of Justice), who was in the process of reducing the criminal fine of $54,000,000 which Mr. Harbert Sr. had guaranteed to the United States. In 2005, Billy Harbert Jr. once again threatened to expose his father publicly on an alleged $7,000,000 embezzlement from a construction project in South America if his father did not execute a letter dismissing Jack Boese of Fried, Frank, Senator Bob Dole and Dr. Hoda Elemary, and replacing them with Bryan Lavine and June Ann Sauntry of Troutman Sanders and Sam Pointer based on their

promise that Troutman Sanders would have the False Claims Case dismissed and Mr. Pointer's suggestion that he would prevail with Judge Robert Proabst, with whom he plays golf, on the declaratory relief matter. Mr. Harbert Sr. acted against his own will under blackmail by Billy Harbert Jr. and was therefore not surprised with the disappointing results of Judge Proabst's dismissal of the declaratory relief matter and the May 14, 2007 outcome of the False Claims Case verdict, with which this Court is intimately familiar. Billy Harbert Jr. and his (personal/part-time-in-house) counsel Matthew L. Lembke and Mr. Lembke's associate and former classmate Roger S. Goldman of Latham & Watkins have repeatedly overstepped the ethical boundaries for criminal attorneys and instead participated in cover up activities to shield Billy Harbert Jr. from his unlawful business conduct.  Homer Jackson, Treasurer of the Republican Party (Birmingham Chapter), and personal tax attorney to Mr. Harbert Sr. since 1952, is on record stating that he is too honest to work for Billy Harbert Jr.and his attorneys.

**The First Cause of Action (Interference with Prospective Economic Advantage) (Complaint, ¶¶34-41) alleges the successful interference by Billy Harbert Jr. with the $15 million settlement proposed by the Department of Justice (the "DOJ") and otherwise accepted by Mr. Harbert Sr., thereby depriving Plaintiff of the $2,050,000 success fee she would otherwise have earned under the September 21 Agreement; the Second Cause of Action (Breach of Contract) (id., ¶¶42-47) alleges the breach of the September 21 Agreement by Mr. Harbert Sr.; the Third Cause of Action (Quantum Meruit) (id., ¶¶48-50) seeks compensation for the reasonable value f services performed by Plaintiff under the September 21 Agreement; the**

**Fourth Cause of Action (Termination in Violation of Public Policy) (id.,** **¶¶51-57) seeks relief in tort for the** termination of the September 21 Agreement; the Fifth Cause of Action (Suppression of Facts) (id., ¶¶158-65) arises out of events which led to the filing of the False Claims Case; the Sixth Cause of Action (Civil RICO) (id., ¶¶66-85) alleges the commission of violations of the Hobbs Act, 18 U.S.C. §1951, in an attempt to bring about the termination of the September 21 Agreement; and the Seventh Cause of Action (Civil RICO) (id., ¶¶86-104) alleges the laundering of monetary instruments in violation of 18 U.S.C. §1956(a)(1)(A) in connection with a phantom equipment-leasing transaction organized by Mr. Harbert Sr. with defendant Sabbia Aktiengesellschaft. At all relevant times, Plaintiff spent half of the year in Washington, dealing with the White House and the United States Congress. Complaint, ¶29.

Defendants Billy Harbert Jr. and B.L. Harbert International, LLC ("HILLC") have moved to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for improper venue under Rule 12(b)(3), and additionally have moved under Rule 12(b)(6) to dismiss the First, Fifth and Sixth Causes of Action against Billy Harbert Jr. and the First and Fifth Causes of Action against HILLC (the "Motion"). As set forth hereinafter, the Motion should be denied in all respects.

