## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DR. HODA ELEMARY,<br><br>　　　Plaintiff,<br><br>　　　vs.<br><br>PHILIPP HOLZMANN A.G<br>WACHOVIA BANK, N.A.; B.L.<br>HARBERT INTERNATIONAL, LLC;<br>SABBIA AKTIENGESELLSCHAFT;<br>HARBERT INTERNATIONAL<br>ESTABLISHMENT, INC.; BILL L.<br>HARBERT, SR.; AND BILLY<br>HARBERT, JR.,<br>　　　　　Defendants | Case No. 1:07-cv-00654-RCL<br><br>Hon. Royce C. Lamberth<br><br>Oral Argument Requested |

**NOTICE OF ERRATA TO AMENDED MEMORANDA OF LAW IN OPPOSITION TO THE MOTIONS OF DEFENDANTS BILLY HARBERT, Jr. AND B.L. HARBERT INTERNATIONAL LLC TO DISMISS; BILL L. HARBERT, SR. AND HARBERT INTERNATIONAL ESTABLISHMENT, INC. TO DISMISS AND CERTAIN DEFENDANTS TO TRASNSFER VENUE.**

# RECEIVED

AUG 1 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## NOTICE OF ERRATA

PLEASE TAKE NOTICE that attached hereto are true and correct copies of plaintiff's Court stamped cover sheets of the --'MEMORANDA OF LAW IN OPPOSITION TO THE HARBERT DEFENDANTS' MOTIONS TO DISMISS AND TRANSFER VENUE'-- timely filed ( ON JULY 30, 2007).

Due to defendants' failure to serve copies of their motions to dismiss and transfer venue on Plaintiff, who had three days only to file an opposition after it learned of Defendants filed motions from the Court order of July 16, 2007- an easy reading and better thought out and structured version, that does reflects Plaintiff's proper position has been prepared for the Court instead of the earlier version, which was hurriedly prepared on account of Defendants' deliberate Fault but served to meet the Court's deadline.

THEREFORE, PLEASE TAKE NOTICE that attached hereto Are true and correct copies of Plaintiff's AMENDED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANTS BILLY HARBERT, JR. AND B.L. HARBERT INTERNATIONAL,

LLC TO DISMISS; MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION

OF DEFENDANTS BILL L. HARBERT AND HARBERT INTERNATIONAL

ESTABLISHMENT, INC. TO DISMISS AND MEMORANDUM OF LAW IN

OPPOSITION TO THE MOTION OF CERTAIN DEFENDANTS TO TRANSFER VENUE.

Respectfully submitted,

Dated: August 3, 2007

Dr. Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677
Tel.: (949) 715-2022
Fax: (949) 715-2060

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DR. HODA ELEMARY, | ) | Case No. 1:07-cv-00654-RCL |
| Plaintiff, | ) | |
| vs. | ) | Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G | ) | Oral Argument Requested |
| WACHOVIA BANK, N.A.; B.L. | ) | |
| HARBERT INTERNATIONAL, LLC; | ) | |
| SABBIA AKTIENGESELLSCHAFT; | ) | |
| HARBERT INTERNATIONAL | ) | |
| ESTABLISHMENT, INC.; BILL L. | ) | |
| HARBERT, SR.; AND BILLY | ) | |
| HARBERT, JR., | ) | |
| Defendants | ) | |
| | ) | |

### AMENDED
### MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF
### DEFENDANTS BILLY HARBERT, JR. AND B.L. HARBERT INTERNATIONAL
### LLC TO DISMISS; REQUEST FOR JUDICIAL NOTICE

**TABLE OF CONTENTS**

I.   INTRODUCTION                                                                          1

II.  AN OVERVIEW OF A REBUTTAL TO DEFENDANTS' SCORCHED
     EARTH LITIGATION PRACTICES (Case Facts)                                               3

III. PROCEDURAL BACKGROUND (General Facts)                                                 9

IV.  ARGUMENT                                                                             11

  A. THIS COURT HAS PERSONAL JURISDICTION OVER BILLY
     HARBERT JR. AND HILLC                                                                11

  B. VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER
     28 U.S.C.§139128 U.S.C.                                                              16

V.   THE FIRST CAUSE OF ACTION OF THE COMPLAINT
     PROPERLY STATES A CLAIM FOR INTERFERENCE
     WITH PROSPECTIVE ECONOMICADVANTAGE
     AGAINST BILLY HARBERT JR. AND HILLC AND
     SHOULD NOT BE DISMISSED                                                              17

VI.  THE FIFTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES
     A CLAIM FOR FRAUD AGAINST BILLY HARBERT JR. AND HILLC AND
     SHOULD NOT BE DISMISSED                                                              18

  A. DEFENDANTS' CONCEALMENT OF THE FACTS UNDERLYING THE FIFTH
     CAUSE OF ACTION TOLLED THE STATUTE OF LIMITATIONS UNTIL 2004
                                                                                         18

  B. DEFENDANTS' FRAUD IS ADEQUATELY PLEADED                                              21

VII.. THE SIXTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES
     A CIVIL RICO CLAIM AGAINST BILLY HARBERT JR. AND SHOULD NOT
     BE DISMISSED                                                                         23

VIII. INCORPORATED SCHEDUAL: A FULL REBUTTAL TO DEFENDANTS'
     SCORCHED EARTH LITIGATION TACTICS ENUMERATING SPECIFIC
     PRACTICES BY DEFENDANTS, **REQUEST FOR JUDICIAL NOTICE**
     (Facts)                                                                              26

IX.  CONCLUSION                                                                           29

i

## TABLE OF AUTHORITIES

### Cases

Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,
232 F.3d 1082, 1087-88 (9th Cir. 2000)    7

Banks v. Wolk,
918 F.2d 418, 421 (3d Cir. 1990)    15

Bates v. C&S Adjusters, Inc.,
980 F.2d 865, 867 (2d Cir. 1992)    9

Berger v. Rothschild,
648 F.Supp. 582, 585 (D.D.C. 1986) 11

Burger King Corp. v. Rudzewich,
471 U.S. 462, 479-80, 105 S.Ct. 2174,
2186, 85 L.Ed.2d 528 (1985) 6

Calder v. Jones,
465 U.S. 783, 785, 104 S.Ct. 1482,
1485, 70 L.Ed.2d 804 (1984) 6

Dole Food Co., Inc. v. Watts,
303 F.3d 1104, 1111 (9th Cir. 2002) 6

First of Mich. Corp. v. Bramlet,
141 F.3d 260, 264 (6th Cir. 1998)    9

Gandal v. Telemundo Group, Inc.,
997 F.2d 1561, 1564-65 (D.C. Cir. 1993)    8

Gordy v. Daily News L.P.,
95 F.3d 829, 834 (9th Cir. 1996)    8

Gulf Ins. Co. v. Glasbrenner,
417 F.3d 353, 356 (2d Cir. 2005)    9

Hinman v. Westinghouse Elec. Co.
(1970) 2 Cal.3d 956, 959-960    16

Jenkins Brick Co. v. Bremmer,
321 F.3d 1366, 1371 (11th Cir. 2003)    9

Keeton v. Hustler Magazine, Inc
465 U.S. 770, 773, 779-80, 104 S.Ct. 1473,
1477-78, 1481, 79 L.Ed.2d 790 (1984)        7

Lewis v. Fresne,
252 F.3d 352, 359 (5th Cir. 2001)      6

Lisa M. v. Henry Mayo Newhall Memorial Hospital
(1995) 12 Cal.4th 291, 296      15

Marketing West, Inc. v. Sanyo Fisher (USA) Corp.,6 Cal.App.4th 603, 613, 7 Cal.Rptr.2d
839, 864 (1992)        14

Mary M. v. City of Los Angeles
(1991) 54 Cal.3d 202,208                  16

Moore v. AT&T Latin America Corp.,
177 F.Supp.2d 785, 789 (N.D.Ill. 2001)      10

Myers v. Barnett Law Offices,
238 F.3d 1068, 1076 (9th Cir. 2001)        9

Naartex Consulting Corp. v. Watt,
722 F.2d 779, 787 (D.C. Cir. 1983)        8

Newton v. Thomason,
22 F.3d 1455, 1463-64 (9th Cir. 1994)      9

Norgart v. Upjohn Co.,
21 Cal.4th 383, 399 n. 4, 87 Cal.Rptr.2d
453, 464 n. 4 (1995)                      1

Parsons v. Tickner,
31 Cal.App.4th 1513, 1526, 37 Cal.Rptr.2d
810, 817(1995)                          12

Richards v. Duke Univ.,
480 F.Supp.2d 222, 235-36 (D.D.C. 2007)    11

Rogers v. Warden
20 Cal.2d 286, 289, 125 P.2d 7, 9 (1942)    14

Sinatra v. National Enquirer, Inc.,
854 F.2d 1191, 1195-98 (9th Cir. 1988)      7

<u>Sunderland v. Lockhead Martin Aeroutical Systems Support Co.,</u>
130 Cal.App.4th 1, 8-9 (2005)              16

<u>TIG Ins. Co. v. NAFCO Ins. Co., Ltd.,</u>
177 F.Supp.2d 561, 567 (N.D.Tex. 2001)    10

<u>TruServ Corp. v. Neff,</u>
6 F.Supp.2d 790, 792 (N.D.Ill. 1998)       9

<u>WNS, Inc. v. Farron,</u>
884 F.2d 200, 204 (5th Cir. 1989)          7

<u>Yahoo! Inc. v. La Ligue Contre Le
Racisme Et L'Antisémitisme,</u>
433 F.3d 1999, 1205-06 (9th Cir. 2006)     6

## **STATUTES**

18 U.S.C. § 1951(a)    14

18 U.S.C. §1956(a)(1)(A)        5

18 U.S.C. §1961(l)     15

18 U.S.C.§1964         7

28 U.S.C. §1391(a)(2) 9

D.C. Code §13-423(a)(4)         8

Hobbs Act, 18 U.S.C.§1951   5

Federal Rule of Civil Procedure 9(b) 13

Federal Rule of Civil <u>Procedure</u> 12(b)(2)    5, 6, 7, 9

Federal Rule of Civil Procedure 12(b)(3)    5, 9
Federal Rule of Civil Procedure 12(b)(6)    5, 13I.

