IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. HODA ELEMARY,           )
            )
      Plaintiff,         )
            )
v.            )    CIVIL ACTION NUMBER:  CV-07-654
            )
PHILIPP HOLZMANN A.G., et al.,    )
            )
      Defendants.       )

## ANSWER AND COUNTERCLAIMS OF BILL L. HARBERT, SR.

Defendant Bill L. Harbert, Sr. ("Mr. Harbert") makes the following answer to Plaintiff's Complaint:

1.     Mr. Harbert admits that this Court has jurisdiction over this matter.  He further admits that Plaintiff is a citizen of the State of California and that he is a citizen of the State of Alabama.  He further admits that the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars.  He further admits that B.L. Harbert International, LLC is a Delaware limited liability company with its principal place of business in the State of Alabama.  He denies that Harbert International Establishment, Inc. is a Liechtenstein corporation with its principal place of business in the Swiss Confederation.  He admits that Billy L. Harbert, Jr. is a citizen of Alabama. He lacks knowledge or information sufficient to form a belief as to the remaining averments in this paragraph, so they are denied.

2.     Mr. Harbert denies the first, second, and third sentences of this paragraph.  As to the fourth sentence, Mr. Harbert is without knowledge or information sufficient to form a belief as to its truth, so it is denied.

3.     Denied.

4.     Mr. Harbert denies the first sentence of this paragraph.  As to the second sentence, Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of this sentence, so it is denied.  Mr. Harbert denies the averments contained in the third, fourth, fifth, and sixth sentences.  As to the remaining sentences contained in this paragraph, Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the averments contained in them, so they are denied.

5.     Mr. Harbert denies the averments contained in the first sentence of this paragraph. Mr. Harbert admits the averments contained in the second and third sentences of this paragraph. Mr. Harbert denies the averments contained in the fourth, fifth, and sixth sentences of this paragraph.

6.     Mr. Harbert denies the averments contained in the first and second sentences of this paragraph.  As to the third sentence, Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth or veracity of the averments contained in that sentence, so they are denied.  Mr. Harbert denies the averments contained in the fourth and fifth sentences of this paragraph.  Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the averments contained in the sixth sentence of this paragraph, so it is denied.

7.     Mr. Harbert denies the averments contained in the first, second, third, and fourth sentences of this paragraph.  Mr. Harbert denies that he has been involved in any violence directed to Plaintiff.  Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the remaining averments contained in the fifth and sixth sentences of this paragraph, so they are denied.  As to the last sentence of the paragraph, Mr. Harbert denies it.

8.     Denied.

9.      Denied.

10.     Denied.

11.     Denied.

12.     Mr. Harbert denies the averments contained in the first, second, third, and fourth sentences of this paragraph.  Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the averments contained in the last two sentences of this paragraph, so they are denied.

13.     Denied.

14.     Denied.

15.     Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the averments contained in the first, second, and third sentences of this paragraph. Mr. Harbert denies the averments contained in the last two sentences of this paragraph.

16.     Denied.

17.     Mr. Harbert lacks knowledge or information as to the identity of "Harbert Defendants."  Accordingly, the averments in this paragraph are denied as framed.

18.     Denied.

19.     Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in the first sentence of this paragraph, so they are denied.  Mr. Harbert denies the second and third sentences.  Mr. Harbert lacks knowledge or information sufficient to form a belief as to the averments contained in fourth sentence, so they are denied. As to the fifth sentences, Mr. Harbert admits that Plaintiff characterizes the defendants in the

stated manner.  As to the sixth sentence, Mr. Harbert incorporates his response to Paragraph V of Incorporated Schedule.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Denied.

24.     Denied.

25.     Mr. Harbert admits that he rejected pursuing a $15 million settlement.   Mr. Harbert denies the remaining allegations in this paragraph.

26.      The introductory sentence of this paragraph is denied.

a.   Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the last sentence in this paragraph, so it is denied.  The remaining averments contained in this paragraph are denied, except that Mr. Harbert admits that the November 11, 2004, letter contains the quoted language, which was written by Plaintiff.

b.   Denied.

c.   Denied.

27.     Denied.

28.     Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in the first two sentences of this paragraph, so they are denied. Mr. Harbert denies the remaining allegations of this paragraph.

29.     Mr. Harbert denies the first sentence of this paragraph.  Mr. Harbert denies the second sentence of the paragraph as framed.  Mr. Harbert admits that he executed the letter referred to in the third sentence, but denies the remainder of the sentence as framed.  Mr. Harbert denies the fourth through the sixth sentences to the extent that they allege that the quoted words were drafted by or otherwise attributable to Mr. Harbert.  Mr. Harbert admits the seventh sentence of the paragraph.  Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the final sentence of the paragraph, so it is denied.

30.     Denied.

31.     Mr. Harbert denies the first three sentences of this paragraph.  Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of the averments contained in the fourth and fifth sentences of the paragraph, so they are denied.  Mr. Harbert denies that the materials attached as Exhibit E stand for the proposition plaintiff attributes to them.

32.     Mr. Harbert denies that the forum designated in the November 3 Trust is applicable to this action.  Mr. Harbert denies the averments contained in the second sentence of the paragraph to the extent they are directed to him, and he is without knowledge or information sufficient to form a belief as to the truth of the averments contained in the second sentence that are not directed to him.  Mr. Harbert admits that the California federal court's Minute Order dated February 23, 2007, contains the quoted language (except that the word "that" has been omitted from the quote) contained in the third sentence of this paragraph.  Mr. Harbert denies the allegations contained in the fourth sentence.

33.     Mr. Harbert admits that he is a party to this lawsuit, although he denies that plaintiff is entitled to any relief from him.  Mr. Harbert incorporates herein his responses to Paragraph V of the Incorporated Schedule.

### FIRST CAUSE OF ACTION

34.-41. This cause of action has been dismissed by the Court, so Mr. Harbert makes no response to the allegations contained in it.

### SECOND CAUSE OF ACTION

42.     Mr. Harbert realleges and incorporates as if set out in full herein his responses to paragraphs 1 through 33 of plaintiff's complaint.

