## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DR. HODA ELEMARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER:  CV-07-654 |
| | ) | |
| PHILIPP HOLZMANN A.G., et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant Bill L. Harbert, Sr. ("Defendant"), the sole remaining defendant in this case, moves for summary judgment as to the claim for violation of 18 U.S.C. § 1964 (Civil RICO) asserted by Plaintiff Hoda Elemary ("Plaintiff") in Count Seven of her Complaint, on the ground that Plaintiff has knowingly and voluntarily executed and ratified a release and waiver of that claim.  In support of this motion, Defendant states the following:

1.      There is no genuine issue of material fact as to Plaintiff's release of the Civil RICO claim she asserts in Count Seven.  Accordingly, Defendant is entitled to judgment as a matter of law as to this Count.

2.      In support of this motion, Defendant relies on the Declaration of Evangeline H. Hoover, a Mutual Release and Settlement Agreement, and a brief, containing both a statement of undisputed material facts and Defendant's supporting points and authorities, filed contemporaneously herewith.

WHEREFORE, premises considered, Defendant respectfully requests that the Court grant summary judgment in favor of Defendant on Count Seven of Plaintiff's Complaint.

Dated: April 8, 2008                              Respectfully submitted,


                                           /s/ Roger S. Goldman
                                           Roger S. Goldman
(D.C. Bar No. 333294)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: roger.goldman@lw.com


Of Counsel:
Nathaniel A. Vitan
(D.C. Bar No. 477402)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: nathaniel.vitan@lw.com

Matthew H. Lembke
   (admitted *pro hac vice*)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Tel: (205) 521-8000
Fax: (205) 521-8800
Email: mlembke@bradleyarant.com

Attorneys for Defendant Bill L. Harbert, Sr.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| DR. HODA ELEMARY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NUMBER:  CV-07-654 |
| | ) | |
| PHILIPP HOLZMANN A.G., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
AND STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant Bill L. Harbert, Sr. ("Defendant") submits this brief in support of his motion for partial summary judgment as to the claim for violation of 18 U.S.C. § 1964 (Civil RICO) asserted by Plaintiff Hoda Elemary ("Plaintiff") in Count Seven of her Complaint in this case.  In support of this motion, Defendant relies on: (1) the Statement of Undisputed Material Facts set forth below; (2) the Declaration of Evangeline H. Hoover ("Hoover Declaration"), attached hereto as Exhibit A; and (3) a Mutual Release and Settlement Agreement, attached to the Hoover Declaration as Exhibit 1.

<u>STATEMENT OF UNDISPUTED MATERIAL FACTS</u>

1.      A dispute arose between Plaintiff and Defendant in or about 1994.  *See* Hoover Declaration Ex. 1 at ¶ E.  As a result of this dispute, two separate lawsuits were filed.  Plaintiff filed a lawsuit against Defendant and others in Riverside County, California, and Defendant filed a lawsuit in Jefferson County, Alabama, against Plaintiff.  *Id.*

2.      The parties were able to resolve the disputes that were the subject of the two lawsuits prior to any trial in either of those cases.  *Id.* at p. 1, ¶ F.  The Mutual Release and

Settlement Agreement attached as Exhibit 1 to the Hoover Declaration (the "Release")
memorialized the parties' agreement to resolve their claims through a mutual general release and
was signed by Defendant on October 17, 1994, and by Plaintiff on October 20, 1994. *Id.* at pp.
5-7.[1]  Exhibit 1 to the Hoover Declaration is a true and correct copy of the Release. *See* Hoover
Declaration at ¶ 5.

3.      As part of this agreement, all parties thereto, including Plaintiff, agreed to the
following provision:

> [The parties to the Release] fully and forever remise, release, and discharge each
> other … of and from any and all claims, demands, agreements, contracts,
> covenants, actions, suits, causes of action, obligations, controversies, debts, costs,
> expenses, accounts, damages, judgments, losses, and liabilities, of whatever kind
> or nature, in law, equity or otherwise, whether known or unknown, concealed or
> hidden, which … [any party] had, may have had, now have, or hereafter can,
> shall, or may have … for or by any reason of any matter, cause, or thing
> whatsoever, to and including the date of this Settlement Agreement, with respect
> to any and all claims which were, or might, or could have been asserted in
> connection with the California Lawsuit or the Alabama Lawsuit ….