## IV. ARGUMENT

### A. THIS COURT HAS PERSONAL JURISDICTION OVER BILLY HARBERT JR. AND HILLC

Billy Harbert Jr. and HILLC (sometimes hereinafter collectively referred to as "Defendants") first seek relief under Rule 12(b)(2) on the ground that they are not subject to the personal jurisdiction of the courts of the District of Columbia, and, therefore, of this Court. Motion, pp. 5-12. While Plaintiff does not claim that Defendants are subject to general jurisdiction in the District of Columbia (see, Motion, pp. 6-7), the Motion's discussion of specific jurisdiction ignores most of the jurisprudence developed under tort law with respect to in personam jurisdiction. A non-resident may be subject to personal jurisdiction in the District of Columbia for liability-producing acts having foreseeable consequences in the forum state. Burger King Corp. v. Rudzewich, 471 U.S. 462, 479-80, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528 (1985). In that regard, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Lewis v. Fresne, 252 F.3d 352, 359 (5th Cir. 2001.) Federal standards of due process require satisfaction of a three-pronged analysis of whether (i) the non-resident defendant "purposefully direct[s]" activity to the forum, (ii) the claim "arises out of or relates to" his forum-related activities and (iii) exercise of jurisdiction by the forum is "reasonable." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisémitisme, 433 F.3d 1999, 1205-06 (9th Cir. 2006). The first prong, also known as the "purposeful availment" prong, is met when (1) the defendant committed a "wrongful intentional act," (2) "expressly aimed" at the forum state, (3) causing harm that the defendant knew or should have known was likely to be suffered in the forum state. Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). For this purpose, "wrongful intentional acts" include defamation, intentional infliction of

11

emotional distress, and invasion of privacy. <u>Calder v. Jones,</u> 465 U.S. 783, 785, 104 S.Ct. 1482, 1485, 70 L.Ed.2d 804 (1984). Since the subject Causes of Action sound in interference with prospective economic advantage (First), termination in violation of public policy (Fourth), suppression of facts (Fifth) and violation of 18 U.S.C. § 1964 (civil RICO) (Sixth and Seventh), this element of the first prong has been properly pleaded.

The (second) "expressly aimed" element of the "purposeful availment" prong is satisfied when it is alleged that the nonresident engaged in "wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." <u>Bancroft & Masters, Inc. v. Augusta</u> Nat'l, Inc., 232 F.3d 1082, 1087-88 (9th Cir. 2000). At all relevant times, Billy Harbert Jr. knew that Plaintiff had residence in the District of Columbia. Complaint, ¶¶2 & 29. It should be noted that for purposes of adjudicating a Rule 12(b)(2) motion, all uncontroverted allegations in the Complaint are deemed true, and factual conflicts in the parties' declarations are resolved in the plaintiffs favor. <u>WNS, Inc. v. Farron,</u> 884 F.2d 200, 204 (5th Cir. 1989). As Billy Harbert Jr. has not denied any of the allegations of the Complaint, the "expressly aimed" element of the first prong of the limited jurisdiction test is met.

This leaves the third and last element of the "purposeful availment" prong, <u>i.e.,</u> that harm was suffered by the plaintiff in the forum state. This element is satisfied even if the plaintiff suffers "only a small proportion of her claimed injury" within the forum state, and "the bulk of the harm done" occurs outside the forum state. <u>Keeton v. Hustler Magazine, Inc.</u> 465 U.S. 770, 773, 779-80, 104 S.Ct. 1473, 1477-78, 1481, 79 L.Ed.2d

12

790 (1984).  Since Plaintiff, as a result of Billy Harbert Jr.'s and the other Defendants'

actions, was deprived of her good standing with the U.S. Senate in Washington, this

element of the test is satisfied.  Complaint, ¶¶22(b) & 64; see, e.g.. Sinatra v. National

Enquirer, Inc., 854 F.2d 1191, 1195-98 (9th Cir. 1988) (Swiss clinic which falsely told a

magazine reporter in Switzerland that Frank Sinatra had been a patient was subject to

personal jurisdiction in California for misappropriation of Mr. Sinatra's name as the

"purposeful direction of a foreign act having effect in the forum state").

The second prong of the limited jurisdiction inquiry, i.e., that the plaintiff's claim

"arise[] out of or relate[] to the defendant's forum related activities" is clearly met here,

since the forum-related activities are the wrongful acts pleaded in the Complaint.  As to

the third prong of "reasonableness", it has been held that personal jurisdiction on a non-

resident who, acting outside the state, intentionally causes injuries within the state, is

presumptively not unreasonable.  Calder v. Jones, supra, 465 U.S. at 789-790, 104 S.Ct.

at 1487; Gordy v. Daily News L.P., 95 F.3d 829, 834 (9th Cir. 1996).  Federal due

process requirements for this Court's assertion of personal jurisdiction over Billy Harbert

Jr. and HILLC are met

This leaves the matter of compliance with the District of Columbia's

comparatively restrictive long-arm statute, D.C. Code §13-423(a)(4).  See, Motion, pp.