## INTRODUCTION

The within action arises in its entirety out of the events and circumstances attending plaintiff Dr. Hoda Elemary ("Plaintiff')'s activities as spokesperson in association with Senator Bob Dole for Bill L. Harbert (true and correct copies of documents obtained from Senator Dole, Mr. Harbert, Charles F. (Rick) Rule and Plaintiff are attached hereto collectively as Exhibit "A" and made a part hereof.) Plaintiff was employed for 4 years by Mr. Harbert as exclusive case manager of a qui tam case, United States of America ex rel. Richard F. Miller v. Philipp Holzmann A.G. et al., United States District Court for the District of Columbia case no. 1:95CV01231 WBB (the "False Claims Case"), the trial of which recently concluded in this Court and which is referenced in paragraph 8 of the Complaint for Damages-culminating in the execution and delivery of the November 3, 2003 trust and the September 21, 2004 Agreement between Mr. Harbert and Plaintiff as described in paragraph 43 of the Complaint.

There are two separate factions at the root of the dispute in the instant case. The first of these two factions include Mr. Harbert, Plaintiff, Senator Dole and Rick Rule. The second faction is comprised of Billy Harbert Jr, and his attorneys Messrs. Matthew Lembke, Bryan Lavine, Bill sharp and Roger Goldman. Based on proof, obtained from Mr. Harbert's files, true and correct copies of four letters issued by Mr. Harbert are attached herein above in Exhibit "A-1", which confirm that 1). Billy Harbert, Jr. and his attorneys have repeatedly continued to misrepresent facts to the Court

**1**

And mislead Judges and Counsel into thinking these attorneys represent Mr. Harbert, causing Mr. Harbert to frequently write these attorneys to cease and desist from doing so, and  2). Notarized admissions by Mr. Harbert that Billy Harbert's attorneys were engaged in forgery to deprive  Plaintiff of her Constitutional rights and ultimately blackmailing Mr. Harbert to coerce him to damage Plaintiff, which Mr. Harbert admitted in writing would  render him liable to Plaintiff, stating in one of the referenced four letters"…I therefore have no choice but to honor my agreements with Dr. Elemary( which preceded any understanding between us concerning these two matters) to limit my liability".

## REGARDING DEFENDANTS' MOTION FOR DISMISSAL:

**With Mr. Harbert admitting to his own liability in writing, it would be a mockery of justice for any entity to challenge Mr. Harbert by dismissing the instant case for Fraud and Breach of Contract when Mr. Harbert admitted that forgery had been committed and that he would be liable if he went along with his son's plan to breach various agreements with Plaintiff. Mr. Harbert was coerced into signing on to the motion to dismiss. Exhibits "G" and "H" on page 27 in section VIII provide a legal transcription and the actual recording of Mr. Harbert advising Plaintiff on May 16, 2007 to ignore Billy Harbert's attorneys.**

## REGARDING DEFENDANTS' MOTION TO TRANSFER VENUE: **All of the transactions, agreements, guarantees, subject matter, Plaintiff's associates, a majority of Defendants' representatives and %90 of the witnesses are located in the District of Columbia. On the other hand, only one Defendant, who is medically able to participate in the discovery and trial phases is located in Alabama. It is mind-boggling  for his sole convenience, Billy Harbert's**

2

**attorneys would submit a motion to transfer venue to Alabama.**

True copies of documents executed by Messrs. Harbert and Sharp are provided above in Exhibit "A-2" guaranteeing Senator Dole, Plaintiff and Mr. Rick Rule that Billy Harbert Jr. will <u>not</u> be involved in the False Claims Case since Billy Harbert and a majority of his attorneys were advocating to go to trial. On the other hand Plaintiff, Senator Dole and Rick rule and his partner Jack Boese knew that settling this case was the only reasonable option. With a premeditated intent to cause Plaintiff irreparable damage to secure the lion share of Mr. Harbert's Estate, Defendant Billy Harbert, Jr. violently blackmailed Mr. Harbert with an illusionary possibility that the Harbert Defendants would prevail against the United States in the False Claim Case if they go to trial, Mr. Harbert therefore allowed himself to be forcibly convinced to breach his agreements with Plaintiff, who had negotiated with the Department of Justice and with the help of Senator Dole a dramatically lesser amount of $15,000,000 settlement ( than the amount of the ultimate verdict). Attached hereto is a true and correct copy of the Department of Justice March 18, 2005 confirmation of the $15,000,000 settlement as Exhibit "B" and made a part hereof, which Mr. Harbert reneged on paying.

## *A LEGAL PRESENTATION* UNDER THE CAPTION "ARGUMENT" IS

## PROVIDED HEREINBELOW ON PAGE 10 IN SECTION IV.

### II. AN OVERVIEW OF A REBUTTAL TO DEFENDANTS' SCORCHED EARTH LITIGATION PRACTICES

The Court's rulings depend on the credibility of facts presented by counsel However,

**3**

unless the facts are rebutted and proven to be false, the Court does not have the time

to research the validity of every fact presented to it.  Plaintiff provides herein

independent documents, including letters from the United States Senate,  as well as a

legally transcribed recording of a conversation with Defendant Bill L. Harbert, based

on mutual consent, in addition to the actual recording of Bill L. Harbert ("Mr.

Harbert .") conducted on May 16, 2007 -- as prima facie evidence to rebut counsel

Lembke's and Goldman's knowingly fabricated statements as proven herein below.

In the interests of brevity, Plaintiff will prove that 11 of the First 13 lines

of Defendants' 'Procedural Background' in Billy Harbert Jr. Motion to dismiss have

no basis in fact or law, and constitute the basis provided by Defendants to make it

impossible for any court interested in justice to grant their motion based on Messrs.

Lembke's and Goldman's flagrant and daring attempt to trick the Court to grant their

motion on false grounds. It is evident that the systematic deliberate

misrepresentations, which are fraught  through out the document making it

impossible for the Court to rely on the credibility of Defendants' alleged facts. In the

interest of brevity listed herein below and continued in the " Incorporated Schedule"

are an example of Defendants misrepresentations numbered in Arabic Numerals. 1-

In point of fact, in the aforementioned initial 13 lines of the "Procedural

Background" section, Defendants reference "[Plaintiff's] spinning a bewildering tale

filled with wild claims of irrelevant self importance, Compl. Para. 4 ('a majority of

the United States Senators . . . have credited Plaintiff with playing a pivotal role in

lobbying  Congress to support Operation Desert Storm ...".) **Messrs. Lembke and**

**4**

Goldman have deliberately misled the Court into believing that indeed Plaintiff spun a bewildering tale filled with wild claims of irrelevant self importance. However, the quotation referenced by these counsel misquoted and deliberately undermined the serious work of a United States Senator seeking to provide necessary security for Plaintiff in her travels on behalf of the United States in the troubled Middle East. Attached hereto is a true and correct copy of Senator Dianne Feinstein's letter as Exhibit "C" and made a part hereof. Senator Feinstein stated in her request to a foreign leader ". . . It is based on the vital services Ms. Elemary provided Congress, which have been determined to serve U.S. national interests. A majority of the United States Senators have overwhelmingly endorsed Ms. Elemary's work and have credited her with playing a private role in lobbying the Congress to support Operation Desert Storm, as it did on January 12, 1991; forgive Egypt's $7 billion debt, as it did on October 19, 1990; and, undertake many supportive initiatives."