43.     Mr. Harbert admits that the September 21 agreement contains the phrase "extremely satisfactory and promising."  Mr. Harbert further admits that the September 21 agreement states that Mr. Sharp had sole authority to communicate with Mrs. Moulton, Mrs. Cornay, Mr. Harbert, Jr., and Mr. Hall; that those individuals would communicate regarding the cases exclusively with Mr. Sharp; that communications regarding the cases would be made to Mr. Harbert by Mr. Sharp or Plaintiff.  Mr. Harbert lacks knowledge or information as to the truth of the last sentence in the paragraph, so it is denied.  The remaining allegations of this paragraph are denied as framed.

44.     Denied.

45.     Denied.

46.     Denied.

47.     Denied.

### THIRD CAUSE OF ACTION

48.    Mr. Harbert realleges and incorporates as if set out in full herein his responses to paragraphs 1 through 33 of plaintiff's complaint.

49.    Denied.

50.    Denied.

### FOURTH CAUSE OF ACTION

51.-57. The Court has dismissed this cause of action, so Mr. Harbert makes no response to it.

### FIFTH CAUSE OF ACTION

58.-65.  The Court has dismissed this cause of action, so Mr. Harbert makes no response to it.

### SIXTH CAUSE OF ACTION

66.-85.  The Court has dismissed this cause of action, so Mr. Harbert makes no response to it.

### SEVENTH CAUSE OF ACTION

86.    Mr. Harbert realleges and incorporates as if set out in full herein his responses to paragraph 1 through 33 of plaintiff's complaint.

87.    Admitted.

88.    Denied.

89.    Denied.

90.    Denied.

91.    Denied.

92.     Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph, so they are denied.

93.     Mr. Harbert denies the averment referring to a fraudulent character of the transaction.  Mr. Harbert lacks knowledge or information sufficient to form a belief as to the remaining averments in this paragraph.

94.     Denied.

95.     Denied.

96.     Denied.

97.     Mr. Harbert is without knowledge or information sufficient to form a belief as to the truth of this averment, so it is denied.

98.     Denied.

99.     Denied.

100.    Denied.

101.    Denied.

102.    Denied.

103.    Denied.

104.    Denied.

REQUEST FOR RELIEF

Mr. Harbert denies that plaintiff is entitled to any of the relief that she requests from him in her complaint.

INCORPORATED SCHEDULE

I.      a.      Denied

8

    b.     Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this subsection, so it is denied.

    c.     Denied.

    d.     Denied.

The remaining sentences in this section are denied.

II.     Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of the averments concerning a Swiss Bankers Memorandum of Meetings so those allegations are denied. Mr. Harbert also lacks knowledge or information sufficient to form a belief as to the averments concerning Plaintiff's knowledge while pursuing the Saudi claim, although Mr. Harbert denies that the Harbert Contractors were involved in bid-rigging. The remaining allegations of this paragraph are denied.

III.     Mr. Harbert denies the allegations contained in the first paragraph of this section.

Mr. Harbert denies the allegations contained in the second paragraph of this section.

As to the third paragraph of this section, Mr. Harbert denies the first, second, and third sentences. Mr. Harbert lacks knowledge or information sufficient to form a belief as to the allegations in the fourth sentence concerning a September 27 letter, and Mr. Harbert denies the remaining averments in the fourth sentence. Mr. Harbert admits that he sent the October 5 letter. Mr. Harbert admits that he sent the October 21 letter. Any remaining averments in this paragraph are denied.

As to the fourth paragraph of this section, Mr. Harbert admits that he sent the November 11 letter; that it was acknowledged by Ms. Hoover on that date; that the letter

confirmed the October 21 letter; and that the letter contained the quoted language.  Mr. Harbert denies that the letter was addressed to seven of his lawyers.

As to the fifth paragraph, Mr. Harbert admits that the referenced letters contained the quoted language and that the letters indicate that they were notarized as referenced.  The remaining averments of this paragraph are denied.

As to the sixth paragraph, Mr. Harbert denies that he sent Plaintiff the referenced letter on November 11, 2004.  He further denies that each of the four pages of the September 21 Agreement bear the words, "Confirmed on 11/11/04 Bill Harbert."  He lacks knowledge or information sufficient to form a belief as to the truth of the averments concerning letters sent to Keith Morgan, William D. Dillon, and Carolyn G. Mark.  He further denies that he sent the referenced letter to Plaintiff and four other parties with the quoted language.  To the extent that there are any remaining allegations in this paragraph, they are denied.

As for the seventh paragraph of this section, Mr. Harbert denies that he was acting under pressure by Billy Harbert, Jr. in writing to plaintiff.  The remaining averments contained in this paragraph are admitted.

Mr. Harbert denies the allegations contained in the eighth paragraph of this section.

IV.	Mr. Harbert denies the allegations in the first paragraph of this section.

Mr. Harbert lacks knowledge or information sufficient to form a belief as to the truth of the averments in the second paragraph of this section referencing Plaintiff's knowledge in 1991-1998.  The remaining averments in this paragraph are denied.

V.	Mr. Harbert admits the allegation related to the citizenship of plaintiff.

Mr. Harbert makes no response as to the allegations concerning the defendants who have been dismissed.

Mr. Harbert admits that he is a citizen of the State of Alabama.

VI.     Mr. Harbert lacks knowledge or information sufficient to form a belief as to the allegation concerning the contents of HILLC's website and as to the allegation concerning a memorandum written by Mr. Sharp.  The remaining averments in this section are denied.

Any averment contained in the Complaint not expressly admitted above is denied.

<u>AFFIRMATIVE DEFENSES</u>

<u>FIRST AFFIRMATIVE DEFENSE</u>

The Complaint fails to state a claim upon which relief may be granted against Mr. Harbert.

<u>SECOND AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are invalid in that Mr. Harbert fully complied with his contractual obligations, and is otherwise discharged from any such obligations.

<u>THIRD AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are barred by Plaintiff's own breaches of contract, breaches of fiduciary duties, and negligence.

<u>FOURTH AFFIRMATIVE DEFENSE</u>

Plaintiff has not suffered any legally cognizable injury.