Hoover Declaration Ex. 1 at pp. 2-3, ¶ 3.

4.      The Release further provided that each party had received independent legal
advice regarding "the advisability of entering into" the Release and that each party had carefully
read and understood the Release. *Id.* at p. 3, ¶ 8.  Each party specifically agreed that he or she
understood the legal effects of the "releases contained [t]herein." *Id.*

5.      In addition, the Release contained a provision in which each party acknowledged
that he or she was aware of a California statute that provided as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
> CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT
> THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM
> MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE
> DEBTOR.

---

[1] This citation refers to the fifth through seventh pages of the exhibit, notwithstanding the fact that the sixth page is
not paginated and the seventh page is labeled as page six.

*Id.* at p. 3, ¶ 4 (quoting CAL. CIV. CODE § 1542).   After acknowledging the existence of this statute, the parties agreed that they would, with the advice of counsel, waive the application of this provision and of "any and all comparable or similar statutes or principles of law of California or any other state or federal jurisdiction … [that] might be deemed applicable."  *Id.*

6.      On April 10, 2007, Plaintiff filed her Complaint in the present action against Defendant and others.  Doc. 1, Pl.'s Compl. ("Doc. 1").

7.      Count Seven of Plaintiff's Complaint asserted a claim for breach of 18 U.S.C. § 1964 (Civil RICO).  *Id.* at ¶¶ 86-104.  Plaintiff's Civil RICO claim is based on an alleged "phantom equipment-leasing scheme" that Plaintiff states was carried out from September of 1989 until December 1992. *Id.* at ¶¶ 89, 92.

## ARGUMENT

### I.      The Standard for Partial Summary Judgment

Partial summary judgment is an integral part of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 56(b) allows a district court to decide cases in the defending party's favor "at any time … as to all or any part thereof."   Additionally, Fed. R. Civ. P. 56(d) expressly addresses motions for partial summary judgment where the "case [is] not fully adjudicated on motion." "Partial summary judgment is often particularly useful in shaping litigation." *Healey v. Shalala*, 2000 WL 303439, at *8 (D. Conn. Feb. 11, 2000) (*citing* 11 J. Moore, *Federal Practice* § 56.40 (1999)).  This principle applies equally when it is an affirmative defense such as release, rather than an absence of proof by the plaintiff, that is at issue:

> Partial summary judgment on an affirmative defense is governed by the same standard which applies to summary judgment of a claim.  An affirmative defense which must be proved to defeat a claim shall be deemed established (or on cross-motion defeated) when there is no genuine dispute over the material historical

facts and under the governing law, the moving party is entitled to have the defense determined in its favor as a matter of law.

*Boston Sci. Corp. v. Cordis Corp.*, 422 F. Supp. 2d 1102, 1106-07 (N.D. Cal. 2006) (citing FED. R. CIV. P. 56(c) & (d), and *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

Partial summary judgment "shall be rendered forthwith" when "there is no genuine issue as to any material fact," and "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The fact that the parties do not agree on each and every fact is insignificant; the law requires only that "there be no genuine issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis added). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 251. Whether a fact is material is determined by the substantive law applicable to a particular case. *See id.* at 248. Although the nonmovant is entitled to justifiable inferences from the undisputed facts, she cannot merely rely upon her pleadings. Thus, if the district court concludes that no reasonable jury could find by a preponderance of the evidence that a plaintiff is entitled to a verdict, summary judgment should be granted. *See id.* at 252.

## II.   Plaintiff's Civil RICO Claim Was Waived and Released by Her Execution of the Release.

The Release operated to waive Plaintiff's claim that she now attempts to bring against Defendant in Count Seven of her Complaint. Plaintiff executed the Release before a notary public on October 20, 1994. Hoover Declaration Ex. 1 at pp. 5-6. In the Release, she "forever remis[ed], releas[ed], and discharg[ed]" any and all claims she "had [or] may have had" as of that date against the Defendant that actually were or could have been asserted against him in the two lawsuits filed in 1994. *Id.* at pp. 2-3, ¶ 3. Thus, Plaintiff waived and released any claims or

4

causes of action that she may have had at that time, regardless of whether such claims or causes

of actions were then "known or unknown." *Id.*

It is inarguable that the alleged facts that are the basis for Plaintiff's claim for Civil RICO

in Count Seven of her Complaint existed long before the Release was executed. Plaintiff alleges

that the "phantom equipment-leasing scheme" that is the basis for that claim ended in December

of 1992, more than twenty months prior to her execution of the Release on October 20, 1994.