9-12.  In this regard, Defendants' attempts to avoid the applicability of the statute are ill-

taken.  First of all, Plaintiff did suffer injuries in this district, as the actions alleged in the

Complaint harmed Plaintiff's standing in the U.S. Senate, one of her major theatres of

operations.  Complaint, 22(b) & 64. Second, in addition to Defendants' constant

13

A. appearances in Washington in connection with the False Claims Case, there is the fact that the Cairo Waste Water Treatment Project, which was the subject of the bid-rigging with which the False Claims Case was concerned, was funded by the United States Agency for International Development, an organization headquartered in Washington, and with which Defendants participated in meetings in Washington in order to obtain such funding. Collectively, these facts supply the "plus factor" referenced by Gandal v. Telemundo Group, Inc., 997 F.2d 1561, 1564-65 (D.C. Cir. 1993). See, Motion, pp. 9-10. Moreover, the "government contacts" exception referenced on pages 11-12 of the Motion, under which government-related activities may be conducted by non-residents of the District of Columbia without subjecting them to the jurisdiction of the District of Columbia courts, is inapplicable here, because of an exception acknowledged by the District of Columbia Circuit when putative defendants "had used the [governmental] proceedings as an instrumentality of the alleged fraud." Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983). In this case, of course, the gravamen of the Complaint is that Defendants used the Cairo Waste Water Project financed by the USAID as a vehicle for the bid-rigging which led to the False Claims Case and to Plaintiffs damages alleged herein when it ultimately developed that the clients for whose benefit Plaintiff used her United States and Middle East contacts to obtain lucrative contracts turned around and defrauded both the United States government and the people of Egypt and, in the process, destroyed Plaintiffs reputation and credibility. Accordingly, there is no legal or factual basis for granting relief against Plaintiff under Rule 12(b)(2), and the Motion should be denied.

14

## B. VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. §1391

Billy Harbert Jr. and HILLC next seek relief under Rule 12(b)(3) on the ground

that the venue of this action was not properly laid in this Court. Motion, pp. 12-14.

Plaintiff has two responses to this claim. Contrary to the Motion's cursory analysis,

venue is, in fact, proper under 28 U.S.C. §1391(a)(2), which references, in pertinent

part, "a judicial district in which a substantial part of the events or omissions giving rise

to the claim occurred . . . ." See, Motion, p. 12. In this regard, the statute does not

require that a "majority" of the "events or omissions" occur in the district for which

venue is claimed, or even that those events or omissions "predominate"; it is sufficient if

a "substantial part" occurs there. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d

Cir. 2005); Jenkins Brick Co. v. Bremmer, 321 F.3d 1366, 1371 (11th Cir. 2003). A

plaintiff is entitled to choose any of several districts having relatively equal connections

with the dispute. First of Mich. Corp. v. Bramlet, 141 F.3d 260, 264 (6th Cir. 1998)

(mail fraud committed in Los Angeles damaged plaintiffs business in San Francisco);

TruServ Corp. v. Neff, 6 F.Supp.2d 790, 792 (N.D.Ill. 1998) (personal guarantee signed

in one state for payment in another). A plaintiff has no obligation to file in the forum

most convenient to the defendant. Newton v. Thomason, 22 F.3d 1455, 1463-64 (9th

Cir. 1994).

In tort actions, the district in which the injuries were suffered, and in contract

actions, the district where the performance was due, are properly deemed to be the

districts in which a "substantial part" of the events or omissions occurred. Jenkins Brick

15

Co. v. Bremmer, supra, at ibid.; Myers v. Barnett Law Offices, 238 F.3d 1068, 1076

(9th Cir. 2001); Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992).

Plaintiff's damages to her standing within the political community resulting from the

fraud alleged in the Complaint, as well as her emotional distress, took place in this

district.  Moreover, it has been held that where a plaintiff sent communications from

and received communications in the forum state as part of the parties' negotiations, and

numerous communications were directed at the plaintiff in the forum, a "substantial

part" of the subject events is deemed to have taken place there.  See, Complaint, ¶30;

Moore v. AT&T Latin America Corp., 177 F.Supp.2d 785, 789 (N.D.I11.2001); TIG

Ins. Co. v. NAFCO Ins. Co., Ltd., 177 F.Supp.2d 561, 567 (N.D.Tex. 2001).