*Plaintiff respectfully requests the Court to take judicial notice of Senator Feinstein's letter and of the 2nd page of Defendant Billy Harbert Jr.'s motion to dismiss, which contains the above mentioned misrepresentation, a true and correct copy of which is annexed hereto as Exhibit "D" and incorporated herein by this reference. **It is evident that an official statement of the United States Congress crediting and defining Plaintiff's achievements on behalf of the United States has been despicably disfigured and misrepresented to the Court, placing unwarranted***

5

*blame on Plaintiff for "making wild claims of irrelevant self-importance" for*

*statements that were never made by Plaintiff but by a United States Senator, with*

*whom Messrs. Lembke & Goldman should vent their dissatisfaction and*

*disagreement as the author of the letter, for daring to acknowledge Plaintiff's*

*work. Accordingly, by granting this motion the Court would be granting Messrs.*

*Lembke and Goldman the power to control what Congress writes about Plaintiff,*

*if the Court elects to believe their fabricated allegation. But if it does not, the*

*Court has an obligation to rule on the basis of the truth and deny this motion. A*

*Plaintiff's constitutional rights to have his or her day in court is obviated when*

*courts permit defendants to set the agenda to delay a hearing of Plaintiff's case.*

*<u>The Court, in light of the misrepresentation cited herein, must deny Defendants'</u>*

*<u>motion and restrict Mr. Lembke's conduct to only make factual statements to the</u>*

*<u>Court if he is to continue to appear in front of this Court. During his two year</u>*

*<u>involvement of this matter, Mr. Lembke managed to presume, violate and insult</u>*

*<u>Senator Bob Dole, Attorney General Alberto Gonzales, Mr. Michael F. Hertz of</u>*

*<u>the Civil Division, Department of Justice and a host of Senators and Ju</u>*


The Court has the power to regulate the conduct of attorneys appearing

before it. Mr. Lembke, who submitted the initial draft of the referenced (motion to

dismiss) to Mr. Goldman (of Latham & Watkins) and who is not admitted to

practice before this Court, was recently granted leave by the Court to appear in

this case  pro  hac  vice. Accordingly, <u>this Court retains  the  power  to  restrict or</u>

6

**withdraw this privilege in light of Mr. Lembke's abuse of the privilege to practice before it. In particular, Mr. Lembke's initiative knowingly to perpetrate a fraud on this Court and Plaintiff's ability to provide the Court in a timely manner with sufficient grounds to deny Defendants' motion to dismiss based on Defendants' false and fabricated statements and illusionary facts.**

Messrs. Lembke and Goldman have not only intentionally misinformed the Court and fabricated facts, but have failed to serve Plaintiff with copies of the filed documents, which constitutes additional grounds for denying the motion. Plaintiff learned, upon receipt of the Court's July 16, 2007 order, that notified Plaintiff that Defendants had responded. Defendants sought to intentionally withhold from Plaintiff their false and fictional submission to the Court of motions to dismiss and transfer venue by fraudulently misleading and misinforming the Court of proof of service when in fact Defendants despicably and willfully refrained from mailing copies of their motions to plaintiff. In so doing, Defendants unlawfully sought to trick the Court into believing that Plaintiff's silence signals plaintiff's agreement with Defendants' concocted facts. Plaintiff vehemently objects to Defendants' dishonorable conduct in this incident as well as on their Physical attempt on the lives of Plaintiff and former U.S. Congressman Earl Hilliard, first black Congressman since reconstruction from the State of Alabama. Plaintiff respectfully request the Court for Judicial Notice of official U.S. and state documents including Police Reports of these incidents. True and correct copies of these official documents are collectively attached hereto as Exhibit "E" and made a part hereof.

7

**PLAINTIFF RESPECTFULLY REQUEST THE COURT,  IN LIGHT OF DEFENDANTS' S DISHONORABLE CONDUCT,TO PROCEED WITH OUT DELAY AND WITHOUT CONSENTING TO FURTHER DELIATORY TACTICS BY DEFENDANTS TO OBVIATE THIS COURT OF EVER HEARING PLAINTIFF'CLAIMS AND FURTHER INTIMIDATE PLAINTIFF AND HER ASSOCIATES, THUS CIRCUMVENT PLAINTIFF'S RIGHT TO A FAIR HEARING AND INSURE THAT BILLY HARBERT, Jr. WOUL WALK AWAY UNPUNISHED FOR HIS LEGALTRANSGRESSIONS.**

Through the motions of Billy Harbert Jr. and Mr. Harbert Sr. to dismiss, which Mr. Harbert Sr. was not informed of, and the motion to transfer venue, Messrs. Lembke and Goldman now seek the Court's approval -- not only to whitewash their client **Billy Harbert Jr.'s serious crimes,, but further to discredit Plaintiff's credibility to ensure the Court grants their motions on a false basis and to destroy Plaintiff's reputation within the United States Congress.**

Messrs. Lembke and Goldman state in the motion to dismiss by Billy Harbert Jr., Mr. Harbert Sr. and their motion to transfer venue under the caption "PROCEDURAL BACKGROUND" no less than five fabricated and false statements in the first paragraph of this section.  The remainder of the motion to dismiss drafted by the above referenced attorneys for Billy Harbert Jr. and Mr. Harbert, as well as their motion to transfer venue, are fraught with deliberate misrepresentations to the Court as are contained in the first 13 lines of "PROCEDURAL BACKGROUND." *dges.*

*8*

## III. **PROCEDURAL BACKGROUND**

The fundamental dispute stems from Mr. Harbert Sr.'s providing Dr. Hoda Elemary assets and financial support over a period of 15 years, commencing in 1992. Billy Harbert Jr. reacted violently to his father's support for and work with Plaintiff, which Mr. Harbert Sr. acknowledged repeatedly in writing had profited him $51,300,000, including, but not limited to, Plaintiffs role in assisting to secure the United States Agency for International Development's award of three contracts on a waste water project in Cairo, Egypt, where Plaintiffs father and uncle were Prime Ministers, particularly during the time period these contracts were being awarded. In April 2001, Dr. Elemary became exclusive case manager and sole personal spokesperson for her husband Mr. Harbert Sr. in the False Claims Case. Dr. Elemary retained Senator Bob Dole; Charles F. Rule of Fried, Frank, Harris, Jacobson & Shriver ("Fried, Frank"); as well as Barry Coburn of then Shirtler & Coburn. Early in 2002, Billy Harbert Jr. initially coerced his father to allow him to fire counsel Charles F. Rule (former Director, Anti-Trust Division, U.S. Department of Justice), who was in the process of reducing the criminal fine of $54,000,000 which Mr. Harbert Sr. had guaranteed to the United States. In 2005, Billy Harbert Jr. once again threatened to expose his father publicly on an alleged $7,000,000 embezzlement from a construction project in South America if his father did not execute a letter dismissing Jack Boese of Fried, Frank, Senator Bob Dole and Dr. Hoda Elemary, and replacing them with Bryan Lavine and June Ann Sauntry of Troutman Sanders and Sam Pointer based on their

9

promise that Troutman Sanders would have the False Claims Case dismissed and Mr. Pointer's suggestion that he would prevail with Judge Robert Proabst, with whom he plays golf, on the declaratory relief matter. Mr. Harbert acted against his own will under blackmail by Billy Harbert Jr. and was therefore expected the results of Judge Proabst's dismissal of the declaratory relief case and the False Claims Case verdict, with which this Court is intimately familiar. Billy Harbert Jr. and his (personal/part-time-in-house) counsel Matthew L. Lembke and Mr. Lembke's associate and former classmate Roger S. Goldman of Latham & Watkins have repeatedly overstepped the ethical boundaries for criminal attorneys and instead participated in cover up activities to shield Billy Harbert Jr. from his unlawful business conduct. Homer Jackson, Treasurer of the Republican Party (Birmingham Chapter), and personal tax attorney to Mr. Harbert since 1952, is on record stating that he is too honest to work for Billy Harbert Jr.and his attorneys.

## summary

**The First Cause of Action (Interference with Prospective Economic Advantage) (Complaint, ¶1134-41) alleges the successful interference by Billy Harbert Jr. with the $15 million settlement proposed by the Department of Justice (the "DOJ") and otherwise accepted by Mr. Harbert Sr., thereby depriving Plaintiff of the $2,050,000 success fee she would otherwise have earned under the September 21 Agreement; the Second Cause of Action (Breach of Contract) (id., ¶¶42-47) alleges the breach of the September 21 Agreement by Mr. Harbert Sr.; the Third Cause of Action (Quantum Meruit) (id., ¶¶48-50) seeks compensation for the reasonable value f services performed by Plaintiff under the September 21greement;the**

**10**

**Fourth Cause of Action (Termination in Violation of Public Policy) (id.,**

**¶¶51-57) seeks relief in tort for the** termination of the September 21 Agreement; the

Fifth Cause of Action (Suppression of Facts) (id., ¶¶58-65) arises out of events which

led to the filing of the False Claims Case; the Sixth Cause of Action (Civil RICO) (id.,

¶¶66-85) alleges the commission of violations of the Hobbs Act, 18 U.S.C. §1951, in an

attempt to bring about the termination of the September 21 Agreement; and the Seventh

Cause of Action (Civil RICO) (id., ¶¶86-104) alleges the laundering of monetary

instruments in violation of 18 U.S.C. §1956(a)(1)(A) in connection with a phantom

equipment-leasing transaction organized by Mr. Harbert Sr. with defendant Sabbia

Aktiengesellschaft.  At all relevant times, Plaintiff spent half of the year in Washington,

dealing with the White House and the United States Congress.  Complaint, ¶29.

Defendants Billy Harbert Jr. and B.L. Harbert International, LLC ("HILLC")

have moved to dismiss the Complaint for lack of personal jurisdiction under Federal

Rule of Civil Procedure ("Rule") 12(b)(2) and for improper venue under Rule 12(b)(3),

and additionally have moved under Rule 12(b)(6) to dismiss the First, Fifth and Sixth

Causes of Action against Billy Harbert Jr. and the First and Fifth Causes of Action

against HILLC (the "Motion"). As set forth hereinafter, the Motion should be denied in

all respects.