<u>FIFTH AFFIRMATIVE DEFENSE</u>

Each of Plaintiff's claims against Mr. Harbert is barred by the applicable statute of limitations and is otherwise untimely.

<u>SIXTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are barred by the applicable statute of repose.

<u>SEVENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are barred by laches.

<u>EIGHTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are barred by the doctrines of release, accord and satisfaction, payment, failure of consideration, and failure to satisfy conditions precedent.

<u>NINTH AFFIRMATIVE DEFENSE</u>

Each of Plaintiff's claims against Mr. Harbert is barred by the doctrines of estoppel and waiver.

<u>TENTH AFFIRMATIVE DEFENSE</u>

Mr. Harbert pleads the general issue and denies that he is liable or responsible for any alleged damages to Plaintiffs.

<u>ELEVENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are barred by the doctrines of preclusion, res judicata, and collateral estoppel.  Mr. Harbert also pleads merger and bar.

<u>TWELFTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert are barred, in whole or in part, by Plaintiff's failure to mitigate her alleged damages.

<u>THIRTEENTH AFFIRMATIVE DEFENSE</u>

To the extent this action purports to hold one defendant liable for the acts of another, such attempt violates the Due Process clause of the United States Constitution.

<u>FOURTEENTH AFFIRMATIVE DEFENSE</u>

Any injuries to Plaintiff alleged in the Complaint were caused directly and proximately, in whole or in part, by Plaintiff's own negligence or fault in and about the matters alleged in the Complaint.

<u>FIFTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims against Mr. Harbert were caused in whole or in part by the intervening and supervening acts of others.

<u>SIXTEENTH AFFIRMATIVE DEFENSE</u>

Mr. Harbert denies that he owes any monies to Plaintiff and demands strict proof thereof.

<u>SEVENTEENTH AFFIRMATIVE DEFENSE</u>

Venue is improper.

<u>EIGHTEENTH AFFIRMATIVE DEFENSE</u>

Plaintiff's claims in Count VII of her Complaint is barred because she lacks capacity and standing to bring that claim.

<u>NINETEENTH AFFIRMATIVE DEFENSE</u>

Mr. Harbert incorporates his counterclaim as his nineteenth affirmative defense.

<u>TWENTIETH AFFIRMATIVE DEFENSE</u>

Mr. Harbert hereby gives notice that he intends to rely upon such other defenses as may become available or appear during discovery proceeding in this case or any related case.  Mr. Harbert hereby reserves the right to amend his Answer to assert any such defense.

Inasmuch as the Complaint does not describe the alleged underlying claims with sufficient particularity to enable Mr. Harbert to determine all of his legal and equitable rights, Mr. Harbert reserves the right to amend and supplement the averments of his Answer to assert any and all pertinent liability defenses ascertained through further investigation and discovery of this action.  Mr. Harbert will rely on all defenses that may become available during discovery or trial.

<u>COUNTERCLAIMS OF BILL L. HARBERT, SR.</u>

Pursuant to Federal Rule of Civil Procedure 13(a), Defendant and Counter-Plaintiff Bill L. Harbert, Sr. asserts the following counterclaims against Plaintiff and Counter-Defendant Hoda Elemary, and in support thereof alleges as follows:

**Parties**

1.      Counter-Plaintiff Bill L. Harbert, Sr. ("Mr. Harbert") is an adult resident citizen of Jefferson County, Alabama, and may be served with an Answer to the Counterclaim upon the undersigned attorney.

2.      On information and belief, Plaintiff and Counter-Defendant Hoda Elemary ("Elemary") is an adult resident citizen of Orange County, California.

3.      This Court has jurisdiction over the parties and subject matter of this Counterclaim.

**Facts**

4.      Elemary's complaint in this lawsuit was based on seven claims against a total of seven defendants.  Four of those defendants have been dismissed from this case pursuant to this

Court's granting of their motions to dismiss (Docs. 28, 30-31), while two others were dismissed because Elemary never served them with the summons and complaint. (Docs. 27, 29).

5.      Mr. Harbert is thus the only remaining defendant. Three of Elemary's five claims against him still remain pending. (See Doc. 30). Those claims are for breach of contract (Count II), quantum meruit (Count III), and Violation of 18 U.S.C. § 1964 (Civil RICO). (See id., p. 2).

6.      Elemary bases her claims in Counts II and III on her purported termination as a "Case Manager" for Mr. Harbert in a lawsuit that took place in Washington, D.C. (the "D.C. Litigation"). Her Civil RICO claim in Count VII is based on an alleged "phantom equipment-lending transaction" between Mr. Harbert and former co-defendant Sabbia Aktiengesellschaft that purportedly occurred between September 1989 and December 1992.

7.      Elemary was retained by Mr. Harbert to serve as an independent contractor to assist with the management of the D.C. Litigation. They purported to enter into a written, notarized contract on September 21, 2004 (the "September 21 Agreement"). *See* Exhibit A hereto; *see also* Complaint, Ex. G (Doc. 1-9).[1]

8.      That agreement stated that Elemary "consented to be directed by Mr. Harbert" with respect to her role as case manager. Ex. A, ¶ 5. It further contemplated that Mr. Harbert might decide to settle that litigation after "consent[ing] to pay the Government an amount, if any, with which he is comfortable." *Id.*, ¶ 6.

9.      While serving in her capacity as independent contractor, Elemary took actions on numerous occasions that were clearly beyond her authority, or even directly contrary to her instructions. For example, she made an offer to settle the lawsuit for $15 million despite the fact that she had been expressly instructed that Mr. Harbert would not settle for that amount.

---

[1] The September 21 Agreement purportedly updated and superseded a similar previous agreement between Elemary and Mr. Harbert. That agreement was executed by the parties on September 2, 2004.

10.     Furthermore, during the course of her service as independent contractor, Elemary repeatedly disclosed to third parties, without permission, confidential or privileged information or documents.

11.     These actions of Elemary as described above constituted breaches of the September 21 Agreement and were in contradiction to the purposes of Elemary's role in assisting with the D.C. Litigation.  Such actions, among other things, were the reasons for Elemary's termination.