*See* Doc. 1 at ¶ 92; Hoover Declaration Ex. 1 at p. 5. Because this factual basis existed prior to

the filing of the lawsuits that are the subject of the Release,[2] it is clear that Plaintiff's Civil RICO

claim could have been brought in one or both of those lawsuits. *See* ALA. R. CIV. P. 13(b) ("A

pleading may state as a counterclaim any claim against an opposing party not arising out of the

transaction or occurrence that is the subject matter of the opposing party's claim."); CAL. CIV.

CODE § 427.10(a) ("A plaintiff who in a complaint … alleges a cause of action against one or

more defendants may unite with such cause any other causes which he has … against any of such

defendants.") Accordingly, the Release, which released Plaintiff's claims that "could have been

asserted" in either of the lawsuits, operated to release Plaintiff's Civil RICO claim that she now

attempts to revive.[3]

It is well-established that "[a] person can validly waive his right to proceed in court if the

waiver of the right … was made knowingly and voluntarily." *See Johnson v. Wash. Gas Light

Co.*, 404 F. Supp. 2d 179, 181 n.2 (D.D.C. 2005) (citing *Anzueto v. Wash. Metro. Area Transit*

---

[2] The Alabama lawsuit was filed against Plaintiff by Defendant and others on July 21, 1994. Defendant's counsel is unsure of the actual date of the filing of the California lawsuit, but it is clear from the Release that it was filed sometime subsequent to January 1993. *See* Hoover Declaration Ex. 1 at p. 1, ¶¶ D-E.

[3] Federal and state courts have concurrent jurisdiction over Civil RICO claims. *See, e.g., Tafflin v. Levitt*, 493 U.S. 455, 460 (1990) ("[W]e hold that state courts have concurrent jurisdiction to consider civil claims arising under RICO."); *Blackburn v. Calhoun*, 2008 WL 850191, at *20 (N.D. Ala. Mar. 4, 2008) (same) (quoting *Tafflin*); *Gervase v. Superior Court*, 37 Cal. Rptr. 2d 875, 881 (Cal. Ct. App. 1995) ("[S]tate courts have concurrent jurisdiction over RICO claims.") (citing *Cianci v. Superior Court*, 710 P.2d 375 (Cal. 1985)).

*Auth.*, 1992 WL 613240, *2 (D.D.C. June 8, 1992)); *accord Rexrode v. Vinson*, 404 F.2d 830, 831 (D.C. Cir. 1968) ("A release … must be given effect according to its terms.").[4]  There can be no dispute that Plaintiff executed the Release "knowingly and voluntarily."  In so doing, Plaintiff expressly acknowledged that she had received independent legal advice regarding whether or not the Release was advisable and that she had carefully read the Release and understood its contents, specifically with regards to the legal effects of the releases provided by that agreement. Ex. B at p. 3, ¶ 8.  Considering the circumstances and this provision in particular, there is no question that Plaintiff knowingly and voluntarily released claims that she may have had against Defendant.

In addition, the parties' waiver of the California statute quoted in full in the Release was permissible and is enforceable.  As noted in the Release, California Civil Code section 1542 provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release," if the creditor's knowledge of that claim(s) would "have materially affected his settlement with the debtor."  CAL. CIV. CODE § 1542; Hoover Declaration Ex. 1 at p. 3, ¶ 4.  However, the Release then noted that the parties, with the advice of their respective counsel, waived the application of this provision and of "any and all comparable or similar statutes or principles of law of California or any other state or federal jurisdiction … [that] might be deemed applicable."  *Id.*

California courts have held that it is entirely within a settling party's discretion to waive application of section 1542.  *See, e.g.*, *Winet v. Price*, 6 Cal. Rptr. 2d 554, 558-59 (Cal. Ct. App. 1992) (discussing similar agreement in which § 1542 was acknowledged and waived and

---

[4] The Release provides that California law shall govern its terms.  While Defendant contends that this Court may look to its jurisdiction's law to consider the effect of Plaintiff's waiver, identical results are reached whether California or District of Columbia law is applied.  *See, e.g.*, *Winet v. Price*, 6 Cal. Rptr. 2d 554, 558-62 (Cal. Ct. App. 1992) (enforcing comprehensive release of claims, including unknown and unsuspected claims).