Accordingly, for each of the First, Fourth, Fifth, Sixth and Seventh Causes of Action, a

"substantial part" of the events or omissions took place in this District, and the Motion

must be denied.


V.      **THE FIRST CAUSE OF ACTION OF THE COMPLAINT PROPERLY
        STATES A CLAIM FOR INTERFERENCE WITH PROSPECTIVE
        ECONOMIC ADVANTAGE AGAINST BILLY HARBERT JR. AND
        HILLC AND SHOULD NOT BE DISMISSED**

        The Motion next attacks the First Cause of Action, sounding in interference with

prospective economic advantage, claiming that Plaintiff inadequately alleged

Defendants' knowledge of the existence of the subject contract.  Motion, pp. 15-16.

Appearing to confuse a plaintiffs task at the pleading stage with his task at trial, the

Motion rejects the averment of paragraph 38 of the Complaint that: "The provisions of

16

the September 21 Agreement were known to Defendants because Plaintiff . . . had been acting as exclusive case manager on the False Claims Case since April, 2001." Contrary to Defendants' carefully-posed incredulity, it is only reasonable that after five years, everybody at top management of the Harbert enterprises would know of Plaintiffs contract.

Secondly, it is claimed that no facts are alleged to show that Billy Harbert Jr. acted "intentionally and maliciously" to deprive Plaintiff of her expectancy in her success fee. Motion, pp. 16-18. In arguing that Billy Harbert Jr. was merely trying to obtain a better deal than the $15 million settlement offered by the DOJ -- an unconvincing claim in light of the $88 million verdict ultimately awarded by the jury against the False Claims Case defendants -- the Motion (see, pp.17-18) ignores such allegations as paragraphs 14 (describing Billy Harbert Jr.'s "obsession seeking to destroy Plaintiff financially and physically") and 22(c) (describing Billy Harbert Jr.'s harassment of Plaintiffs counsel Earl Hilliard). Read as a whole, and noting that paragraphs 1 through 33 of the Complaint were incorporated by reference into the First Cause of Action (see, Complaint, ¶34), the First Cause of Action is seen to be adequately pleaded.

VI.    **THE FIFTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CLAIM FOR FRAUD AGAINST BILLY HARBERT JR. AND HILLC AND SHOULD NOT BE DISMISSED**

A.    DEFENDANTS' CONCEALMENT OF THE FACTS UNDERLYING THE FIFTH CAUSE OF ACTION TOLLED THE STATUTE OF

17

LIMITATIONS UNTIL 2004.

The Motion next attacks Plaintiffs Fifth Cause of Action, sounding in fraud (Motion, pp. 18-26), first on the ground that the statute of limitations had lapsed (id., pp. 19-22), and second on the ground that it is not pleaded with sufficient particularity (id., pp. 22-26). The gist of Defendants' statute of limitations argument is that by virtue of Plaintiffs involvement in the defense of the False Claims Case beginning in April, 2001, Plaintiff, claims Defendants, was necessarily on notice of Mr. Harbert Sr.'s involvement in the bid-rigging scheme which was the subject of the False Claims Case long before April 10, 2004, the earliest date such knowledge was permissible under the District of Columbia's three-year statute of limitations for fraud. Motion, p. 18.  In support of this argument, Defendants cite authorities which hold that a plaintiff has "a positive duty to use diligence in discovering his cause of action within the limitation period" (Berger v. Rothschild, 648 F.Supp. 582, 585 (D.D.C. 1986)), and a plaintiff is charged with knowledge of matters which would have been revealed by such an investigation (Richards v. Duke Univ., 480 F.Supp.2d 222, 235-36 (D.D.C. 2007)).