## IV. ARGUMENT

### A.    THIS COURT HAS PERSONAL JURISDICTION OVER BILLY HARBERT JR. AND HILLC

11

Billy Harbert Jr. and HILLC (sometimes hereinafter collectively referred to as "Defendants") first seek relief under Rule 12(b)(2) on the ground that they are not subject to the personal jurisdiction of the courts of the District of Columbia, and, therefore, of this Court. Motion, pp. 5-12. While Plaintiff does not claim that Defendants are subject to general jurisdiction in the District of Columbia (see, Motion, pp. 6-7), the Motion's discussion of specific jurisdiction ignores most of the jurisprudence developed under tort law with respect to in personam jurisdiction. A non-resident may be subject to personal jurisdiction in the District of Columbia for liability-producing acts having foreseeable consequences in the forum state. Burger King Corp. v. Rudzewich, 471 U.S. 462, 479-80, 105 S.Ct. 2174, 2186, 85 L.Ed.2d 528 (1985). In that regard, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Lewis v. Fresne, 252 F.3d 352, 359 (5th Cir. 2001.) Federal standards of due process require satisfaction of a three-pronged analysis of whether (i) the non-resident defendant "purposefully direct[s]" activity to the forum, (ii) the claim "arises out of or relates to" his forum-related activities and (iii) exercise of jurisdiction by the forum is "reasonable." Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisémitisme, 433 F.3d 1999, 1205-06 (9th Cir. 2006). The first prong, also known as the "purposeful availment" prong, is met when (1) the defendant committed a "wrongful intentional act," (2) "expressly aimed" at the forum state, (3) causing harm that the defendant knew or should have known was likely to be suffered in the forum state. Dole Food Co., Inc. v. Watts, 303 F.3d 1104, 1111 (9th Cir. 2002). For this purpose, "wrongful intentional acts" include defamation, intentional infliction of

**12**

emotional distress, and invasion of privacy. <u>Calder v. Jones,</u> 465 U.S. 783, 785, 104

S.Ct. 1482, 1485, 70 L.Ed.2d 804 (1984). Since the subject Causes of Action sound in

interference with prospective economic advantage (First), termination in violation of

public policy (Fourth), suppression of facts (Fifth) and violation of 18 U.S.C. § 1964

(civil RICO) (Sixth and Seventh), this element of the first prong has been properly

pleaded.

    The (second) "expressly aimed" element of the "purposeful availment" prong is

satisfied when it is alleged that the nonresident engaged in "wrongful conduct targeted at

a plaintiff whom the defendant knows to be a resident of the forum state." <u>Bancroft &</u>

<u>Masters, Inc. v. Augusta Nat'l, Inc.,</u> 232 F.3d 1082, 1087-88 (9th Cir. 2000). At all

relevant times, Billy Harbert Jr. knew that Plaintiff had residence in the District of

Columbia. Complaint, ¶¶2 & 29. It should be noted that for purposes of adjudicating a

Rule 12(b)(2) motion, all uncontroverted allegations in the Complaint are deemed true,

and factual conflicts in the parties' declarations are resolved in the plaintiffs favor.

<u>WNS, Inc. v. Farron,</u> 884 F.2d 200, 204 (5th Cir. 1989). As Billy Harbert Jr. has not

denied any of the allegations of the Complaint, the "expressly aimed" element of the first

prong of the limited jurisdiction test is met.

    This leaves the third and last element of the "purposeful availment" prong, <u>i.e.,</u>

that harm was suffered by the plaintiff in the forum state. This element is satisfied even

if the plaintiff suffers "only a small proportion of her claimed injury" within the forum

state, and "the bulk of the harm done" occurs outside the forum state. <u>Keeton v. Hustler</u>

<u>Magazine, Inc.</u> 465 U.S. 770, 773, 779-80, 104 S.Ct. 1473, 1477-78, 1481, 79 L.Ed.2d

790 (1984). Since Plaintiff, as a result of Billy Harbert Jr.'s and the other Defendants' actions, was deprived of her good standing with the U.S. Senate in Washington, this element of the test is satisfied. Complaint, ¶¶22(b) & 64; see, e.g. Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195-98 (9th Cir. 1988) (Swiss clinic which falsely told a magazine reporter in Switzerland that Frank Sinatra had been a patient was subject to personal jurisdiction in California for misappropriation of Mr. Sinatra's name as the "purposeful direction of a foreign act having effect in the forum state").

The second prong of the limited jurisdiction inquiry, i.e., that the plaintiff's claim "arise[] out of or relate[] to the defendant's forum related activities" is clearly met here, since the forum-related activities are the wrongful acts pleaded in the Complaint. As to the third prong of "reasonableness", it has been held that personal jurisdiction on a non-resident who, acting outside the state, intentionally causes injuries within the state, is presumptively not unreasonable. Calder v. Jones, supra, 465 U.S. at 789-790, 104 S.Ct. at 1487; Gordy v. Daily News L.P., 95 F.3d 829, 834 (9th Cir. 1996). Federal due process requirements for this Court's assertion of personal jurisdiction over Billy Harbert Jr. and HILLC are met

This leaves the matter of compliance with the District of Columbia's comparatively restrictive long-arm statute, D.C. Code §13-423(a)(4). See, Motion, pp. 9-12. In this regard, Defendants' attempts to avoid the applicability of the statute are ill-taken. First of all, Plaintiff did suffer injuries in this district, as the actions alleged in the Complaint harmed Plaintiff's standing in the U.S. Senate, one of her major theatres of operations. Complaint, 22(b) & 64. Second, in addition to Defendants' constant

**14**

A. appearances in Washington in connection with the False Claims Case, there is the fact that the Cairo Waste Water Treatment Project, which was the subject of the bid-rigging with which the False Claims Case was concerned, was funded by the United States Agency for International Development, an organization headquartered in Washington, and with which Defendants participated in meetings in Washington in order to obtain such funding. Collectively, these facts supply the "plus factor" referenced by Gandal v. Telemundo Group, Inc., 997 F.2d 1561, 1564-65 (D.C. Cir. 1993). See, Motion, pp. 9-10. Moreover, the "government contacts" exception referenced on pages 11-12 of the Motion, under which government-related activities may be conducted by non-residents of the District of Columbia without subjecting them to the jurisdiction of the District of Columbia courts, is inapplicable here, because of an exception acknowledged by the District of Columbia Circuit when putative defendants "had used the [governmental] proceedings as an instrumentality of the alleged fraud." Naartex Consulting Corp. v. Watt, 722 F.2d 779, 787 (D.C. Cir. 1983). In this case, of course, the gravamen of the Complaint is that Defendants used the Cairo Waste Water Project financed by the USAID as a vehicle for the bid-rigging which led to the False Claims Case and to Plaintiffs damages alleged herein when it ultimately developed that the clients for whose benefit Plaintiff used her United States and Middle East contacts to obtain lucrative contracts turned around and defrauded both the United States government and the people of Egypt and, in the process, destroyed Plaintiffs reputation and credibility. Accordingly, there is no legal or factual basis for granting relief against Plaintiff under Rule 12(b)(2), and the Motion should be denied.

15

## B. VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. §1391

Billy Harbert Jr. and HILLC next seek relief under Rule 12(b)(3) on the ground that the venue of this action was not properly laid in this Court. Motion, pp. 12-14. Plaintiff has two responses to this claim. Contrary to the Motion's cursory analysis, venue is, in fact, proper under 28 U.S.C. §1391(a)(2), which references, in pertinent part, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ." See, Motion, p. 12. In this regard, the statute does not require that a "majority" of the "events or omissions" occur in the district for which venue is claimed, or even that those events or omissions "predominate"; it is sufficient if a "substantial part" occurs there. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 356 (2d Cir. 2005); Jenkins Brick Co. v. Bremmer, 321 F.3d 1366, 1371 (11th Cir. 2003). A plaintiff is entitled to choose any of several districts having relatively equal connections with the dispute. First of Mich. Corp. v. Bramlet, 141 F.3d 260, 264 (6th Cir. 1998) (mail fraud committed in Los Angeles damaged plaintiffs business in San Francisco); TruServ Corp. v. Neff, 6 F.Supp.2d 790, 792 (N.D.Ill. 1998) (personal guarantee signed in one state for payment in another). A plaintiff has no obligation to file in the forum most convenient to the defendant. Newton v. Thomason, 22 F.3d 1455, 1463-64 (9th Cir. 1994).

In tort actions, the district in which the injuries were suffered, and in contract actions, the district where the performance was due, are properly deemed to be the districts in which a "substantial part" of the events or omissions occurred. Jenkins Brick

16

Co. v. Bremmer, supra, at ibid.; Myers v. Barnett Law Offices, 238 F.3d 1068, 1076

(9th Cir. 2001); Bates v. C&S Adjusters, Inc., 980 F.2d 865, 867 (2d Cir. 1992).

Plaintiff's damages to her standing within the political community resulting from the

fraud alleged in the Complaint, as well as her emotional distress, took place in this

district.  Moreover, it has been held that where a plaintiff sent communications from and

received communications in the forum state as part of the parties' negotiations, and

numerous communications were directed at the plaintiff in the forum, a "substantial

part" of the subject events is deemed to have taken place there.  See, Complaint, ¶30;

Moore v. AT&T Latin America Corp., 177 F.Supp.2d 785, 789 (N.D.I11.2001); TIG

Ins. Co. v. NAFCO Ins. Co., Ltd., 177 F.Supp.2d 561, 567 (N.D.Tex. 2001).

Accordingly, for each of the First, Fourth, Fifth, Sixth and Seventh Causes of Action, a

"substantial part" of the events or omissions took place in this District, and the Motion

must be denied.


## V.     THE FIRST CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CLAIM FOR INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE AGAINST BILLY HARBERT JR. AND HILLC AND SHOULD **NOT BE DISMISSED**

The Motion next attacks the First Cause of Action, sounding in interference with

prospective economic advantage, claiming that Plaintiff inadequately alleged

Defendants' knowledge of the existence of the subject contract.  Motion, pp. 15-16.