12.     Elemary was terminated on April 4, 2005.  Since that time, she has continued to ignore her duty to maintain the confidentiality of certain information obtained in her role with Mr. Harbert.  She also continues to ignore basic principles of the attorney-client privilege.

13.     Since Elemary's termination, Mr. Harbert has learned that certain representations that she made to him in the September 21 Agreement regarding one of his attorneys, William Sharp, were untrue.   Specifically, Elemary represented to Mr. Harbert, and wrote into the September 21 Agreement, that:

> William Sharp has reviewed the arrangement between Mr. Harbert and Dr. Elemary regarding said Le Conte property, and finds that arrangement in order.

Ex. A, ¶ 8.  In fact, Elemary had failed to disclose the Laguna Niguel Beach House 2003 Revocable Trust to Mr. Sharp, and Mr. Harbert did not learn this until after March 1, 2005.

## **Harassing Litigation**

14.     Elemary has brought these claims against Mr. Harbert on several occasions previously.  Elemary has made nearly identical claims against Mr. Harbert, and many of his former co-defendants in this action, on at least two other actions.  These lawsuits are part of Elemary's continuing effort to harass Mr. Harbert and others with nonstop frivolous litigation.

15.    In July 2006, Elemary filed in the Central District of California a nearly identical complaint, raising nearly identical claims, against Mr. Harbert, and twenty-one other defendants – including former co-defendants Billy Harbert, Jr.; B.L. Harbert International, LLC; Wachovia Bank, N.A.; Sabbia Aktiengessellchaft; and Harbert International Establishment, Inc., and no fewer than nine attorneys and law firms. *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed July 28, 2006). Because the majority of events on which Elemary based her claims took place in Alabama, Mr. Harbert and several other defendants in that suit moved to transfer the case to the United States District Court for the Northern District of Alabama. The court granted the motion on February 28, 2007. Compl. ¶ 5.[2] Refusing to accept the Central District of California's determination that her claims properly belong in Alabama, Plaintiff quickly dismissed the complaint after her initial suit was transferred. *Id.*[3]

16.    Even before her first case was transferred, Plaintiff had filed a second lawsuit in the same California federal court, seeking liquidated damages purportedly triggered by the filing of the motion to transfer and personal jurisdiction challenges by Billy Harbert, Jr. and other defendants.[4] On July 27, 2007, one month after defendants had filed motions to dismiss, a supporting declaration, and a request for judicial notice, Elemary filed a notice of voluntary dismissal without prejudice. The court denied this motion as moot on August 8, 2007. The court dismissed this lawsuit, on the same grounds as the first lawsuit, in an order entered August 10, 2007.

---

[2] *See* Civil Minutes, *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. Feb. 28, 2007) (attached as Exhibit 2 to Certain Defendants' Request for Judicial Notice ("Doc. 12")).

[3] Notice of Voluntary Dismissal, *Elemary v. Harbert*, Civil Action No. 07-AR-0457-5 (filed March 20, 2007) (attached as Exhibit 11 to Doc. 12).

[4] *See* Complaint, *Elemary v. Harbert*, No. SA CV07-0217 RGK (PJWx) (C.D. Cal. filed Feb. 20, 2007) (attached as Exhibit 3 to Doc. 12).

17.    After dismissing the action transferred to Alabama, Elemary filed this action – her third lawsuit – on April 10, 2007, against Mr. Harbert, Billy Harbert Jr., and several Harbert-related entities she had previously joined as defendants in the now-dismissed suit. The seven-count Complaint in this case contains nearly identical claims and allegations as Plaintiff's original (and now-dismissed) complaint.[5]

18.    Elemary filed a fourth lawsuit on April 27, 2007 in the Superior Court of the State of California for the County of Los Angeles.[6] Instead of naming the same defendants whom she named in her prior complaints, however, Elemary this time brought suit against only three named defendants – Mr. Harbert, his son Billy Harbert, Jr., and Jerry L. Steering – and twenty-five other "Doe" defendants. On June 5, 2007, Mr. Harbert and Billy Harbert, Jr. removed the case to the Central District of California, which later granted the Harberts' separate motions to dismiss on venue grounds and dismissed the case on August 22, 2007.

19.    Elemary's multiple lawsuits related to her alleged claims against the Harberts have been virtually completely unsuccessful and have imposed substantial costs on Mr. Harbert and his related entities.

## COUNT I – FRAUDULENT INDUCEMENT

20.    Mr. Harbert incorporates and reasserts, as if fully set forth herein, each and every allegation in the preceding paragraphs, and further alleges that:

---

[5] *Compare* Complaint, Doc. 1, *with* First Amended Complaint for Damages, *Elemary v. Harbert*, No. CV06-4732 RGK (PJWx) (C.D. Cal. filed Oct. 30, 2006) (attached as Exhibit 4 to Doc. 12).

[6] See Complaint, *Elemary v. Steering*, No. BC370218 (L.A. Super. Ct. filed Apr. 27, 2007) (attached as Exhibit 5 to Doc. 12).

21.    While she was drafting and then negotiating the aforementioned September 21 Agreement, Elemary made material representations to Mr. Harbert regarding facts purportedly known by one of Mr. Harbert's attorneys, William Sharp.

22.    Specifically, paragraphs 8 of that document contains such a representation.  The September 2 Agreement, which was superseded by the September 21 Agreement, contains similar representations.[7]  Ex. B, ¶ 8.

23.    These representations by Elemary were false, and were known by Elemary to be false.

24.    These misrepresentations were made willfully to deceive.

25.    Elemary intended the above-referenced misrepresentations to induce Mr. Harbert to act in reliance thereon by entering into the September 21 Agreement.

26.    Mr. Harbert did in fact act in reliance on Elemary's misrepresentations by entering into the September 21 Agreement.  Had Elemary not made those misrepresentations, Mr. Harbert would not have entered into the September 21 Agreement.

27.    Such reliance by Mr. Harbert was justified and reasonable based on the knowledge available to him and the circumstances at the time.  Mr. Harbert did not learn that these representations were fraudulent until after March 1, 2005.