concluding that after receiving "advice of counsel concerning the language of (and the import of waiving) section 1542, [plaintiff] expressly assumed the risk of unknown claims"); *Chaganti v. Ceridian Benefits*, 2004 WL 1877733, at *3-4 (N.D. Cal. Aug. 23, 2004) (enforcing release of unknown claims where release cited § 1542 and stated that unknown claims were waived). Even if Plaintiff were to argue that she did not know of the Civil RICO claim she has brought in this case at the time she signed the Release, the issue of her knowledge *vel non* would be irrelevant. As the *Winet* decision explains, "[i]f an argument such as this were given currency, a release could never effectively encompass unknown claims. A releasor would simply argue that a release of unknown or unsuspected claims applied only to known or suspected claims, making it ineffective as to unknown or unsuspected claims." 6 Cal. Rptr. 2d at 558-59. The deliberate and acknowledged waiver of section 1542 operated to waive any claims then known or unknown to Plaintiff, and she should not be permitted to now argue to the contrary.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for violation of 18 U.S.C. § 1964 (Civil RICO) in Count Seven of her Complaint. That claim existed prior to the execution of the Release and was thereby knowingly and voluntarily waived by Plaintiff, and thus, as a matter of law, cannot now be asserted. Defendant is "entitled to have the defense [of release] determined in its favor as a matter of law," *Boston Scientific*, 422 F. Supp. 2d at 1006-07, and is thus entitled to summary judgment on Plaintiff's Civil RICO claim.

## **CONCLUSION**

For the foregoing reasons, Defendant is entitled to summary judgment as to Count Seven of Plaintiff's Complaint.

Dated: April 8, 2008                                        Respectfully submitted,


<u>/s/ Roger S. Goldman</u>
Roger S. Goldman
(D.C. Bar No. 333294)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: roger.goldman@lw.com


Of Counsel:
Nathaniel A. Vitan
(D.C. Bar No. 477402)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004
Tel: (202) 637-2200
Fax: (202) 637-2201
Email: nathaniel.vitan@lw.com

Matthew H. Lembke
   (admitted *pro hac vice*)
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203
Tel: (205) 521-8000
Fax: (205) 521-8800
Email: mlembke@bradleyarant.com

Attorneys for Defendant Bill L. Harbert, Sr.

8

## CERTIFICATE OF SERVICE

I, Roger S. Goldman, hereby certify that on this 8th day of April, 2008, I caused a true and correct copy of the foregoing Defendant's Motion for Partial Summary Judgment and Memorandum Of Points And Authorities And Statement Of Undisputed Material Facts In Support Of Defendant's Motion For Partial Summary Judgment to be served, via certified mail, postage pre-paid, upon the following:

Hoda Elemary
21 Le Conte
Laguna Niguel, California 92677

/s/ Roger S. Goldman
Roger S. Goldman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DR. HODA ELEMARY,                       )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )   CIVIL ACTION NUMBER:  CV-07-654
                                        )
PHILIPP HOLZMANN A.G., et al.,          )
                                        )
        Defendants.                     )

## DECLARATION OF EVANGELINE H. HOOVER

I, Evangeline H. Hoover, declare as follows:

1.      I am over twenty-one years of age, am of sound mind, and am competent to make this Declaration.  This Declaration is based upon my personal knowledge.

2.      I am a resident of the State of Alabama.

3.      I am Bill L. Harbert, Sr.'s executive assistant.  I have held this position for over fifty-five years.

4.      In the course of my duties as Mr. Harbert's executive assistant, I maintain the business documents and other records of Mr. Harbert.

5.      The Mutual Release and Settlement Agreement (the "Release") executed by Mr. Harbert, Claude Roberts, and Thomas R. Kitchens on October 17, 1994, and by Hoda Elemary on October 20, 1994, is kept in Mr. Harbert's business records in the normal course of business. A true and correct copy of the Release is attached hereto as Exhibit 1.

6.      I witnessed and notarized the signatures of Mr. Harbert, Mr. Roberts, and Mr. Kitchens on the Release on October 17, 1994.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 8, 2008.

_Evangeline H. Hoover_
Evangeline H. Hoover

## MUTUAL RELEASE AND SETTLEMENT AGREEMENT

The parties to this Mutual Release and Settlement Agreement ("Settlement Agreement") are Bill L. Harbert, Bill Harbert International Construction, Inc., Harbert International, and Harbert-Howard Companies (collectively "Harbert"), Claude Roberts ("Roberts") and Thomas R. Kitchens ("Kitchens"), on the one hand, and Hoda Elemary dba Elemary Consultants ("Elemary"), on the other hand.