The matter is not so simple, however.  Plaintiff alleges that Defendants herein, including Billy Harbert Jr., actively concealed the facts of their involvement in the bid-rigging scheme from Plaintiff. Complaint, ¶23 ("During and after the bid-rigging, Mr. Harbert Sr. and Billy Harbert Jr. insisted on maintaining a facade of lack of knowledge of the crimes that they were committing . . . . "); ¶62 ("Later, when Plaintiff agreed to become the exclusive case manager for the False Claims Case, Defendants concealed from Plaintiff the extent of their culpability in the big-rigging

18

scheme."); Incorporated Schedule, ¶II ("Defendants . . . deliberately banished and quarantined Plaintiff from learning of their bid-rigging schemes to which Defendants correctly anticipated Plaintiff would object."). Noting that the statute of limitations begins to run when "the plaintiff learns, or should have learned, the _facts_ incidental to his claim. [Citation.]" (Norgart v. Upjohn Co., 21 Cal.4th 383, 399 n. 4, 87 Cal.Rptr.2d 453, 464 (1995) (internal quotation marks omitted) (emphasis in original)), a different principle applies when the defendant deliberately conceals the facts from the prospective plaintiff. "Plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance." Parsons v. Tickner, 31 Cal.App.4th 1513, 1526, 37 Cal.Rptr.2d 810, 817 (1995) ("Parsons"). In Parsons, the plaintiff's action was found not to be time-barred where the defendants had willfully concealed the facts underlying their liability to the plaintiff for 19 years. Where a party conceals the facts from a victim, the victim is excused from the statute of limitations defense. "Fraudulent concealment of the facts is a good answer to the defense of the statute of limitations' [citation] . . . ." Parsons, 31 Cal.App.4th at 1528, 37 Cal.Rptr.2d at 818.

Applying the California Supreme Court's doctrine to Plaintiffs Fifth Cause of Action, it is seen that the very gravamen of this count of the Complaint -- that Plaintiff was damaged by the Harbert Contractors' inducement of Plaintiff to use her high-level political contacts in Egypt and elsewhere to enable them to be awarded the contracts for the Cairo Waste Water Treatment Project, at the same time they secretly

intended to bid-rig the related contracts -- is part and parcel of the very concealment of the facts analyzed in <u>Parsons</u>. The Motion makes much of the filing of the False Claims Case and the related investigative and criminal proceedings (<u>see</u>, Motion, pp. 20-22), claiming that Plaintiff was thereby put on notice of Defendants' culpability, but, as any experienced litigator knows, the fact that something is pleaded in a complaint does not make it true. Ultimately, it is for a finder of fact to determine whether Defendants' actions in concealing their involvement in the bid-rigging scheme could, or could not, have been discovered any earlier by Plaintiff in the exercise of reasonable diligence. Plaintiff respectfully submits that on a motion to dismiss under Rule 12(b)(6), this Court cannot make such a determination.

B.    <u>DEFENDANTS' FRAUD IS ADEQUATELY PLEADED.</u>

The Motion next argues that the Fifth Cause of Action is not pled with sufficient particularity, citing Rule 9(b). Motion, pp. 22-26. In evaluating this contention, Plaintiff in the Fifth Cause of Action herein alleges not misrepresentation, but concealment. Paragraph 59 of the Complaint lists six of the Defendants as either intending to engage in bid-rigging or being aware of such intentions (Complaint, ¶59), following which it is alleged that "[alt the time Plaintiff sought approvals for the Harbert Contractors to work on the Subject Project, Defendants did not disclose to her their intentions to engage in bid-rigging . . ." Complaint, ¶62. Accordingly, prior to 1990 (the start date of Plaintiffs "exile" to the

20

Saudi Royal Board of Grievances"; see, Complaint, Incorporated Schedule, ¶II),

these six Defendants, including Billy Harbert Jr., failed to disclose their knowledge

of the bid-rigging. Subsequently, these Defendants, as well as the remaining

Defendants, continued to conceal the facts of the Harbert Contractors' participation

therein in order to induce Plaintiff to assist them in delaying prosecution of the False

Claims Case. Complaint, ¶63. In other words, the "who, what, when, where and

how" pleading standard claimed by the Motion (see; Motion, p. 23) is inapplicable.

While Defendants acknowledge that this is a concealment case (see, Motion, pp. 24-

25), the Motion propounds an impossible pleading standard, requiring any plaintiff --

including Plaintiff herein -- to allege, in advance of discovery, just what each

Defendant knew and, by negative inference, precisely what each Defendant failed to

disclose. It is difficult even to imagine a fact situation in which a fraudulent

concealment plaintiff could meet such a pleading standard.