Appearing to confuse a plaintiffs task at the pleading stage with his task at trial, the

Motion rejects the averment of paragraph 38 of the Complaint that: "The provisions of

the September 21 Agreement were known to Defendants because Plaintiff . . . had been

acting as exclusive case manager on the False Claims Case since April, 2001." Contrary

to Defendants' carefully-posed incredulity, it is only reasonable that after five years,

everybody at top management of the Harbert enterprises would know of Plaintiffs

contract.

Secondly, it is claimed that no facts are alleged to show that Billy Harbert Jr.

acted "intentionally and maliciously" to deprive Plaintiff of her expectancy in her

success fee. Motion, pp. 16-18. In arguing that Billy Harbert Jr. was merely trying to

obtain a better deal than the $15 million settlement offered by the DOJ -- an

unconvincing claim in light of the $88 million verdict ultimately awarded by the jury

against the False Claims Case defendants -- the Motion (see, pp.17-18) ignores such

allegations as paragraphs 14 (describing Billy Harbert Jr.'s "obsession seeking to destroy

Plaintiff financially and physically") and 22(c) (describing Billy Harbert Jr.'s harassment

of Plaintiffs counsel Earl Hilliard).   Read as a whole, and noting that paragraphs 1

through 33 of the Complaint were incorporated by reference into the First Cause of

Action (see, Complaint, ¶34), the First Cause of Action is seen to be adequately

pleaded.


## VI.    THE FIFTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CLAIM FOR FRAUD AGAINST BILLY HARBERT JR. AND HILLC AND SHOULD NOT BE DISMISSED

### A.   DEFENDANTS' CONCEALMENT OF THE FACTS UNDERLYING THE FIFTH CAUSE OF ACTION TOLLED THE STATUTE OF

LIMITATIONS UNTIL 2004.

The Motion next attacks Plaintiffs Fifth Cause of Action, sounding in fraud

(Motion, pp. 18-26), first on the ground that the statute of limitations had lapsed (id., pp.

19-22), and second on the ground that it is not pleaded with sufficient particularity (id.,

pp. 22-26). The gist of Defendants' statute of limitations argument is that by virtue of

Plaintiffs involvement in the defense of the False Claims Case beginning in April, 2001,

Plaintiff, claims Defendants, was necessarily on notice of Mr. Harbert Sr.'s involvement

in the bid-rigging scheme which was the subject of the False Claims Case long before

April 10, 2004, the earliest date such knowledge was permissible under the District of

Columbia's three-year statute of limitations for fraud. Motion, p. 18.  In support of this

argument, Defendants cite authorities which hold that a plaintiff has "a positive duty to

use diligence in discovering his cause of action within the limitation period" (Berger v.

Rothschild, 648 F.Supp. 582, 585 (D.D.C. 1986)), and a plaintiff is charged with

knowledge of matters which would have been revealed by such an investigation

(Richards v. Duke Univ., 480 F.Supp.2d 222, 235-36 (D.D.C. 2007)).

The matter is not so simple, however.  Plaintiff alleges that Defendants

herein, including Billy Harbert Jr., actively concealed the facts of their involvement

in the bid-rigging scheme from Plaintiff. Complaint, ¶23 ("During and after the bid-

rigging, Mr. Harbert Sr. and Billy Harbert Jr. insisted on maintaining a facade of lack

of knowledge of the crimes that they were committing . . . . "); ¶62 ("Later, when

Plaintiff agreed to become the exclusive case manager for the False Claims Case,

Defendants concealed from Plaintiff the extent of their culpability in the big-rigging

**19**

scheme."); Incorporated Schedule, ¶II ("Defendants . . . deliberately banished and quarantined Plaintiff from learning of their bid-rigging schemes to which Defendants correctly anticipated Plaintiff would object."). Noting that the statute of limitations begins to run when "the plaintiff learns, or should have learned, the <u>facts</u> incidental to his claim. [Citation.]" (Norgart v. Upjohn Co., 21 Cal.4th 383, 399 n. 4, 87 Cal.Rptr.2d 453, 464 (1995) (internal quotation marks omitted) (emphasis in original)), a different principle applies when the defendant deliberately conceals the facts from the prospective plaintiff. "Plaintiffs should not suffer where circumstances prevent them from knowing they have been harmed. And often this is accompanied by the corollary notion that defendants should not be allowed to knowingly profit from their injuree's ignorance." Parsons v. Tickner, 31 Cal.App.4th 1513, 1526, 37 Cal.Rptr.2d 810, 817 (1995) ("Parsons"). In Parsons, the plaintiff's action was found not to be time-barred where the defendants had willfully concealed the facts underlying their liability to the plaintiff for 19 years. Where a party conceals the facts from a victim, the victim is excused from the statute of limitations defense. "Fraudulent concealment of the facts is a good answer to the defense of the statute of limitations' [citation] . . . ." Parsons, 31 Cal.App.4th at 1528, 37 Cal.Rptr.2d at 818.

Applying the California Supreme Court's doctrine to Plaintiffs Fifth Cause of Action, it is seen that the very gravamen of this count of the Complaint -- that Plaintiff was damaged by the Harbert Contractors' inducement of Plaintiff to use her high-level political contacts in Egypt and elsewhere to enable them to be awarded the contracts for the Cairo Waste Water Treatment Project, at the same time they secretly

**20**

intended to bid-rig the related contracts -- is part and parcel of the very concealment

of the facts analyzed in <u>Parsons</u>. The Motion makes much of the filing of the False

Claims Case and the related investigative and criminal proceedings (<u>see</u>, Motion, pp.

20-22), claiming that Plaintiff was thereby put on notice of Defendants' culpability,

but, as any experienced litigator knows, the fact that something is pleaded in a

complaint does not make it true. Ultimately, it is for a finder of fact to determine

whether Defendants' actions in concealing their involvement in the bid-rigging

scheme could, or could not, have been discovered any earlier by Plaintiff in the

exercise of reasonable diligence. Plaintiff respectfully submits that on a motion to

dismiss under Rule 12(b)(6), this Court cannot make such a determination.

### B.    DEFENDANTS' FRAUD IS ADEQUATELY PLEADED.

The Motion next argues that the Fifth Cause of Action is not pled with

sufficient particularity, citing Rule 9(b). Motion, pp. 22-26. In evaluating this

contention, Plaintiff in the Fifth Cause of Action herein alleges not

misrepresentation, but concealment. Paragraph 59 of the Complaint lists six of the

Defendants as either intending to engage in bid-rigging or being aware of such

intentions (Complaint, ¶59), following which it is alleged that "[alt the time Plaintiff

sought approvals for the Harbert Contractors to work on the Subject Project,

Defendants did not disclose to her their intentions to engage in bid-rigging . . ."

Complaint, ¶62. Accordingly, prior to 1990 (the start date of Plaintiffs "exile" to the

**21**

Saudi Royal Board of Grievances"; see, Complaint, Incorporated Schedule, ¶II), these six Defendants, including Billy Harbert Jr., failed to disclose their knowledge of the bid-rigging. Subsequently, these Defendants, as well as the remaining Defendants, continued to conceal the facts of the Harbert Contractors' participation therein in order to induce Plaintiff to assist them in delaying prosecution of the False Claims Case. Complaint, ¶63. In other words, the "who, what, when, where and how" pleading standard claimed by the Motion (see; Motion, p. 23) is inapplicable. While Defendants acknowledge that this is a concealment case (see, Motion, pp. 24-25), the Motion propounds an impossible pleading standard, requiring any plaintiff -- including Plaintiff herein -- to allege, in advance of discovery, just what each Defendant knew and, by negative inference, precisely what each Defendant failed to disclose. It is difficult even to imagine a fact situation in which a fraudulent concealment plaintiff could meet such a pleading standard.

Finally, the Motion complains that no duty to disclose the withheld information was established by the Complaint. Motion, pp. 23-24. Once again, the law is more complicated than Defendants would have the Court believe. Even in transactions not involving a fiduciary or confidential relation, the courts recognize at least three cases in which a cause of action for non-disclosure of material facts may arise: (1) a defendant makes representations but fails to disclose facts which materially qualify those disclosed; (2) the facts are known or accessible only to the defendant, who knows they are not known or reasonably discoverable by the plaintiff; or (3) the defendant actively conceals the facts from discovery by the plaintiff. Marketing West, Inc. v. Sanyo Fisher (USA)

**22**

Corp., 6 Cal.App.4th 603, 613, 7 Cal.Rptr.2d 839, 864 (1992).  It is readily seen that

categories (2) and (3) apply to each Defendant in this instance.  It should also be

mentioned that a party otherwise under no duty to speak must, if he speaks, "make a full

and fair disclosure."  Rogers v. Warden (1942) 20 Cal.2d 286, 289, 125 P.2d 7, 9 (1942).

In sum, the Motion's objections to the Fifth Cause of Action not hold up to

scrutiny.  The Motion should be denied.

## VII.  THE SIXTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CIVIL RICO CLAIM AGAINST BILLY HARBERT JR. AND SHOULD NOT BE DISMISSED

The Motion urges a variety of rationales in an attempt to procure the dismissal of

the Sixth Cause of Action, sounding in civil RICO.  Motion, pp. 26-31.  First, it is

claimed that Plaintiff failed to allege that she suffered damage to her "business or

property" as a result of the pleaded RICO violations, and thus lacks standing to bring this

claim.  Motion, pp. 27-29.  This claim, however, is erroneous.  Paragraph 22(d) of the

Complaint alleges that as the result of the physical attack perpetuated on Plaintiff on

April 14, 2005, Plaintiff was incapacitated "for over seven months following the

assault."  Complaint, ¶22.  This paragraph was incorporated by reference into the Sixth

Cause of Action by paragraph 66 thereof, and the April 14, 2005 physical assault is duly

alleged as an attempt at extortion within the intendment of 18 U.S.C. §1951(a) by

paragraph 80 thereof and, accordingly, as an instance of "racketeering activity" within

the intendment of 18 U.S.C. §1961(1) by paragraph 81 thereof.  Accordingly, Plaintiff

has alleged that she suffered an injury to her "business" as a proximate result of

**23**

Defendants' RICO violations. Plaintiff was personally, physically injured, as a result of which she could not work for seven months. The Motion's standing argument is ill-taken.