28.    As a proximate result of the above-described fraudulent misrepresentations, Mr. Harbert has suffered direct and consequential damages in an amount to be determined at trial.

29.    Elemary's actions were of a kind and character as to be willful, wanton, grossly negligent, or intentional, and, thus, in bad faith.  Accordingly, Mr. Harbert is entitled to both

---

[7] The fact that Mr. Harbert does not base any claim on the September 2 Agreement should not be construed to mean that he was aware of the falsity of any representation therein at any time prior to becoming aware of the falsity of representations in the September 21 Agreement.

compensatory and punitive damages. Alternatively, or in conjunction, Mr. Harbert is entitled to

a complete rescission of all contract documents, notes, and deeds of trust underlying this lawsuit.

WHEREFORE, Mr. Harbert demands judgment against Elemary for compensatory

damages in an amount in excess of $75,000, exclusive of interest, fees and costs (to which Mr.

Harbert is also entitled), as well as mental anguish and punitive damages, and for such further

and different relief as the Court deems just and proper. Alternatively, Mr. Harbert demands

rescission of all contract documents, notes, and deeds of trust underlying this lawsuit.

### COUNT II – BREACH OF CONTRACT – SEPTEMBER 21 AGREEMENT

30.    Mr. Harbert incorporates and reasserts, as if fully set forth herein, each and every

allegation in the preceding paragraphs, and further alleges that:

31.    On or about September 21, 2004, Mr. Harbert and Elemary entered into an

agreement, described hereinabove and referred to as the September 21 Agreement, regarding

Elemary's role as case manager for the D.C. Litigation. *See* Exhibit A hereto; *see also*

Complaint, Ex. G (Doc. 1-9). This agreement, drafted by Elemary, contains numerous

subjective, evaluative statements and is largely narrative in substance. However, the agreement

notes that in exchange for Mr. Harbert's promise that Elemary could continue in her role as case

manager, she "consented to be directed by Mr. Harbert." Ex. A, ¶ 5. The agreement further

contemplates that Mr. Harbert might decide to settle the litigation after "consent[ing] to pay the

Government an amount, if any, with which he is comfortable." *Id.*, ¶ 6.

32.    Mr. Harbert complied with his obligations set forth the September 21 Agreement

by continuing to retain and compensate Elemary for her role as case manager. Mr. Harbert did

not cease doing so until it became clear that Elemary had taken actions that not only constituted

material breaches of the September 21 Agreement, but that were in violation of her duties as a fiduciary.

33.    Elemary materially breached the September 21 Agreement by, *inter alia*, making an offer, purportedly on behalf of Mr. Harbert, to settle the litigation when she knew she had no authority to make such an offer.  In addition, Elemary repeatedly disclosed, without permission, confidential or privileged information or documents that were proprietary to Mr. Harbert or related entities to third-parties.  Such actions, among other things, were the reasons for Elemary's termination.

34.    By reason of Elemary's breach, Mr. Harbert has been damaged in a manner and in an amount to be determined at trial.

WHEREFORE, Mr. Harbert demands judgment for compensatory damages in an amount in excess of $75,000, exclusive of interest, fees and costs (to which Mr. Harbert is also entitled), and for such further and different relief as the Court deems just and proper.

## COUNT III – BREACH OF CONFIDENTIAL RELATIONSHIP

35.    Mr. Harbert incorporates and reasserts, as if fully set forth herein, each and every allegation in the preceding paragraphs, and further alleges that:

36.    Elemary's role as case manager, which required her to work with Mr. Harbert and his attorneys to defend him and related entities in a lawsuit, constituted the type of relationship understood to carry an obligation of confidentiality.

37.    Both during her service as case manager for Mr. Harbert and since her termination, Elemary has repeatedly disclosed nonpublic information that she learned in her role as case manager for the D.C. Litigation, or through her previous work as an advisor to Mr. Harbert and related entities.  Many of these disclosures have only occurred in the last few weeks

or months, or were only discovered by Mr. Harbert and his counsel in the last few weeks or months.

38.     Mr. Harbert did not consent to the disclosure or otherwise waive his interest in the confidentiality of any of the confidential information and documents that Elemary has improperly disclosed.

39.     As a proximate result of Elemary's above-described breaches of her confidential relationship, Mr. Harbert suffered direct and consequential damages in an amount to be determined at trial.

40.     Elemary's actions were of a kind and character as to be willful, wanton, grossly negligent, or intentional, and, thus, in bad faith.  Accordingly, Mr. Harbert is entitled to both compensatory and punitive damages.

WHEREFORE, Mr. Harbert demands judgment against Elemary for compensatory damages in an amount in excess of $75,000, exclusive of interest, fees and costs (to which Mr. Harbert is also entitled), as well as mental anguish and punitive damages, and for such further and different relief as the Court deems just and proper.

## COUNT IV – BREACH OF FIDUCIARY DUTY

41.     Mr. Harbert incorporates and reasserts, as if fully set forth herein, each and every allegation in the preceding paragraphs, and further alleges that:

42.     By virtue of Elemary's role as case manager, in which she managed, coordinated, and otherwise oversaw the defense of a lawsuit against Mr. Harbert, Elemary owed a duty to provide faithful, competent, and vigorous representation of Mr. Harbert and related entities in carrying out the functions of that role.

43.     Elemary breached her fiduciary duty to Mr. Harbert by acting in contravention to his direction when she offered to settle the D.C. Litigation on terms she did not have authority to offer.

44.     Elemary further breached her fiduciary duty to Mr. Harbert by disclosing confidential information and documents that she had obtained in her role as case manager.

45.     As a proximate result of Elemary's above-described breaches of her fiduciary duty, Mr. Harbert suffered direct and consequential damages in an amount to be determined at trial.

46.     Elemary's actions were of a kind and character as to be willful, wanton, grossly negligent, or intentional, and, thus, in bad faith.  Accordingly, Mr. Harbert is entitled to both compensatory and punitive damages.