### R E C I T A L S:

A.  During the 1970's, Harbert was awarded a construction contract by the Saudi Arabian Ministry of Agriculture and Water ("MAW") to construct a water pipeline in Saudi Arabia (the "Project").

B.  After completing the Project, Harbert submitted a claim for extra compensation to the MAW (the "Claim").

C.  In or about October, 1991, Harbert entered into an agreement with Elemary, whereby Elemary agreed to assist Harbert to recover the Claim. In return, Harbert agreed to pay Elemary a commission and various other consideration. This agreement was amended and restated numerous times thereafter. (The October 1991 agreement, and all amendments and revisions thereto, are hereinafter referred to collectively as the "First Agreement.").

D.  In or about January 1993, Harbert entered into a new agreement with Elemary (the "Second Agreement"). Pursuant to the terms of the Second Agreement, Elemary agreed to continue her efforts to recover the Claim, and Harbert agreed to pay Elemary a new specified commission rate plus various other consideration.

E.  A dispute subsequently arose between Harbert and Elemary regarding their respective duties and obligations under the First Agreement and the Second Agreement. As a result of this dispute, two separate lawsuits were filed. Elemary filed suit in Riverside County, California, Case No. 076868, against Harbert, Roberts and Kitchens (the "California Lawsuit"). Harbert filed suit in Jefferson County, Alabama, Case No. CV9405236, against Elemary (the "Alabama Lawsuit").

F.  The parties by entering into this Settlement Agreement have fully and forever resolved their disputes. The parties also desire and have agreed to dismiss their respective lawsuits against each other with prejudice and have released each other from all claims except as herein set forth.

G.    Harbert has obtained and delivered to Elemary an irrevocable letter of credit issued for the benefit of Elemary in the amount of $144,000.00, which funds Elemary shall be entitled to receive in accordance with the terms set forth below.

## A G R E E M E N T:

NOW, THEREFORE, in consideration of the mutual promises, agreements, and understandings contained herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the parties covenant and agree as follows:

1.    On the second business day after all parties have executed this Settlement Agreement, the California Lawsuit and the Alabama Lawsuit shall be dismissed with prejudice.    To accomplish these dismissals, the parties shall prepare, execute and/or file any and all necessary documents with the appropriate court or tribunal. A copy of the form of the Dismissal with Prejudice to be filed by Elemary, which form has been approved by Harbert, is attached hereto as Exhibit "A".

2.    The parties hereby waive the right to recover any costs, including attorneys' fees, incurred in connection with the Alabama lawsuit or the California Lawsuit.

3.    Elemary, on the one hand, and Harbert, Kitchens and Roberts, on the other hand, fully and forever remise, release, and discharge each other, and their present and former affiliated, parent and subsidiary corporations, companies, and divisions, and their respective present and former directors, officers, shareholders, employees, partners, members, attorneys, and agents, and their respective heirs, executors, administrators, predecessors, and successors (collectively referred to as the "Discharged Defendants"), of and from any and all claims, demands, agreements, contracts, covenants, actions, suits, causes of action, obligations, controversies, debts, costs, expenses, accounts, damages, judgments, losses, and liabilities, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, concealed or hidden, which either Elemary, on the one hand, or Harbert, Kitchens and Roberts, on the other hand, had, may have had, now have, or hereafter can, shall or may have against any of the Discharged Defendants for or by reason of any matter, cause, or thing whatsoever, to and including the date of this Settlement Agreement, with respect to any and all claims which were, or might, or could have been asserted in connection with the California Lawsuit or the Alabama Lawsuit, and with respect to any and all claims which were, or might, or could have been asserted against the Discharged Defendants as a result of (i) the construction of the Project, (ii) Elemary's efforts to recover the Claim, (iii) Harbert's efforts to recover the Claim, or (iv) any acts or omissions by either Elemary or Harbert that were in any way related

2

to the First and Second Agreements. This release shall not affect, limit, release or discharge Elemary's rights to receive any and all payments provided for in this Settlement Agreement, including but not limited to her right to receive the 32% of the balance due of the Claim on the terms described below.