Finally, the Motion complains that no duty to disclose the withheld information

was established by the Complaint. Motion, pp. 23-24. Once again, the law is more

complicated than Defendants would have the Court believe. Even in transactions not

involving a fiduciary or confidential relation, the courts recognize at least three cases in

which a cause of action for non-disclosure of material facts may arise: (1) a defendant

makes representations but fails to disclose facts which materially qualify those disclosed;

(2) the facts are known or accessible only to the defendant, who knows they are not

known or reasonably discoverable by the plaintiff; or (3) the defendant actively conceals

the facts from discovery by the plaintiff. Marketing West, Inc. v. Sanyo Fisher (USA)

Corp., 6 Cal.App.4th 603, 613, 7 Cal.Rptr.2d 839, 864 (1992). It is readily seen that categories (2) and (3) apply to each Defendant in this instance. It should also be mentioned that a party otherwise under no duty to speak must, if he speaks, "make a full and fair disclosure." Rogers v. Warden (1942) 20 Cal.2d 286, 289, 125 P.2d 7, 9 (1942).

In sum, the Motion's objections to the Fifth Cause of Action not hold up to scrutiny. The Motion should be denied.

## VII. THE SIXTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CIVIL RICO CLAIM AGAINST BILLY HARBERT JR. AND SHOULD NOT BE DISMISSED

The Motion urges a variety of rationales in an attempt to procure the dismissal of the Sixth Cause of Action, sounding in civil RICO. Motion, pp. 26-31. First, it is claimed that Plaintiff failed to allege that she suffered damage to her "business or property" as a result of the pleaded RICO violations, and thus lacks standing to bring this claim. Motion, pp. 27-29. This claim, however, is erroneous. Paragraph 22(d) of the Complaint alleges that as the result of the physical attack perpetuated on Plaintiff on April 14, 2005, Plaintiff was incapacitated "for over seven months following the assault." Complaint, ¶22. This paragraph was incorporated by reference into the Sixth Cause of Action by paragraph 66 thereof, and the April 14, 2005 physical assault is duly alleged as an attempt at extortion within the intendment of 18 U.S.C. §1951(a) by paragraph 80 thereof and, accordingly, as an instance of "racketeering activity" within the intendment of 18 U.S.C. §1961(1) by paragraph 81 thereof. Accordingly, Plaintiff has alleged that she suffered an injury to her "business" as a proximate result of

Defendants' RICO violations. Plaintiff was personally, physically injured, as a result of which she could not work for seven months. The Motion's standing argument is ill-taken.

Second, it is claimed that the Complaint fails to show that Defendants are "associated with" or participated in conducting the affairs of the RICO enterprise, HILLC, or that it had any connection to the pleaded predicate acts. Motion, pp. 29-31. Plaintiff disputes that under the notice system of pleading in Federal courts, any more detail is required than is already provided in paragraphs 67 through 70 of the Complaint. It should also be noted that Billy Harbert Jr. states in his Declaration of Billy Harbert, Jr., attached to the Motion, that he is the President of HILLC. See, Declaration of Billy Harbert, Jr., ¶4. Accordingly, the relationship of Billy Harbert Jr. to HILLC is sufficiently pleaded. (Put differently, this Court can take judicial notice of Billy Harbert Jr.'s admission that he is the President of HILLC.) More generally, it has been stated that "This participation need not be direct. RICO recognizes liability for those who merely aid and abet the underlying predicate offenses. [Citation.] Moreover, a defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity, even if the defendant does not directly participate in the underlying acts. [Citations.]" Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990). Finally, the relation of HILLC to the predicate acts is that of respondent superior, since all of the acts were committed by its officers or agents:

The respondent superior doctrine makes an employer vicariously liable for torts of its employee committed within the "scope of the

23

employment." (Lisa M. v. Henry Mayo Newhall Memorial Hospital (1995) 12 Cal.4th 291, 296.) Liability under the respondent superior doctrine does not rely on the employer's fault, and thus "is a departure from the general tort principle that liability is based on fault." (Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202, 208.) Instead, the doctrine imputes liability to the employer for the employee's tortious act which injures a third party. The respondent superior doctrine rests on three rationales: "(1) to prevent recurrence of the tortuous conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (Id. at p. 209.) These rationales derive from a deliberate allocation of the risk, by which losses caused by employees' torts that "are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." (Hinman v. Westinghouse Elec. Co. (1970) 2 Cal.3d 956, 959-960.) The respondent superior doctrine is also "based on a 'deeply rooted sentiment'" that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities.' (Mary M. v. City of Los Angeles, supra, at p. 208.)