Second, it is claimed that the Complaint fails to show that Defendants are "associated with" or participated in conducting the affairs of the RICO enterprise, HILLC, or that it had any connection to the pleaded predicate acts. Motion, pp. 29-31. Plaintiff disputes that under the notice system of pleading in Federal courts, any more detail is required than is already provided in paragraphs 67 through 70 of the Complaint. It should also be noted that Billy Harbert Jr. states in his Declaration of Billy Harbert, Jr., attached to the Motion, that he is the President of HILLC. See, Declaration of Billy Harbert, Jr., ¶4. Accordingly, the relationship of Billy Harbert Jr. to HILLC is sufficiently pleaded. (Put differently, this Court can take judicial notice of Billy Harbert Jr.'s admission that he is the President of HILLC.) More generally, it has been stated that "This participation need not be direct. RICO recognizes liability for those who merely aid and abet the underlying predicate offenses. [Citation.] Moreover, a defendant can be liable under RICO's conspiracy provision for agreeing to the commission of a pattern of racketeering activity, even if the defendant does not directly participate in the underlying acts. [Citations.]" Banks v. Wolk, 918 F.2d 418, 421 (3d Cir. 1990). Finally, the relation of HILLC to the predicate acts is that of respondent superior, since all of the acts were committed by its officers or agents:

The respondent superior doctrine makes an employer vicariously liable for torts of its employee committed within the "scope of the

24

employment." (Lisa M. v. Henry Mayo Newhall Memorial Hospital (1995) 12 Cal.4th 291, 296.) Liability under the respondent superior doctrine does not rely on the employer's fault, and thus "is a departure from the general tort principle that liability is based on fault." (Mary M. v. City of Los Angeles (1991) 54 Cal.3d 202, 208.) Instead, the doctrine imputes liability to the employer for the employee's tortious act which injures a third party. The respondent superior doctrine rests on three rationales: "(1) to prevent recurrence of the tortuous conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (Id. at p. 209.) These rationales derive from a deliberate allocation of the risk, by which losses caused by employees' torts that "are sure to occur in the conduct of the employer's enterprise, are placed upon that enterprise itself, as a required cost of doing business." (Hinman v. Westinghouse Elec. Co. (1970) 2 Cal.3d 956, 959-960.) The respondent superior doctrine is also "based on a 'deeply rooted sentiment'" that it would be unjust for an enterprise to disclaim responsibility for injuries occurring in the course of its characteristic activities.' (Mary M. v. City of Los Angeles, supra, at p. 208.)

Sunderland v. Lockhead Martin Aeroutical Systems Support Co., 130 Cal.App.4th 1, 8-9 (2005). There is no basis in fact or law for the Motion's attack on the Sixth Cause of Action, and the Motion should be denied.

25

## VIII. (INCORPORATED SCHEDULE)

# A FULL REBUTTAL TO DEFENDANTS' SCORCHED EARTH LITIGATION TACTICS ENUMERATING SPECIFIC PRACTICES BY DEFENDANTS: REQUEST FOR JUDICIAL NOTICE

*IN "AN OVERVIEW OF A REBUTTAL TO DEFENDANTS' SCORCHED EARTH LITIGATION PRACTICES (Case Facts)" of section II herein above, Plaintiff demonstrated :*

*1. The trickery inherent in refraining to copy Plaintiff on the Motions they filed with this Court hoping to receive a quick order to grant their motions, to which they knew that plaintiff would strongly object because Defendants' motions were fraught with false facts and fabricated tales . Yet Defendants filed Proof of service with the Court.*

*2. The method by which defendants knowingly misquoted to the Court Senator Dianne Feinstein's praise of Plaintiff's work and labeled Senator Feinstein's own words as "Wild claims of irrelevant self importance" misleading the Court into believing Dr. Elemary wrote these words when an Exhibit of the Senator's letter show, that plaintiff did not write these words. Defendants had earlier confirmed receipt of Senator Feinstein's letter. That notwithstanding Defendants willfully perpetrated a fraud on the Court by deliberately changing the identity of the author of Senator Feinstein's letter in pursuit of their SCORCHED EARTH LITIGATION PRACTICES.*

*In the interest of brevity Plaintiff innumerate eight examples of similar*

26

statements of Defendants' intentional misrepresentation to the Court.

3. This court is respectfully requested to take judicial notice of Mr. Lembke's October 12, 2006 demeaning and insulting letter to Plaintiff, whose charges and claims against Plaintiff have been diametrically opposed and rejected out of hand by Bill L. Harbert on May 16, 2007 ( as amplified herein below in Paragraph 4) , even though Mr. Lembke's letter purportedly claims to be written on behalf of Bill L. Harbert. The Court is also requested to take judicial notice of Mr. Roger Goldman's March 28, 2000 letter written in similar manner. Plaintiff collectively attaches true and correct copies of Messrs. Lembke's & Goldman's letters as Exhibit "F" which are incorporated by this reference.

The evidence provided herein confirms that Mr. Lembke has utilized this revered Hall of Justice as a sanctuary to confuse and conceal Billy Harbert JR's crimes committed to date from the Court .

**4. Bill L. Harbert true and correct copy of a legally transcribed conversation with Plaintiff based on mutual consent is collectively attached hereto as Exhibit "G" and incorporated herein by this reference with a true and correct copy of the actual recording of the above-referenced conversation that was engineered by Kent Gibson Forensic Audio lab as Exhibit "H".**

It is not sufficient to convince the Court of Defendants counsels' motives, a comparison of the referenced letters of Messrs. Lembke & Goldman and the legally transcribed recording together with Mr. Harbert in his own voice stating the complete opposite of the content of these two letters provide confirmation of the extent of how 2

27

Far these counsel have been prepared to go to veil and obviate the Court's focus from looking into the racketeering claims made against Billy Harbert Jr. in Plaintiff's complaint, which contains the true facts as can now be ascertained by independent, true and correct sources presented and exhibited herein.

*5.* In Defendants' *PROCEDURAL BACKGROUND,* they state " in a spree

Of repetitive and overlapping litigation, Plaintiff has now filed four lawsuits surrounding her purported termination as 'Case Manager' by Mr. Harbert, Sr." If Defendants had read the complaints they would have learned that two different cases which are in the Family Law Court could not have been filed in a U.S. District Court (prohibited by Law) and have no relationship whatsoever with Plaintiff's claims as a Case Manager. There are two other complaints based on different breached agreements. These cases have no " repetitive and overlapping" similarities as Defendants continue to mislead the Court. There are no overlapping causes of action. The first is focused on executed agreements in conducting business in the District of Columbia, where 90% of the witnesses reside. The second case was focused internationally and in particular Cairo, Egypt, where the Waste Water Project took place.

*6* On page 2 of the same document defendants misinform the Court that there are " "outlandish accusations" when in fact Mr. Harbert confirmed on record that the allegations referenced in this matter did take place.

**28**

*7* On page 2 of the same document, defendants misinform the Court once again by stating "raising nearly identical claims. The evidence of the 4 complaints disprove Defendants repetitive misrepresentations on this point. The law allows Plaintiff to file litigations based on deferent breached agreements in family Court and another in a single federal Court. Defendants' removed a state court case to a federal court for false reasons when in fact a liquidated damages case has no relation to a litigation on a breached contract based on the False Claims Case.

*8* Defendants attempt to drill into the Court's conciseness " This Court should curb Plaintiff's abuse of the courts and grant Defendants' Motion to Transfer". This statement was made despite the Defendants' knowledge that 90% of the witnesses of this case reside in the District of Columbia. It would be a mockery of justice to inconvenience a majority of the witnesses for the sake of Billy Harbert, Jr. convenience to litigate it in Birmingham Alabama. This Court is aware Mr. Harbert can not participate in the legal proceedings of this Case due to his medical condition.

## IX.    CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Respectfully submitted,

Dated: ~~July 27~~, 2007    8.3

Dr. Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677
Tel.: (949) 715-2022
Fax: (949) 715-2060

Plaintiff In Propria Persona **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 467 South Arnaz Drive, Suite 319A, Los Angeles, California 90048.