WHEREFORE, Mr. Harbert demands judgment against Elemary for compensatory damages in an amount in excess of $75,000, exclusive of interest, fees and costs (to which Mr. Harbert is also entitled), as well as mental anguish and punitive damages, and for such further and different relief as the Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT

47.     Mr. Harbert incorporates and reasserts, as if fully set forth herein, each and every allegation in the preceding paragraphs, and further alleges that:

48.     Pursuant to the September 21 Agreement, Mr. Harbert paid Elemary $30,000 per month from October 1, 2004 until her termination in April 2005.  *See* Ex. A, ¶ 6.  Elemary received a full payment for April, so in sum she received $210,000 in accordance with the September 21 Agreement.

49.     As described above, Elemary fraudulently induced Mr. Harbert to enter into the September 21 Agreement by making material misrepresentations and fraudulently suppressing material facts that she had a duty to disclose.

50.     In addition, during the time between the execution of the September 21 Agreement and the termination of Elemary's role as case manager, Elemary repeatedly disclosed confidential or privileged information and documents that were proprietary to Mr. Harbert and his entities.  She also repeatedly violated her fiduciary duty to Mr. Harbert.

51.     Because Elemary fraudulently induced Mr. Harbert to enter into the agreement that provided for her payment and then breached her most basic duties under that agreement, Elemary is unjustly enriched by her retention of the funds paid to her for her role as case manager pursuant to that agreement between October 1, 2004, and the termination of that role in April 2005.

WHEREFORE, Mr. Harbert demands judgment against Elemary for compensatory damages in an amount in the amount of $210,000, exclusive of interest, fees and costs (to which Mr. Harbert is also entitled), and for such further and different relief as the Court deems just and proper.

### COUNT VI – MALICIOUS PROSECUTION – SUCCESSIVE SUITS

52.     Mr. Harbert incorporates and reasserts, as if fully set forth herein, each and every allegation in the preceding paragraphs, and further alleges that:

53.     Elemary has brought at least four lawsuits against Mr. Harbert in the past two years.  All of these lawsuits are based on virtually identical allegations, and all arise out of the termination of her role as case manager for the D.C. Litigation.  These lawsuits are discussed in further detail in paragraphs 16-21 *supra*.

54. Elemary's first lawsuit, filed in the United States District Court for the Central District of California, was transferred to the Northern District of Alabama, at which point Elemary voluntarily dismissed that case without prejudice. Two other lawsuits have been dismissed by the Central District of California. In the present case, Elemary's original case of seven causes of action presented against seven defendants has been reduced, prior to any defendant's answering, to three claims against a single defendant. Elemary's tactic of filing and dismissing multiple unfounded lawsuits has clearly been intended to harass the defendants involved and to drive up Mr. Harbert's litigation costs.

55. Under the law of the District of Columbia, "one who twice sues another maliciously and without probable cause is responsible to him in damages." *Soffos v. Eaton*, 152 F.2d 682, 683 (D.C. Cir. 1946) (citing cases).

56. All of Elemary's lawsuits against Mr. Harbert have been filed maliciously and without probable cause.

57. As a proximate result of Elemary's above-described harassing, successive lawsuits, Mr. Harbert suffered direct and consequential damages in an amount to be determined at trial.

58. Elemary's actions were of a kind and character as to be willful, wanton, grossly negligent, or intentional, and, thus, in bad faith. Accordingly, Mr. Harbert is entitled to both compensatory and punitive damages.

WHEREFORE, Mr. Harbert demands judgment against Elemary for compensatory damages in an amount in excess of $75,000, exclusive of interest, fees and costs (to which Mr. Harbert is also entitled); mental anguish and punitive damages; his attorneys' fees and costs for the defense of all of the lawsuits discussed in paragraphs 16-21, *supra*, excluding the first filed,

to-wit: *Elemary v. Harbert*, No. CV06-4723 RGK (PJWx) (C.D. Cal. filed July 28, 2006); and

for such further and different relief as the Court deems just and proper.

Dated: February 21, 2008                    Respectfully submitted,

                                            /s/ Roger S. Goldman
                                            Roger S. Goldman
                                            (D.C. Bar No. 333294)
                                            LATHAM & WATKINS LLP
                                            555 11th Street, N.W.
                                            Suite 1000
                                            Washington, D.C. 20004
                                            Tel: (202) 637-2200
                                            Fax: (202) 637-2201
                                            Email: roger.goldman@lw.com

                                            Of Counsel:
                                            Nathaniel A. Vitan
                                            (D.C. Bar No. 477402)
                                            LATHAM & WATKINS LLP
                                            555 11th Street, N.W.
                                            Suite 1000
                                            Washington, D.C. 20004
                                            Tel: (202) 637-2200
                                            Fax: (202) 637-2201
                                            Email: nathaniel.vitan@lw.com

                                            Matthew H. Lembke
                                            BRADLEY ARANT ROSE & WHITE LLP
                                            One Federal Place
                                            1819 Fifth Avenue North
                                            Birmingham, AL 35203
                                            Tel: (205) 521-8000
                                            Fax: (205) 521-8800
                                            Email: mlembke@bradleyarant.com

                                            Attorneys for Defendant Bill L. Harbert, Sr.

**CERTIFICATE OF SERVICE**

I, Roger S. Goldman, hereby certify that on this 21st day of February, 2008, I caused a true and correct copy of the foregoing Notice of Appearance to be served, via certified mail, postage pre-paid, upon the following:

Hoda Elemary
21 Le Conte
Laguna Niguel, California 92677

/s/ Roger S. Goldman
Roger S. Goldman

# AGREEMENT

This agreement is made on September 21, 2004 by and between Bill L. Harbert and Dr. Hoda Elemary. The purpose of this agreement is to confirm the parties' relevant prior agreements on key issues and to establish a forum to transact their business and communicate more efficiently and thus be able to spend more time on resolving Mr. Bill L. Harbert's complex legal matters . The parties agree as follows:

1. Dr. Elemary had been acknowledged as the case manager and has primary responsibility over retention, oversight and management of the legal team (the "Legal Team") as well as arranging for meetings, conference calls and inviting the appropriate members of the Legal Team, the Harbert staff and U.S. Government officials that is necessary to provide the optimum results in these meetings. Dr. Elemary is also responsible for working with, influencing and negotiating a settlement with the U.S. Government on the behalf of Bill L. Harbert and to report from time to time to Bill Harbert, with respect to the current civil proceedings between Bill L. Harbert and the U.S. Government (the "Qui Tam Matter") as well as the status of the criminal fine as such Dr. Elemary retained the services of Senator Bob Dole and the leading anti-trust and qui tam lawyers in the United States to assist Mr. Harbert.