4. It is expressly understood by Elemary and Harbert that California Civil Code Section 1542 provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

To the extent that the provisions of Civil Code Section 1542, as well as the provisions of any and all comparable or similar statutes or principles of law of California or any other state or federal jurisdiction, might be deemed applicable, they are hereby expressly and with the advice of counsel waived by Elemary and Harbert with the full knowledge and understanding of the consequences and effects of this waiver.

5. This Settlement Agreement shall be governed and construed according to the laws of the State of California. Any lawsuit to enforce the terms of this Settlement Agreement shall be commenced, and litigated, in the Superior Court of the State of California in the County of Orange.

6. Every provision of this Settlement Agreement is intended to be severable. In the event any term or provision hereof is declared to be illegal or invalid for any reason whatsoever by a tribunal of competent jurisdiction, such illegality or invalidity shall not affect the balance of the terms and provisions hereof, which terms and provisions shall remain binding and enforceable.

7. This Settlement Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the parties hereto, and each of them.

8. Each party hereby represents, warrants, and agrees to the other as follows:

A. Each party has received independent legal advice from its attorneys with respect to the advisability of entering into this Settlement Agreement, and

B. Each party has carefully read this Settlement Agreement and understands the contents and legal effects of each provision hereof, including the releases contained herein.

9. Harbert unconditionally and unequivocally guarantees

3

Elemary that it will consent to the payment of the irrevocable Letter of Credit which it had issued to the benefit of Elemary in the amount of One Hundred Forty-Four Thousand Dollars within the specified timeframe for such payment provided Elemary has satisfied the requirements of the Letter of Credit by providing to the bank which issued the Letter of Credit the following two documents:

A.  An original of this Settlement Agreement, with signatures by Elemary and all other parties to this Settlement Agreement, an unsigned copy of which the bank already has received from Harbert.

B.  A certified copy of the fully executed Dismissal with Prejudice filed by Elemary in the Riverside County Superior Court, State of California, case no. 076868, with a copy to Harbert.

10.  During the course of 24 months, commencing on November 1, 1994 through October 31, 1996, Hoda Elemary will arrange for 30 ministerial meetings at foreign governments.  The selection of these foreign governments would be mutually agreed to by Harbert and Elemary.

11.  Harbert hereby reconfirms it obligations to pay Elemary a fee of 32% of all additional funds (above the $6.8 Million already received) received by Harbert in settlement of the Claim.

12.  At the time the balance of the Saudi claim (the claim arising from the work performed by Harbert-Howard during the late 1970's and early 1980's in Jeddah, Saudi Arabia) is paid, Harbert will deduct the total of $144,000.00 from the fees due Elemary from the payment of the additional claim funds.  As a result, Harbert will only have a duty and obligation to pay Elemary if the amount of her commission exceeds the amount being deducted.

13.  Upon Saudi Arabia or the United States' notification that Harbert will be paid the balance due from the Saudi claim, Harbert at Elemary's written request will establish a Letter of Credit for fees due Elemary based upon the payment of the additional claim funds (beyond the $6.8 Million Harbert has received), which Letter of Credit will expire within 30 days, at which time an additional 30 day extension will apply if the check has been delayed beyond the first 30 days period.

14.  During the next 24 months there will be no other monies requested by Hoda Elemary for additional clerical and communication expenses, or for any other purposes, other than those set forth in this  Settlement  Agreement.   However,  Harbert  remains unconditionally committed to pay Elemary thirty-two percent, less $144,000.00 of all funds received from the Saudi government for settlement of the balance due of the claim, within four (4) working days after Harbert's receipt of any such claim funds.

15.  Harbert will abide by the terms of the above-referenced

4

Letter of Credit, irrespective of any political ramification, legal development, or any evolvement on the claim.

16.    Harbert will place no restrictions whatsoever on any specified location (whether it be the United States, Europe or the Middle East), where Elemary is to reside to provide her services specified above in Paragraph 10.

17.    Concerning the arrangement of 30 ministerial meetings for Harbert over the course of 24 months, Harbert agrees to limit Elemary's commitment to fulfill this task.    The parties confirm their agreement in detail concerning Paragraph 10 above as follows:

> To fully comply with Paragraph 10, Elemary will only be obligated to notify Harbert of said meetings by telephone followed by a mailgram.    Elemary assumes no responsibility once the meetings have been scheduled, nor will Elemary assume responsibility for what transpires during these meetings.    Upon scheduling the meetings as described above, no dispute, if any arises concerning these meetings, will constitute grounds for Harbert to sue Elemary.    On the other hand, Elemary recognizes Harbert's exclusive discretion of selecting and agreeing to the terms of any construction project resulting from the above-referenced meetings.    To this end, the parties to this Settlement Agreement concede that Paragraph 10 will be complied with only upon confirmation by mailgram that said meetings have been arranged.