Sunderland v. Lockhead Martin Aeroutical Systems Support Co., 130 Cal.App.4th 1, 8-9 (2005). There is no basis in fact or law for the Motion's attack on the Sixth Cause of Action, and the Motion should be denied.

24

## VIII. (INCORPORATED SCHEDULE)

# A FULL REBUTTAL TO DEFENDANTS' SCORCHED EARTH LITIGATION TACTICS ENUMERATING SPECIFIC PRACTICES BY DEFENDANTS: REQUEST FOR JUDICIAL NOTICE

*IN "AN OVERVIEW OF A REBUTTAL TO DEFENDANTS' SCORCHED EARTH LITIGATION PRACTICES (Case Facts)" of section II herein above, Plaintiff demonstrated :*

*1. The trickery inherent in refraining to copy Plaintiff on the Motions they filed with this Court hoping to receive a quick order to grant their motions, to which they knew that plaintiff would strongly object because they were fraught with false facts and fabricated tales . Yet Defendants filed Proof of service with the Court.*

*2. How defendants knowingly misquoted to the Court Senator Dianne Feinstein's praise of Plaintiff's work and labeled Senator Feinstein's own words as "Wild claims of irrelevant self importance" misleading the Court that plaintiff wrote these words when an Exhibit of the Senator's letter show that plaintiff did not write these words as Defendants know. Yet Defendants pursued their SCORCHED EARTH LITIGATION PRACTICES notwithstanding the facts.*

***In the interest of brevity Plaintiff innumerate eight examples of the majority Defendants' similar statements as the intentional misrepresentation to the Court concerning Senator Feinstein's lettter.***

*3. This court is respectfully requested to take judicial notice of Mr. Lembke's October 12, 2006 demeaning and insulting letter to Plaintiff, whose charges and*

25

*claims against Plaintiff have been diametrically opposed and rejected out of*
*hand by Bill L. Harbert on May 16, 2007, even though Mr. Lembke's letter*
*purportedly claims to be written on behalf of Bill L. Harbert. The Court is also*
*requested to take judicial notice of Mr. Roger Goldman's March 28, 2000 letter*
*written in similar manner. Plaintiff collectively attaches true and correct copies of*
*Messrs. Lembke's & Goldman's letters as Exhibit "F" which are incorporated herein*
*by this reference.*

The evidence provided herein  confirms that Mr. Lembke has utilized this Court
as a sanctuary deliberately to confuse and conceal from the Court Billy Harbert JR's
crimes committed to date.

*4. Bill L. Harbert true and correct copy of a legally transcribed conversation*
*with Plaintiff based on mutual consent is attached hereto  as Exhibit "G" and*
*incorporated herein by this reference.  Plaintiff, additionally, attaches a true and*
*correct copy of the actual recording of the above-referenced conversation that was*
*engineered by Kent Gibson Forensic Audio lab as Exhibit "H" and incorporated*
*herein by this reference.*

*If the above referenced difference between Senator Feinstein's letter and*
*Messrs. Lembke & Goldman's  deliberate misrepresentation of it is not sufficient to*
*convince the Court of Defendants counsels' motive, a comparison of the referenced*
*letters of Messrs. Lembke & Goldman and the transcript together with Mr. Harbert in*
*his own voice stating the complete opposite of the content of these two letters provide a*

*confirmation beyond a doubt of the extent to which these counsel have been prepared*
*to go to change the focus from the claims made against Billy Harbert Jr. and*
*Plaintiff's complaint and the true facts as can now be ascertained by independent, true*
*and correct sources.*