On August 9, 2007, I served the foregoing document described as **MEMORANDUM** OF LAW IN **OPPOSITION** TO THE **MOTION OF DEFENDANTS BILLY** HARBERT, JR. AND B.L. **HARBERT INTERNATIONAL, LLC TO DISMISS** on the interested parties in this action by facsimile and by placing true copies thereof enclosed in (a) sealed envelope(s) addressed as follows:

Roger S. Goldman
LATHAM & WATKINS, LLP
555 11th Street, N.W.
Suite 100
Washington, D.C. 20004

Matthew H. Lembke
BRADLEY ARANT ROSE & WHITE, LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

I deposited this envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

BRIAN J. JACOBS
Type or Print Name                                    Signature

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. HODA ELEMARY,<br><br>   Plaintiff,<br><br>    vs.<br><br>PHILIPP HOLZMANN A.G<br>WACHOVIA BANK, N.A.; B.L.<br>HARBERT INTERNATIONAL, LLC;<br>SABBIA AKTIENGESELLSCHAFT;<br>HARBERT INTERNATIONAL<br>ESTABLISHMENT, INC.; BILL L.<br>HARBERT, SR.; AND BILLY<br>HARBERT, JR.,<br>   Defendants | ) Case No. 1:07-cv-00654-RCL<br>)<br>)<br>) Hon. Royce C. Lamberth<br>)<br>) Oral Argument Requested<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**AMENDED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION**

**OF CERTAIN DEFENDANTS TO TRANSFER VENUE**

## STATEMENT OF FACTS

## PLAINTIFF' OPPOSTION TO DEFENDANTS' MOTION TO TRANSFER VENUE IS BASED ON THE FACT THAT All of the transactions, agreements, guarantees, subject matter, Plaintiff's associates, a majority of Defendants' representatives and %90 of the witnesses are located in the District of Columbia. On the other hand, only one Defendant, who is medically able to participate in the discovery and trial phases is located in Alabama. It is mind-boggling that for his sole convenience, Billy Harbert's attorneys would submit a motion to transfer venue to Alabama.

{The facts of the case relevant to this motion together with the Rebuttal: Request For Judicial Notice are attached hereto as AMENDED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF DEFENDANTS BILLY HARBERT, JR. AND B.L. HARBERT INTERNATIONAL LLC TO DISMISS; REQUEST FOR JUDICIAL NOTICE and made a part hereof}. A brief summary of the essential facts is provided in the following paragraph

## BACKGROUND

Defendant Harbert International Establishment, Inc. ("Establishment") has moved to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for improper venue under Rule 12(b)(3).

The First Cause of Action (Interference with Prospective Economic Advantage) (Complaint, ¶34-41) alleges the successful interference by defendant Billy Harbert, Jr. ("Billy Harbert Jr.") with the $15 million settlement proposed by the Department of Justice (the "DOJ") and otherwise accepted by defendant Bill L. Harbert, Sr. ("Mr. Harbert Sr."), thereby depriving Plaintiff of the $2,050,000 success fee she would

1

otherwise have earned under the September 21 Agreement; the Second Cause of Action

(Breach of Contract) (id., ¶¶42-47) alleges the breach of the September 21 Agreement by

Mr. Harbert Sr.; the Third Cause of Action (Quantum Meruit) (id., ¶¶48-50) seeks

compensation for the reasonable value of services performed by Plaintiff under the

September 21 Agreement; the Fourth Cause of Action (Termination in Violation of

Public Policy) (id., ¶¶51-57) seeks relief in tort for the termination of the September 21

Agreement; the Fifth Cause of Action (Suppression of Facts) (id., ¶¶58-65) arises out of

events which led to the filing of the False Claims Case; the Sixth Cause of Action (Civil

RICO) (id., ¶1166-85) alleges the commission of violations of the Hobbs Act, 18 U.S.C.

§1951, in an attempt to bring about the termination of the September 21 Agreement; and

the Seventh Cause of Action (Civil RICO) (id., ¶¶86-104) alleges the laundering of

monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A) in connection with a

phantom equipment-leasing transaction organized by Mr. Harbert Sr. with defendant

Sabbia Aktiengesellschaft. At all relevant times, Plaintiff spent half of the year in

Washington, dealing with the White House and the United States Congress. Complaint,

¶29.

Defendants B.L. Harbert International, LLC ("HILLC"), Harbert International

Establishment, Inc. ("Establishment"), Mr. Harbert Sr. and Billy Harbert Jr. (collectively

hereinafter sometimes referred to as "Defendants") have moved to transfer venue to the

Northern District of Alabama pursuant to 28 U.S.C. §1404(a) (the "Motion"). As set

forth hereinafter, the Motion should be denied.

## ARGUMENT

Defendants admit that the bulk of the six Defendants herein are not residents of

Alabama-- two individuals are residents of Alabama, two companies have their principal

place of business therein, two Defendants are based in Europe, and one Defendant is a

national banking association headquartered in North Carolina. Motion, p. 5. In light of

this inconvenient fact, the bulk of the Motion is an attempt to apply traditional 28 U.S.C.

§ 1404(a) factors to justify transfer of venue to the Northern District of Alabama.

Motion, pp. 7-17. Defendants' arguments fail under the jurisprudence applicable to such

clauses. "The venue transfer provisions of Section 1404(a) are not meant to merely shift

the inconvenience to the plaintiff." Reed Elsevier, Inc. v. Innovator Corp., 105

F.Supp.2d 816, 821 (S.D. Ohio 2000) (internal quotation marks omitted). The party

seeking transfer must show a clear balance of inconveniences to him. Harris Trust & Sa$^y$.

Bank v. SLT Warehouse Co., Inc., 615 F.Supp. 225, 227 (N.D. 111. 1985). In effect,

Defendants are seeking to replace their claimed inconvenience -- unconvincing given all

parties' representation by large local firms -- with Plaintiffs. They need to make a

powerful case.

This, Defendants have not done. As grudgingly acknowledged by Defendants,

the plaintiffs choice of forum is given substantial weight (see, Motion, p. 8), and will

not ordinarily be disturbed unless the "convenience" and "justice" factors strongly favor

it. Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1317 (9th Cir. 1985).

While Defendants attempt to downplay both Plaintiffs ties to the forum and its

relationship to the events alleged in the Complaint, the fact remains that during the

relevant times, Plaintiff resided for half the year in Washington (Complaint, ¶89). The

False Claims Case which she managed was litigated in this very Court (id., ¶8); Senator

Bob Dole, with whom Plaintiff worked closely, resided in this district (see, id., ¶¶14, 18

& 25); the DOJ, with whom Plaintiff negotiated, is located in this district (see, id., ¶¶2,

10, 18 & 25); and all relevant meetings and settlement conferences took place in this

district (id., ¶2). Where the plaintiff, as here, is an individual and the defendant is a

large corporation, the defendants' assertion of monetary expense and difficulty in

litigating in a distant forum are largely to be disregarded. Miracle v. NYP Holdings,

Inc., 87 F.Supp.2d 1060, 1073 (D. Hawaii 2000). Given the size and wealth of the

3

defendant corporations arrayed against

Plaintiff, this principle works here to powerful effect. See, Harbert Decl., 14. Defendants claim that Plaintiffs claims herein arose in Alabama (Motion, p. 9), but this district -- both as the locus of the USAID, which financed the Cairo Waste Water project, and the situs of the False Claims Case, which Plaintiff managed, is a better choice for this status. Next, while Defendants attempt to frame a transfer argument based on the alleged convenience of witnesses (see, Motion, pp. 10-14), a party moving for change of venue must identify the witnesses and present a generalized statement of what their testimony would be. Heller Fin'l, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989). This, Defendants did not do, confining themselves merely to identifying non-parties referred in the Complaint.

Finally, Defendants attempt to argue that Alabama law supplies the law applicable to this case, arguing that this is the result mandated by Washington's "governmental interests analysis." Motion, pp. 15-17. However, while Plaintiff by no means concedes this to be the case -- an agreement between Plaintiff and Mr. Harbert Sr. specifies California law as governing any disputes (Complaint, Exh. "A") -- there is no showing attempted by Defendants that this Court would be unable to ascertain Alabama (or California!) law if called upon to do so. This factor is a draw.

Accordingly, looking at the "private interest factors" cited on page 7 of the Motion, two factors, (1) (plaintiffs privilege of choosing the forum) and (3) (location where the claim arose) favor Plaintiff; two appear neutral, (2) defendants' preferred forum and (4) convenience of the parties; and two may favor Defendants, (5) convenience of witnesses (but only to the extent of unavailability for trial) and (6) ease of access to sources of proof. In other words, the private interest factors are a wash. Of the public interest factors, Defendants admit that the last two, relative congestion in the courts and local interest, are a wash, while the first, the transfer familiarity with

governing law, is also a wash because the governing **law** is that of California. Recalling that the moving party must make an <u>affirmative</u> showing in order to overcome the plaintiffs choice of forum, Defendants are seen not to have met their burden.

### CONCLUSION

For the foregoing reasons, the Motion should be denied. Respectfully submitted,

Dated: August 3, 2007

Dr. Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677
Tel.: (949) 715-2022
Fax: (949) 715-2060

Plaintiff In Propria Persona

5

PROOF OF SERVICE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 467 South Arnaz Drive, Suite 319A, Los Angeles, California 90048.

On August 9, 2007, I served the foregoing document described as MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF CERTAIN DEFENDANTS TO TRANSFER VENUE on the interested parties in this action by facsimile and by placing true copies thereof enclosed in (a) sealed envelope(s) addressed as follows:

Roger S. Goldman
LATHAM &
WATKINS LLP 555
11th Street, N.W.
Suite 1000
Washington, D.C. 20004

Matthew H. Lembke
BRADLEY ARANT ROSE &
WHITE LLP One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

I deposited this envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.



BRIAN J. JACOBS
Type or Print Name                    Signature

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. HODA ELEMARY, | ) |
| Plaintiff, | ) Case No. 1:07-cv-00654-RCL |
| vs. | ) Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., | ) Oral Argument Requested |
| Defendants | ) |

DR. HODA ELEMARY,

Plaintiff,

vs.