2. With respect to the criminal fine, Dr. Elemary is currently working with Mr. Harbert on the unpaid balance of said fine in the sum of approximately $22 million on the basis of "The Declaration of Bill L. Harbert Regarding Plea Agreement" dated July 17, 2003, a copy of which is attached hereto as exhibit "A" and made a part hereof (the "Declaration"). (In the Declaration, Bill L. Harbert acknowledges that he was coerced into signing a guarantee to pay any unpaid portion of the Criminal Fine due by defendant Bilhar).

3. Previous agreements executed by the parties detail that Mr. Harbert fully understood based on earlier financial concessions and payments that he made to Dr. Elemary, the Herculean task that would be required of Dr. Elemary to influence the U.S. Government to amend it's prior agreement and accept the circumstances that compelled Mr. Harbert to sign said personal guarantee, which due to Bilhar's lack of funds at this time, would require Mr. Harbert to personally pay an amount equivalent to $22 million on the Criminal Fine, in addition to the government's requested minimum amount for a settlement of $34 million in the Qui Tam Matter, for a grand total payment to the government of $56 million.

4. Mr. Harbert fully understands that if he elects to proceed to trial on the Qui Tam Matter, he could be compelled to pay over $100 million should treble damages be assessed. Mr. Harbert further acknowledges that he was not made aware when he signed the personal guarantee of the future impact of the Qui Tam Matter on his personal estate. After employing Dr. Elemary

CARLA L. FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007

City of Washington
District of Columbia

On this 21st day of September, 2004
Bill L. Harbert personally appeared before me
acknowledged that he executed the foregoing document

Guillaume Tourniaire
Notary Public, District of Columbia
My Commission Expires 01-01-2008

for two years, Mr. Bill L. Harbert engaged attorney Mr. William Sharp to evaluate the work in progress achieved by Dr. Elemary to date. Mr. Sharp traveled to California to conduct this assessment, and together with Mr. Harbert, concluded that Dr. Elemary's work and case management skills were and are extremely satisfactory and promising. Mr. Harbert, in consultation with Mr. Sharp, has agreed to reconfirm Mr. Harbert's original agreement with Dr. Elemary to allow her to bring the Qui Tam Matter and Criminal Fine matter to a satisfactory conclusion.

5. Mr. Harbert understands that it may take several months or longer to reach a satisfactory settlement with the U.S. Government. Previous agreements between Mr. Harbert and Dr. Elemary do not provide for a termination date since the parties had agreed that any such termination date would occur only upon obtaining a satisfactory resolution of the above referenced two matters. It is evident that based on earlier agreements signed by Mr. Bill L. Harbert that Dr. Elemary had every reason to depend on Mr. Harbert's written guarantee and has involved her high level government contacts to achieve satisfactory progress to date. In addition, Dr. Elemary has now consented to be directed by Mr. Harbert. Only in the event that the two above referenced matters are not resolved within the next few months, Mr. Harbert will ask Mr. Sharp to review Dr. Elemary's progress one year from the date of this agreement.

6. With respect to the termination date of this agreement, Mr. Harbert will determine the termination date of this Agreement only by entering into a settlement with the U.S. Government with respect to the above-referenced two matters based on his consent to pay the Government an amount, if any, with which he is comfortable. Until such termination of this Agreement, Mr. Harbert unconditionally and unequivocally hereby agrees and commits to pay Dr. Hoda Elemary the sum of Thirty Thousand Dollars ($30,000.00) per month, commencing either on October 1, 2004 or a mutually agreed upon date in October 2004 and continuing each month thereafter until such a time as Mr. Harbert settles the above two referenced matters with the Government.

7. Due to the fact that Dr. Elemary is often called upon to undertake a project or to travel internationally within a 24 hour notice as a result of the involvement of Senator Bob Dole and other dignitaries who assist Dr. Elemary in seeking a settlement of the two above referenced matters, Mr. Harbert personally guarantees Dr. Elemary that said monthly payments will be paid within 24 hours following presentations of a monthly invoice by Dr. Elemary to Mr. Harbert.

8. Mr. Sharp has concluded, and Bill L. Harbert agrees, that Bill L. Harbert's quitclaim deed of Mr. Harbert's interest in the single family residence located at 21 Le Conte, Laguna Niguel, California to Dr. Elemary was valid, legal and proper, and without undue influence or



_Dr. Ele._
_9/21/04_

_Confirmed_
_on 11/11/04_
_Rich Harbert_

_2of 4_          _Rich Harbert_
                  _9/21/04_

_City of Washington_
_District of Columbia_

_On this 21st day of September, 2004._
_BILL L HARBERT personally appeared before me_
_and acknowledged that he executed the foregoing document —_

CARLA D. FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007

_Carla D Faile_
_November 11, 2004_

Guillaume Tourniaire
Notary Public, District of Columbia
My Commission E...

coercion, and was Mr. Harbert's intention. Mr. Harbert therefore understands that he cannot convey his interest in said property to any other person or entity, including Mr. Harbert's son, Billy Harbert. William Sharp has reviewed the arrangement between Mr. Harbert and Dr. Elemary regarding said Le Conte property, and finds that arrangement in order.

9. Effective September 1, 2004, William Sharp is a member of the Legal Team, with responsibilities of working with Dr. Elemary to achieve the goals of Bill L. Harbert with respect to the above-referenced cases.

10. Subject to conferring with Dr. Elemary, William Sharp has the sole authority to communicate with Anne Maltin, Elizabeth Cornay, Billy Harbert, as well as Alan Hall and Jim Rein, regarding the above-referenced cases.

*INNE MOULTON*

11. Based on discussions among the parties, Anne Maltin, Elizabeth Cornay, Bill Harbert, Alan Hall and Jim Rein will communicate exclusively with William Sharp regarding the above-referenced cases.