18.    This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which taken together shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties have approved and executed this Settlement Agreement on the date set forth opposite his, her, or its respective signatures.

_____
Witness

_____
Witness

_____          10/20/94
Hoda Elemary                       Date

_____          10/7/94
Bill L. Harbert                    Date

[SIGNATURES CONTINUED ON FOLLOWING PAGE]

5

STATE OF CALIFORNIA )
                           ) SS.
COUNTY OF RIVERSIDE )

On   October 20, 1994   , before me, Dorothy R. Pasik, Notary Public,

personally appeared       Hoda Elemary
personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Dorothy R. Pasik*

```
DOROTHY R. PASIK
Comm.#995809
Notary Public-California
Riverside County
My Commission Expires
July 23, 1997
```

Title or Type of Document  Mutual Release and Settlement Agreement

Number of Pages   7     Date of Document _____

Signer(s) Other Than Named above     None



_Evangeline H. Hoover_
Witness

Bill Harbert International
Construction, Inc.

By: _Bill Harbert_          10/12/94
                            Date

Harbert-Howard Companies

_Evangeline H. Hoover_
Witness

By: _Bill Harbert_          10/19/94
                            Date

_Evangeline H. Hoover_
Witness

_Claude Roberts_          10/17/94
Claude Roberts            Date

_Evangeline H. Hoover_
Witness

_Thomas R. Kitchens_      10/17/94
Thomas R. Kitchens        Date

State of Alabama
County of Jefferson

I, the undersigned Notary Public in and for said County, in said State,
hereby certify that Bill L. Harbert, Claude Roberts and Thomas R. Kitchens,
whose names are signed to the foregoing instrument, and who are known to me,
acknowledged before me on this day that, being informed of the contents
of the instrument, they executed the same voluntarily on the day the same
bears date.

Given under my hand and official seal this 17th day of October, 1994.

_Evangeline H. Hoover_
Notary Public

My Commission Expires:  April 29, 1998

6



STATE OF CALIFORNIA )
                    ) SS.
COUNTY OF RIVERSIDE )

On ___10-21-94___ , before me, Dorothy R. Pasik, Notary Public,

personally appeared ___Hada Alemany___ ,
personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s) or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Dorothy R. Pasik_

> DOROTHY R. PASIK
> Comm. #988809
> Notary Public-California
> Riverside County
> My Commission Expires
> July 23, 1997

Title or Type of Document _Letter to Adam A. Felber_

Number of Pages ___2___    Date of Document ___10-21-94___

Signer(s) Other Than Named above _None_

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DR. HODA ELEMARY, | NO: 1:07-cv-00654-RCL |
| Plaintiff, | |
| v. | Hon. Royce C. Lamberth |
| PHILIPP HOLZMANN A.G.; WACHOVIA BANK, N.A.; B.L. HARBERT INTERNATIONAL, LLC; SABBIA AKTIENGESELLSCHAFT; HARBERT INTERNATIONAL ESTABLISHMENT, INC.; BILL L. HARBERT, SR.; AND BILLY HARBERT, JR., | |
| Defendants. | |

## <u>PROPOSED ORDER</u>

The Matter came before the Court on _____, 2007 on the Motion of

Defendant Bill L. Harbert, Sr. for Partial Summary Judgment.  The Court being fully advised in

the premises, IT IS HEREBY ORDERED that Defendant's Motion is GRANTED.

The Court hereby ORDERS that Count Seven of Plaintiff Hoda Elemary's Complaint

against Bill L. Harbert, Sr. be, and hereby is, DISMISSED WITH PREJUDICE.

ENTERED:

By the Court:

Date:_____

_____
Hon. Royce C. Lamberth
United States District Judge

cc:

Roger S. Goldman
(D.C. Bar No. 333294)
LATHAM & WATKINS LLP
555 11th Street, N.W.
Suite 1000
Washington, D.C. 20004

Matthew H. Lembke
BRADLEY ARANT ROSE & WHITE LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, AL 35203

Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677

DC\1092053.1