    *5. In Defendants' PROCEDURAL BACKGROUND, they state " in a spree*

*Of repetitive and overlapping litigation, Plaintiff has now filed four lawsuits*
*surrounding her purported termination as 'Case Manager' by Mr. Harbert, Sr." If*
*Defendants had read the complaints they would have learned that two different cases*
*in the Family Law Court could not have been filed in a U.S. District Court and have no*
*relation whatsoever with being a Case Manager. There are two other complaints based*
*on different breached agreements. These cases have no " repetitive and overlapping"*
*similarities as Defendants continue to mislead the Court. There are no overlapping*
*causes of action. The first is focused on executed agreements and doing business in the*
*District of Columbia, where 90% of the witnesses reside. The second case was focused*
*internationally and in particular Cairo, Egypt, where the Waste Water Project took*
*place.*

*6 On page 2 of the same document defendants misinform the Court that there are "*
*"outlandish accusations" when in fact Mr. Harbert confirmed on record that the*
*allegations referenced in this matter did take place.*

    *7 On page 2 of the same document, defendants misinform the Court once again by*
*stating "raising nearly identical claims. The evidence of the 4 complaints disprove*

*Defendants repetitive misrepresentations on this point. The law allows Plaintiff to file litigations based on deferent breached agreements in family Court and another in a single federal Court. Defendants' removed a state court case to a federal court when in fact a liquidated damages case has no relation to a litigation on a breached contract based on the False Claims Case.*

8 *Defendants attempt to drill into the Court's conciseness " This Courtt should curb Plaintiff's abuse of the courts and grant Defendants' Motion to Transfer". This statement was made despite the Defendants' knowledge that 90% of this case reside in the District of Columbia. It would be a mockery of justice to inconvenience a majority of the witnesses for the sake of Billy Harbert, Jr. as this Court is aware Mr. Harbert can not participate in the legal proceedings of this Case due to his medical condition.*

## IX.    CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Respectfully submitted,

Dated: July 27, 2007

Dr. Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677
Tel.: (949) 715-2022
Fax: (949) 715-2060

28



# United States Senate

WASHINGTON, DC 20510-0504

(202) 224-3841

May 27, 1999

The Honorable Amr Moussa
Minister of Foreign Affairs
Ministry of Foreign Affairs
Arab Republic of Egypt,

Dear Mr. Moussa:

I am writing to ask you to provide me with a response concerning the Egyptian Government's position in ensuring that Ms. Hoda Elemary can travel safely in and out of Egypt at this time.

The purpose of this request is not to question Egypt's sovereign privileges over Ms. Elemary. It is based on the vital services Ms. Elemary provides Congress, which have been determined to serve U.S. national interests. A majority of the United States Senators have overwhelmingly endorsed Ms. Elemary's work and have credited her with playing a pivotal role in lobbying the Congress to support Operation Desert Storm, as it did on January 12, 1991; forgive Egypt's $7 billion debt, as it did on October 19, 1990; and, undertake many supportive initiatives in favor of advancing the peace process and enhancing close relations between the United States and Egypt.

I understand that she is the target of threats from political groups that oppose Egypt's cooperation with the U.S. and Israel. Because of her involvement in the Middle East peace process, I am requesting any information you may have concerning any political reasons that may prevent Ms. Elemary's safe return to the United States. I understand she will be traveling to Egypt in early June, 1999.

I look forward to Your Excellency's response regarding Ms. Elemary's secured return to the United States from Egypt.

With warmest personal regards.

Sincerely yours,

Dianne Feinstein
United States Senator

DF:rwh

Plaintiff In Propria Persona **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 467 South Arnaz Drive, Suite 319A, Los Angeles, California 90048.

On July 30, 2007, I served the foregoing document described as **MEMORANDUM** OF LAW IN **OPPOSITION** TO THE **MOTION** OF **DEFENDANTS BILLY** HARBERT, JR. AND B.L. **HARBERT INTERNATIONAL, LLC TO DISMISS** on the interested parties in this action by facsimile and by placing true copies thereof enclosed in (a) sealed envelope(s) addressed as follows:

Roger S. Goldman
LATHAM & WATKINS, LLP
555 11th Street, N.W.
Suite 100
Washington, D.C. 20004

Matthew H. Lembke
BRADLEY ARANT ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

I deposited this envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

BRIAN J. JACOBS
Type or Print Name                                    Signature