PHILIPP HOLZMANN A.G
WACHOVIA BANK, N.A.; B.L.
HARBERT INTERNATIONAL, LLC;
SABBIA AKTIENGESELLSCHAFT;
HARBERT INTERNATIONAL
ESTABLISHMENT, INC.; BILL L.
HARBERT, SR.; AND BILLY
HARBERT, JR.,

Defendants

Case No. 1:07-cv-00654-RCL

Hon. Royce C. Lamberth

Oral Argument Requested

**AMENDED MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION
OF DEFENDANTS BILL L. HARBERT, SR. AND
HARBERT INTERNATIONAL ESTABLISHMENT, INC. TO DISMISS**

## STATEMENT OF FACTS

**{The facts of the case relevant to this motion together with the Rebuttal: Request For Judicial Notice are attached hereto as Exhibits "A" through "H" and made a part hereof}.** A brief summary of the essential facts is provided in the following paragraph.

The within action arises in its entirety out of the events and circumstances attending plaintiff Dr. Hoda Elemary ("Plaintiff)'s activities as exclusive case manager of the qui tam case <u>United States of America ex rel. Richard F. Miller v. Philipp Holzmann A.G. et al.,</u> United States District Court for the District of Columbia case no. 1:95CV01231 WBB (the "False Claims Case"), the trial of which recently concluded in this Court and which is referenced in paragraph 8 of the Complaint for Damages herein (the "Complaint"), and culminating in the execution and delivery of the September 21 Agreement in 2004 as described in paragraph 43 of the Complaint.

## INITIAL LEGAL ANALYSIS

The First Cause of Action (Interference with Prospective Economic Advantage) (Complaint, ¶34-41) alleges the successful interference by defendant Billy Harbert, Jr. ("Billy Harbert Jr.") with the $15 million settlement proposed by the Department of Justice (the "DOJ") and otherwise accepted by defendant Bill L. Harbert, Sr. ("Mr. Harbert Sr."), thereby depriving Plaintiff of the $2,050,000 success fee she would otherwise have earned under the September 21 Agreement; the Second Cause of Action (Breach of Contract) (id., ¶¶42-47) alleges the breach of the September 21 Agreement by Mr. Harbert Sr.; the Third Cause of Action (Quantum Meruit) (id., ¶¶48-50) seeks compensation for the reasonable value of services performed by Plaintiff under the September 21 Agreement; the Fourth Cause of Action (Termination in Violation of Public Policy) (id., ¶¶51-57) seeks relief in tort for the termination of the September 21 Agreement; the Fifth Cause of Action (Suppression of Facts) (id., ¶¶58-65) arises out of events which led to the filing of the False Claims Case; the

1

Sixth Cause of Action (Civil RICO) (id., ¶¶66-85) alleges the commission of violations of the Hobbs Act, 18 U.S.C. §1951, in an attempt to bring about the termination of the September 21 Agreement; and the Seventh Cause of Action (Civil RICO) (id., ¶¶86-104) alleges the laundering of monetary instruments in violation of 18 U.S.C. §1956(a)(1)(A) in connection with a phantom equipment-leasing transaction organized by 'Mr. Harbert Sr. with defendant Sabbia Aktiengesellschaft. At all relevant times, Plaintiff spent half of the year in Washington, dealing with the White House and the United States Congress. Complaint, ¶29.

Defendant Harbert International Establishment, Inc. ("Establishment") has moved to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for improper venue under Rule 12(b)(3), and additionally Billy Harbert Jr. and Establishment (sometimes collectively hereinafter referred to as "Defendants") have moved under Rule 12(b)(6) to dismiss the Fourth, Fifth and Seventh Causes of Action against Mr. Harbert Sr. and the Fifth Cause of Action against Establishment (the "Motion"). As set forth hereinafter, the Motion should be denied in all respects.

## ARGUMENT

I.    **THIS COURT HAS PERSONAL JURISDICTION OVER**

**ESTABLISHMENT** first seeks relief under Rule 12(b)(2) on the ground that it is not subject to the personal jurisdiction of the courts of the District of Columbia, and, therefore, of this Court (Motion, pp. 4-6), citing to Billy Harbert Jr.'s and B.L. Harbert International, LLC's concurrently-filed motion (the "Harbert Sr./HILLC Motion") with respect to this issue (Motion, pp. 4-5). For the reasons set forth in Plaintiffs opposition to the Harbert Sr./HILLC Motion, incorporated herein by this reference, and noting that the Alabama Secretary of

State Corporate Details printout itself establishes that Establishment is an instrumentality of Billy Harbert, Jr. (see, Motion, Exh. "A"), the Motion should be denied.

## IL VENUE IS PROPER IN THE DISTRICT OF COLUMBIA UNDER 28 U.S.C. §1391

Establishment next seeks relief under Rule 12(b)(3) on the ground that the venue of this action was not properly laid in this Court (Motion, pp. 6-7), citing to the Harbert Sr./HILLC Motion with respect to this issue (ibid.). For the reasons set forth in Plaintiffs opposition to the Harbert Sr./HILLC Motion, incorporated herein by this reference, the Motion should be denied.

## III. THE FOURTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CLAIM FOR TERMINATION IN VIOLATION OF PUBLIC POLICY AGAINST MR. HARBERT SR. AND ESTABLISHMENT AND SHOULD NOT BE DISMISSED

With respect to the Fourth Cause of Action, sounding in termination in violation of public policy, the Motion claims that Plaintiff is not alleged to be an employee (Motion, pp. 8-10), and, even if she is, that the termination was not shown to be in violation of any public policy (id., p. 10). These objections are not easy to understand. In paragraph 52 of the Complaint, it is alleged that "Plaintiff was employed by Mr. Harbert Sr. as exclusive case manager for the False Claims Case and the declaratory relief action from April, 2002 to April, 2005 . . . ." While the Motion goes on to attack the September 21 Agreement as not establishing an employment relationship (see, id., pp. 9-10), it must be remembered that that agreement was entered into in September, 2004 -- more than two years after the start of the pleaded employment relationship. The Motion's

argument is just another example of the common defense tactic of criticizing a plaintiff for not proving his or her case in the complaint. This is not a pleader's responsibility under either Federal or District of Columbia pleading rules, and the Motion's argument is merit less. The same criticism can be directed at the Motion's curious claim that no violation of public policy is alleged, as Plaintiffs refusal to conceal evidence from the United States, and her consequent termination, are alleged in paragraphs 53 and 54. The Motion is without merit and should be denied.

## IV. THE FIFTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CLAIM FOR FRAUD AGAINST MR. HARBERT SR. AND ESTABLISHMENT AND SHOULD NOT BE DISMISSED

The Motion next attacks Plaintiffs Fifth Cause of Action, sounding in fraud (Motion, pp. 10-11), citing to the Harbert Sr./HILLC Motion with respect to this issue (ibid.). For the reasons set forth in Plaintiffs opposition to the Harbert Sr./HILLC Motion, incorporated herein by this reference, the Motion should be denied.

## V. THE SEVENTH CAUSE OF ACTION OF THE COMPLAINT PROPERLY STATES A CIVIL RICO CLAIM AGAINST MR. HARBERT SR. AND SHOULD NOT BE DISMISSED

Finally, Defendants seek the dismissal of the Seventh Cause of Action, sounding in civil RICO, on the single ground that the Complaint fails adequately to allege that Plaintiff was injured in her "business or property" as a result of the pleaded RICO violations, and thus lacks standing to bring this claim. Motion, pp. 11-13. This claim, however, is erroneous. Paragraph 21 of the Complaint alleges that "[t]he Harbert Contractors encouraged foreign corporations to join them in defrauding the American taxpayer and the recipient Middle East governments with the effect of severely undermining Plaintiffs credibility with Middle East heads of states with whom Plaintiff had enjoyed a very lucrative business relationship," while paragraph 22 alleges that "Plaintiff sustained substantial losses in her theatres of operation, including, but not

4

limited to, permanent damages as the direct and proximate result of the fraud and concealment by Defendants of the facts of the bid-rigging scheme." The phantom equipment-leasing scheme alleged in the Seventh Cause of Action simultaneously assisted Mr. Harbert Sr. in concealing the fact of the operation of, as well as his personal involvement in, the bid-rigging scheme, as well as providing a source of funds for payment to the participants. In the manner described in the Complaint, these effects contributed to the destruction of Plaintiffs business as an intermediary between U.S. corporations and the Middle East, to her detriment in the amount alleged in paragraph 104. Defendants' attack on the Seventh Cause of Action has no merit and the Motion should be denied.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

Respectfully submitted,

Dated: August 5, 2007

Dr. Hoda Elemary
21 Le Conte
Laguna Niguel,
CA 92677
Tel: (949) 715-2022
Fax: (949) 715-2060

Plaintiff In Propria Persona

**PROOF** OF SERVICE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 467 South Arnaz Drive, Suite 319A, Los Angeles, California 90048.

On August 10, 2007, I served the foregoing document described as **MEMORANDUM** OF LAW IN **OPPOSITION TO** THE **MOTION** OF **DEFENDANTS BILL** L. HARBERT, SR. AND **HARBERT INTERNATIONAL ESTABLISHMENT,** INC. **TO DISMISS** on the interested parties in this action by facsimile and by placing true copies thereof enclosed in (a) sealed envelope(s) addressed as follows:

      Roger S. Goldman
      LATHAM &
      WATKINS LLP 555
      11th Street, N.W.
      Suite 1000
      Washington, D.C. 20004

      Matthew H. Lembke
      BRADLEY ARANT ROSE &
      WHITE LLP One Federal Place
      1819 Fifth Avenue North
      Birmingham, AL 35203

I deposited this envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.



BRIAN J. JACOBS
Type or Print Name     Signature