12. For the sake of Bill L. Harbert's peace of mind, no communications regarding the above-referenced cases will be made to Bill L. Harbert, except through either William Sharp or Dr. Elemary.

13. While considerable progress has been made to date in connection to the above-referenced cases, substantial government resistance is anticipated and/or setbacks may arise. Dr. Elemary, Mr. Sharp and the legal team will use their best efforts to overcome such resistance and/or setbacks and achieve the best possible results.

14. It is understood that every effort will be made by Dr. Elemary to continue to keep the legal fees of the legal team as they are at present.

15. Payments to Dr. Hoda Elemary stipulated herein, are based on the assumption that Bill L. Harbert will take his time before he settles these cases, consistent with his concept of fairness. However, the government may very well wish, in short order, to re-negotiate the terms of it's earlier plea agreement with Mr. Harbert on the basis that Bilhar has not made the September 1, 2004 payment. Indeed, the government may consider entering into a different agreement that will not require Mr. Harbert to put out large sums of money (to settle the above referenced two matters) but rather the government may seek the assistance of the Harbert Group. In such a case, a different financial arrangement mutually acceptable by both parties to this agreement may be necessary to negotiate in the future

*Dr Ee Confirmed on 11/11/04*
*9/21/04   Bill Harbert*       *Bill Harbert*
*3of 4*                         *9/21/04*

*City of Washington*
*District of Columbia*

*On this 21st day of September,*
*Bill L. HARBERT personally app*
*and acknowledged that he executed the foregoing document.*

CARLA D FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007
*Carla D Faile*
*November 11, 2004*

Guillaume Tournaire
Notary Public, District of Columbia
My Commission Expires 01-01-2008

16. It is hereby acknowledged that the sacrifices made by Dr. Elemary and Mr. Harbert to overturn the government's current official demand of $56 million are substantial and immensely impactful on the lives of the parties. It is evident that the progress being achieved by Dr. Elemary today will not only effect Bill L. Harbert but his entire estate. To this end, Dr. Elemary is therefore unconditionally guaranteed to receive five percent (5%) – in addition to her monthly fee – of any funds she saves Mr. Harbert from ultimately paying the government in a settlement. In other words, in the event Dr. Elemary reduces Mr. Harbert's current payment plan of $22 million on the criminal fine and $34 million of the requested minimum settlement amount by the DOJ on the qui tam case, Mr. Harbert will pay Dr. Elemary five percent of any amount of reduction from either the $22 million or the $34 million amounts. If Dr. Elemary does not save Mr. Harbert any funds, Mr. Harbert is not obligated to pay Dr. Elemary the five percent.

17. William Sharp has reviewed the August 27, 2004 letter from Bill L. Harbert to Dr. Elemary, and has reported to Mr. Harbert his conclusion that he is satisfied with the progress in the above-referenced cases achieved by Dr. Elemary and the Legal Team, and has addressed Bill L. Harbert's estate and succession plans as set forth in that letter.

Dated: September 2⁄, 2004

_____
**Bill L. Harbert**

Dated: September 2⁄, 2004

_____
**Dr. Hoda Elemary**

*I confirmed this master contract agreement on 11/11/04*
*Bill Harbert*

CARLA D FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007
*Carla D Faile*
*November 11, 2004*

4 of 4

*City of Washington*
*District of Columbia*
*On this 21st day of September, 2004*
*BILL L HARBERT personally appeared before me*
*and acknowledged that he executed the foregoing document.*

Guillaume Tourniaire
Notary Public, District of Colun
My Commission Expires 01-01-2

# AGREEMENT

This Agreement is made on September 1, 2004 by and between Dr. Hoda Elemary and B.L. Harbert, as follows:

1. Dr. Elemary is the case manager and has primary responsibility over retention, oversight and management of the legal team, and to report from time to time to Bill Harbert, with respect to the current civil proceedings between B.L. Harbert and the U.S. Government, and the negotiations with respect to any possible payment of Bilhar International Establishment's criminal fine obligation by B.L. Harbert.

2. Effective September 1, 2004, Bill Sharp is a member of said legal team, with responsibilities of working with Dr. Elemary to achieve the goals of B.L. Harbert with respect to the above-referenced cases.

3. Subject to conferring with Dr. Elemary, Bill Sharp has the sole authority to communicate with Anne Moulton, Elizabeth Cornay, Billy Harbert, as well as Alan Hall and Jim Rein, regarding the above-referenced cases.

4. Based on discussions among the parties, Anne Moulton, Elizabeth Cornay, Billy Harbert, Alan Hall and Jim Rein will communicate exclusively with Bill Sharp regarding the above-referenced cases.

5. For the sake of B.L. Harbert's peace of mind, no communications regarding the above-referenced cases will be made to B.L. Harbert, except through either Bill Sharp or Dr. Elemary.

6. While considerable progress has been made to date in connection the above-referenced cases, substantial government resistance is anticipated and/or setbacks may arise. Dr. Elemary, Mr. Sharp and the legal team will use their reasonable best efforts to overcome such resistance and/or setbacks and achieve the best result possible results.

7. It is understood that every effort will be made by Dr. Elemary to continue to keep the legal fees of the legal team as they are at present.

8. Bill Sharp has reviewed the arrangement between B.L. Harbert and Dr. Elemary regarding the Laguna Niguel Property, and finds that arrangement in order. Bill Sharp has also reviewed the matters listed in the August 27, 2004 letter from B.L. Harbert to Dr. Elemary, and has concluded that he is satisfied with the progress in the above-referenced cases achieved by Dr. Elemary and said legal team, and has addressed B.L. Harbert's estate and succession plans as set forth in that letter.

Dated: September 2, 2004

_____
B.L. Harbert

Dated: September 2, 2004

_____
Dr. Hoda Elemary

APPROVED AS TO FORM:

Dated: September 2, 2004

_____
Bill Sharp, Esq.
Attorney for B.L. Harbert

Dated: September 2, 2004

_____
Joseph A. Roman, Esq.
Attorney for Dr. Hoda Elemary