## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DR. HODA ELEMARY,      )
                          )
     Plaintiff,       )
       v.           )  CIVIL ACTION NUMBER:  CV-07-654 *RCL*
                          )
PHILIPP HOLZMANN A.G., et al.,  )
                          )

     Defendants.

*PAINTIFF'S  OPPOSITION TO ORDER TO SHOW CAUSE AND TO
DEFENDANT'S  MOTION FOR PARTIAL SUMMARY JUDGMENT*

### INTRODUCTION

The United States Congress legislate laws that are in turn interpreted by the Courts unless

the U.S. Constitution is at jeopardy as is the case in the instant action, at which time a

Court is required to intervene to salvage the Constitution, in particular upon request from

one of the Parties. *[Plaintiff's Memorandum of Points and Authorities and illustration of*

*disputed issues are listed on pages 7-10 of this document. However, crucial considerations*

*with respect to orders issued by The Honorable Court on procedure listed hereinbelow in*

*the "**IMPARTIALITY**" section are paramount to REVIEWING BEFORE ISSUING A*

*NON BIAS RULLING on the Partial Summary Judgment (and Plaintiff's opposition)]*

### *IMPARTIALITY*

**FIRST CONSIDERATION**: On April 8, 2008 the Honorable Court issued the following

order "On March 3, 2008, this Court ordered {36} the parties to hold a Local Rule 16.3

Conference within fifteen(15) days and to submit a joint discovery plan and scheduling

order within fourteen (14) days thereafter." The Court concluded with "ORDERED that

1

**RECEIVED**

APR **1 8** 2008

**NANCY MAYER WHITTINGTON, CLERK**
**U.S. DISTRICT COURT**

Plaintiff shall, within ten (10) days of this date, show cause in writing why her complaint should not be dismissed for failure to comply with this Court's Order of March 3, 2008."

I). PRECEDENT-Over the past thirty (30) years an overwhelming majority of U.S. Senators have endorsed and confirmed in writing ( including Senators Hatch, Specter and Leahy) that Plaintiff provides vital serves to enhance United States national interests in the Middle East. As an expert on Nuclear Terrorism in the world most troubled region, Plaintiff's success has compelled every Court in the land (that she has been in front) to rule that Plaintiff's schedule in serving Our National security takes precedent over any Court's deadline if it is not previously agreed on amongst the parties in an open Court.

II). ILL HEALTH-Plaintiff additionally, shows cause "…why her complaint should not be dismissed" because of a medical condition beyond her control. Attached hereto as Exhibit "A" and incorporated collectively herein by this reference are true and correct copies of a). Dr. Anthony Tornay's declaration of January 17. 2008 and b). letter of October 11, 2007 ( Eisenhower Medical Center's Personal physician to Presidents Ronald Reagan and Gerald R. Ford) confirming that Plaintiff has been ill ( since October 2007 and) will undergo medical procedures and recuperation for an eight week period commencing on January 28, 2008, which included the month of March, cited in the above referenced Court order and (that Plaintiff will be unaware of any legal proceedings at least for that period). In fact due to recurrence of her condition, Plaintiff could not participate in the joint discovery plan and scheduling order in particular after the Parties agreed to disagree due to opposing Counsel categorical refusal to extend their proposed date based on a reasonable offer by Plaintiff-until Plaintiff was well enough to engage in this process. Due to her fragile condition,

Plaintiff is no longer able to damage her health in heated arguments with intimidating and unreasonable individuals. A California Court ordered to vacate two prescheduled hearings upon receipt of Dr. Tornay's declaration as confirmed in c). the January 23, 2008 letter to Plaintiff.

**_SECOND CONSIDERATION:_**   In the Court's order filed on February 6, 2008, the Court demonstrated its excessive bias against public interest by depriving Plaintiff from providing key evidence to indict the same group of corporate robbers that colluded against the Untied States to rob American Tax Payers of $40 Million in the false claims case when the Court a). granted the group's silent partner, Billy Harbert and HILLC's Motion to be dismissed despite the interest expressed by the House Judiciary Committee in Billy Harbert, Jr. 's connection with and his illicit practices underhandedly employed by Billy Harbert, Jr. that are under investigation by the above referenced Congressional Committee in the false arrest matter of Alabama's former Governor and b). the Court also dismissed Plaintiff's cause of action, fraud (count five) despite the strong evidence in which Bill L. Harbert wrote and notarized the word "FRAUD" on an October 21, 2004 letter at Billy Harbert, Jr. instruction to his counsel. Attached hereto as Exhibit "B" and incorporated collectively herein by this reference are true and correct copies of Bill L. Harbert admission of the fraud perpetrated by his group on Plaintiff with a cover letter to her apologizing for said fraud. Members of Congress have concluded that it is mind boggling that this Court especially would be so manipulated by the Harbert Counsel as to stand in the way of the proper execution of the law in this matter by providing this group with a shield to protect it rather than to circumvent future crimes by this group as they laugh amongst

3

themselves congratulating each other that the Judge let them off "Scott free".

**_THIRD CONSIDERATION:_** As of the date of this filing, Plaintiff had not received the April 8 , 2008 Court order. The matter is being investigated. Plaintiff would not have responded to said order were it not for her calling ir∴inctively on April 9, 2008 and conversing with Ms. Stevens. A request is respectfully presented to the Court to intervene for safeguarding the constitutional rights of Plaintiff from opposing Counsel's unlawful and unethical fraud perpetrated on Plaintiff as well as opposing Counsel's foolish attempt to secure an unconstitutional ruling by the Court as it did in March 2008 based on their knowledge that their falsified and fabricated facts intentionally filed with the Court to mislead the Court into granting-the only way they can attain-their desired ruling, will eventually be proved invalid when Plaintiff's evidence is presented as it is herein below. Opposing Counsel knew Plaintiff posses said evidence, that categorically disproves the premise upon which the Court based its ruling earlier this year because of their deliberate misrepresentation. _**Accordingly, plaintiff urgently appeals to the Court to cease and desist from believing any filed motion by opposing counsel in the future unless and until Plaintiff can confirm or negate said filed motions with evidence rather than waist the time by ruling on the bases of their mendacity and have to vacate such rulings because of a lack of a factual foundation or for having unwittingly deprived Plaintiff again of her constitutional rights.**_ The lack of civility in litigation today compels Plaintiff to insist on a code of ethics that have earned Petitioner the overwhelming endorsements of the legislators of our laws including the seven consecutive Chairmen of the Senate judiciary Committee, to whom Plaintiff directly reports. The following evidence will establish

Plaintiff credibility in proving to the Court opposing Counsel ill intention to mislead the court into issuing an unconstitutional ruling for believing the dishonorable Harbert Counsel, who are no different than the Harbert group' robberies, not to mention Plaintiff's evidence of other bid rigging and robbery from rece⸛ jobs and innumerable contractors.

**_FOURTH CONSIDERATION:_** The opposing Counsel, who are also Counsel in the California Family Law case were notified that the Family Law Court vacated two hearing dates upon receipt of Dr. Tornay's declaration during the eight weeks that Plaintiff was declared to be medically unavailable for any legal proceeding. However Messrs. Roger S. Goldman and Matthew L. Lembke dishonestly sought to take advantage of this Court's lack of knowledge of Plaintiff's medical unavailability during those eight weeks to file a motion to get the Court to rule without Plaintiff exercising her rights to file an opposition. It is evident that Opposing Counsel succeeded in depriving the Court of being even handed by ruling on one of parties' motion without the knowledge of the other party. **Thus eliminated the Constitutional protection inherent in our legal proceedings and managed to turn this Court into a Saddam Hussein's typical Court, in which the will of the powerful is adopted by the Court. Dammed be the LAW.**

**_Request: Plaintiff respectfully requests that the Honorable Court vacates its order of March 2008 because it was based on non facts, of which the Court is now aware, and on the basis of the indisputable facts presented on page of this document._**

**_FIFTH CONSIDERATION:_** Opposing Counsel do not represent Bill L. Harbert, they represent defendant's son. The court records in the False Claims case will confirm to the Court that Roger s. Goldman declared he is Counsel for Billy Harbert.

Together their unlawful and unethical conduct in litigating this matter to date compels a non bias Court, prior to adjudicating the proposed Partial Summary Judgment on the remaining cause of action on 18 U.S.C. § 1964 (Civil RICO) should address Bill L. Harbert's true and uncoerced desire for a representation that.he free chooses the proper representation out his free will rather than for the Court to go along with his son abuse of an elderly person by imposing on Mr. Harbert counsel that he does not approve for them to represent him. Plaintiff prays the Court to take Judicial Notice of Plaintiff's Opposition to opposing Counsel Partial Summary Judgment.

Plaintiff respectfully requests this Court in particular to take judicial Notice of the distinction between Defendant Bill L. Harbert and his counsel on the one hand and Billy Harbert, Jr. and his counsel on the other hand.

***SIXTH CONSIDERATION: EVIDNECE***- It is evident that a litigant not only has the inherent right but an obligation to determine the true clients and identities of alleged counsel to a Defendant prior to engaging in a procedings that may prove to be unlawful because Defendant notified Plaintiff to ignore said Counsel, whom he disavows as his representative. This is the fact in the instant case, Defendant notified Plaintiff to ignore Messrs. Roger S. Goldman and Matthew L. Lembke This issue will be resolved upon the Court's review of the transcripts and their corresponding legally recorded telephonic conversations.

Attached hereto as Exhibit "C" and incorporated collectively herein by this reference are true and correct copies of the transcripts and their corresponding legally recorded telephonic conversations, in which Defendant declares his unambiguous and clear

6

position on the above referenced attorneys in his own voice during recent conversations Defendant had with Plaintiff. However that notwithstanding, out of special respect for this Court and in the interest of brevity Plaintiff will proceed herein in a). respond to the Partial Summary Judgment and b). to present the only feasible schedule of the proceeding in the instant case based on the United States dictated travel Schedule to the Middle East for Plaintiff.

## MEMORANDUM OF POINTS AND AUTHORITIES AND STATEMENT OF DISPUTED FACTS IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Dr. Hoda Elemary ("Plaintiff") submits this brief in opposition to the motion for partial summary judgment (the "Motion") as to the claim for violation of 18 U.S.C. § 1964 (Civil RICO) asserted by Plaintiff in Count Seven of her Complaint in this case. In opposition to the Motion, Plaintiff relies on: (1) the Statement of Disputed Material Facts set forth below and (2) the Declaration of Dr. Hoda Elemary ("Elemary Declaration").

## STATEMENT OF DISPUTED MATERIAL FACTS

1. The activities of Plaintiff to recover the Claim on behalf of Harbert which were the subject matter of the First Agreement and the Second Agreement, as each of those terms are defined in the Mutual Release and Settlement Agreement in turn defined as the "Release" in ¶ 2 of the Statement of Undisputed Material Facts provided in the Motion, were in fact negotiated by Harbert for the purpose of concealing from Plaintiff Harbert's complicity in the bid-rigging operation, bribery and phantom equipment-leasing scheme (hereinafter, the "Bid-

RiggingScheme") described in Paragraphs 87 – 92 of the Complaint.  Elemary Declaration,

2. The parties' intent in entering into the Release was solely to resolve all disputes relating to the California and Alabama Lawsuits, as those terms are defined in the Release.  *Id.*, ¶ x.

3.      In the negotiations leading up to the execution and delivery of the Release, there was no discussion of extending the scope of the Release to disputes other than those embodied in the California Lawsuit and the Alabama Lawsuit.  *Id.*, ¶ y.

4.      Plaintiff did not intend that the Release cover disputes other than those embodied in the California Lawsuit and the Alabama Lawsuit.  *Id.*, ¶ z.

5.      Plaintiff did not suffer any of the damages alleged in Paragraph 104 of the Complaint until 2004 at the earliest, when the complicity of Defendant in the Bid-Rigging Scheme became generally known to the international community.  Id., ¶ u.

## ARGUMENT

I.      **A Triable Issue of Material Fact Exists as to the Scope of the Release.**

The linchpin of Defendant's argument in the Motion is that the language of the Release, as supplemented by the purported waiver of California Civil Code § 1542, operates to extend the scope of the waiver to the Bid-Rigging Scheme as a matter of law.  Motion, at 3 – 7. However, California law, recited by the Release as governing the interpretation of its terms (*see, id.*, at 6 n. 4), is not so mechanical. In California, extrinsic evidence is admissible to establish the intent of the parties to a contract. *Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co.*, 69 Cal.2d 33, 38–40, 69 Cal.Rptr. 561, 564–65 (1968).  In particular, extrinsic evidence is admissible to establish the scope of a release (*Jefferson v. Department of Youth Authority*, 28 Cal.4[th] 299, 309, 121 Cal.Rptr.2d 391, 399 (2002)), which is

deemed to be a triable issue of fact (*Butler v. Von's Companies, Inc.*, 140 Cal.App.4[th] 943,

950, 45 Cal.Rptr.3d 151, 156 (2006)("[T]he scope of a waiver of unknown claims is a

question of fact . . ."); *Mitchell v. Union Central Life Ins. Co.*, 118 Cal.App.4[th] 1331, 1342,

13 Cal.Rptr.3d 732, 740 (2004)). In this connection, the presence in a release of a specific

waiver of the provisions of California Civil Code section 1542 is not controlling, and

whether the releasor intended to discharge a given unknown claim is likewise a question of

fact. *Leaf v. City of San Mateo*, 104 Cal.App.3d 398, 411, 163 Cal.Rptr. 711, 718

(1980)("[M]ere recital, as in the release signed by plaintiffs, that the protection of Civil

Code section 1542 is waived, or that the release covers unknown claims . . . is not

controlling. Whether the releaser intended to discharge such claims . . . is ultimately a

question of fact. [Citations.]"); *Grebe v. McDaniel*, 265 Cal.App.2d 901, 903, 71 Cal.Rptr.

662, 663 (1968).

Turning to the Release itself, the operative provision is Paragraph 4, which carefully describes the claims which are the subject of the Release as those "which were, or might, or could have been asserted in the California Lawsuit or the Alabama Lawsuit" as well as those "which were, or might, or could have been asserted against the Discharged Defendants as a result of" a series of specified activities relating to the Project (as defined in the Release), the Claim (as defined in the Release), the First Agreement and the Second Agreement. Hoover Declaration, Ex. 1. In the Elemary Declaration, Plaintiff avers that she personally executed the Release solely with the intent of resolving the California Lawsuit and the Alabama Lawsuit (Elemary Declaration, ¶ z; that there was no discussion of the Release having a broader scope (*id.*, ¶ y); and that the parties only intended the Release to cover matters related to the California Lawsuit and the Alabama Lawsuit (*id.*, ¶ x). In fact, Plaintiff maintains, as she also alleges in the Complaint (see, Complaint, Incorporated Schedule, ¶ II), the very reason Defendant engaged Plaintiff to pursue the Claim was to keep her out of Egypt so that the Bid-Rigging Scheme could be carried out without her knowledge. Elemary Declaration, ¶ w. Under these facts and the California authorities cited above, a triable issue of material fact exists as to whether the scope of the Release extends to the Bid-Rigging Scheme as it affected Plaintiff.

II.     **Even Under the Interpretation Urged by Defendant, Plaintiff's RICO
        Claim Lies Outside the Scope of the Release.**

9

As a second and independent ground on which the Motion should be denied, even if Plaintiff's Count Seven would otherwise fall within the scope of the Release, it does not actually lie within that scope because it fails to satisfy the language cited by Defendant in the Motion. Defendant argues, "[b]ecause this factual basis [*i.e.*, the conduct by Harbert of the Bid-Rigging Scheme] existed prior to the filing of the lawsuits that are the subject of the Release, it is clear that Plaintiff's Civil RICO claim could have been brought in one or both of those lawsuits." Motion, at 5. That, however is not correct, because the damages alleged by Plaintiff in Paragraph 104 of the Complaint were not suffered by Plaintiff until 2004 at the earliest, long after the Release – let alone the California Lawsuit or the Alabama Lawsuit – had come and gone. Elemary Declaration, ¶ u. As the United States Supreme Court has itself recognized that a civil RICO claim does not accrue until the plaintiff suffers damages (see, *Agency Holding Corp. v. Malley-Duff Associates*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987)), Plaintiff's civil RICO claim could not have been "asserted" in either California or Alabama Lawsuit.Even under the Motion's construction of the scope of the Release, Plaintiff's Count Seven is not included within it.

## CONCLUSION

To avoid ruling on the bases of the Opposing Counsel's fabricated facts again as the Court did on the fraud count [Exhibit "B"], the Court must not take in vain the purpose of  18 U.S.C. § 1964 (Civil RICO) and the charges of violence on Congressman Earl Hilliard and Plaintiff by Defendant's son while he was daily harassing the Congressman's daughter in law. Attached hereto as Exhibit "D" and incorporated collectively herein by this reference are true and correct copies of partial evidence on the violence. For the foregoing reasons, the Complaint should not be dismissed and Defendant is not entitled to summary judgment as to Count Seven of the Complaint, and the Motion should be denied.

Dated: April 10, 2008                                                          Respectfully submitted,

Dr. Hoda Elemary
21 Le Conte Laguna Niguel, CA 92677
Tel: (949) 499-1010
Fax: (949) 499-4141
10

PROOF OF SERVICE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my address is 467 South Arnaz Drive, Suite 319, Los Angeles, California 90048.

**On April 18, 2008**, I served the foregoing document Entitled " Opposition to order to show cause and to Defendant Motion for Partial summary judgment" on interested parties in this action by placing true copies thereof enclosed in (a) sealed envelope (s) addressed as follows:

> Matthew H. Lembke
> BRADLEY ARANT ROSE &
> WHITE LLP One Federal Place
> 1819 Fifth Avenue North
> Birmingham, AL 35203

> Roger S. Goldman
> Latham & Watkins LLP
> 555 11th street, N.W.
> Suite 1000
> Washington, D.C. 20004

I deposited this envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

I declare under penalty of perjury under the laws of the United States of America that the forgoing is true and correct.

April 18, 2008

BRIAN J. JACOBS
Type or Print Name    Signature

1. I, Anthony S. Tornay, Jr., M. D. am a Gastroenterologist practicing at
EISENHOWER MEDICAL CENTER.

2. This declaration is in regards to our Patient Hoda Elemary, whose health
condition has worsened due to liver problems and it is of concern that any further
delay of her undergoing medical procedures and tests over the next eight weeks
could result in serious complications. Presently she is too sick to actively
participate in any trial.

3. Provided her flue symptoms subside, Hoda Elemary is scheduled to commence
her medical procedures and tests at the end of January, 2008. She suffers from
Gastrointestinal bleeding. She had repeatedly undergone upper enoscopy with
esophageal variceal banding. On July 4, 2001 I first operated on her. The Patient
was admitted to the Hospital with a massive hemorrhage, turned out to have
esophageal variceas. Diagnostic studies confirmed severe liver disease and Portal
hypertension.

I declare under penalty of perjury under the laws of the State of
California that the forgoing is true and correct.

Executed on January 17, 2008 in Rancho Mirage, California .

Anthony Tornay M.D.

FAX NO. : 7607764282                                    Oct. 16 2007 11:01AM   P1

ANTHONY TORNAY M.D.
39000 BOB HOPE DRIVE
STE P203
RANCHO MIRAGE, CA 92270
(760)776-4280
FAX (760)776-4282

October 11, 2007

To Whom It May Concern:

This letter is in regards to our patient Hoda Elemary. Over the last year Ms. Elemary's health condition has worsened due to liver problems and it is of concern that she not drive great distances where it becomes an issue of public safety. Presently she is driving to Santa Monica where there is no Metro available. It would be in her best interest if she would limit her driving and be able to take the Metro to the downtown area to conduct her affairs.

Sincerely,

Anthony Tornay M.D.

**HARRIS · GINSBERG LLP**

A T T O R N E Y S  A T  L A W

6500 WILSHIRE BOULEVARD

SUITE 1870

LOS ANGELES, CALIFORNIA 90048

TELEPHONE (310) 444-6333 · (323) 782-8999

FACSIMILE (310) 444-6330

SUZANNE HARRIS *†
LARRY A. GINSBERG*
ANDREA FUGATE BALIAN
FAHI TAKESH

PAMELA SOMERS
SOO J. KIM
JOHNNA K. BOYLAN
CHRISTINE V. TWINING
JULIO R. BARDAVID
DENA J. KRAVITZ

* CERTIFIED SPECIALIST · FAMILY LAW
THE STATE BAR OF CALIFORNIA BOARD
OF LEGAL SPECIALIZATION

† FELLOW · AMERICAN ACADEMY OF
MATRIMONIAL LAWYERS

January 23, 2008

**VIA FACSIMILE AND U.S. MAIL**

Dr. Hoda Elemary
21 Le Conte
Laguna Niguel, CA 92677

      Re:  **Elemary/Harbert**

Dear Hoda:

      This is to advise you that after you hung up the telephone in connection with the Court hearing today, the Court ordered the January 30 and 31, 2008 trial dates vacated.

                Very truly yours,

                HARRIS · GINSBERG LLP

                *Fahi Takesh*

                Fahi Takesh

FT:mv

cc:  Mr. Bill L. Harbert
      Larry A. Ginsberg, Esq.

# BILL
# HARBERT

November 10, 2004

Dr. Hoda Elemary
21 LeConte
Laguna Niguel, CA 92677

Dear Hoda:

I am writing to reaffirm my guarantee of several agreements between us that were detailed in the notarized confirmation document "Master Agreement" dated September 21, 2004. You may disregard William Sharp's correspondence including his September 27, 2004 letter to you that attempted to void said confirmation.

I would like you to know that I did not sign nor authorize that my name be signed on my behalf the October 5 and October 21, 2004 letters sent to you by Mr. Sharp under the pretense that I signed and authorized these letters be sent to you.

With Kind Regards

Sincerely,

Bill L. Harbert

CARLA D. FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007

November 11, 2004

Bill L. Harbert
P.O. Box 531390
Birmingham, AL  35253
205-802-2810
Fax:  205-802-2815

October 21, 2004

Confidential

<u>Via Hand Delivery</u>

Dr. Hoda Elemary
World Peace Today, Inc.
2252 South Caliente Road
Palm Springs, CA 92264

Dear Hoda:

*I did not write this letter not authorize anyone to sign it on my behalf.*

*[signature]*

This letter updates and supersedes my October 5, 2004 letter to you.  As you know, at the end of September I made the decision to move the case manager job for the qui tam and declaratory judgment matters over to Bill Sharp.  Therefore, Bill has management authority over the qui tam and declaratory judgment matters.

In order for Bill to do his job, you are not to take any action without first clearing it with him.  Furthermore, all communications to me, Van Hoover or other members of my business team or family shall be through Bill Sharp.

Once again I have directed Bill Sharp to make clear to the legal team that he is serving as case manager.  I also have directed Bill to make clear to the legal team that there should be no further contact regarding the declaratory judgment proceeding with the Department of Justice, any judicial authorities or their clerks, or any other parties outside the legal team by you or anyone else without Bill's prior review and authorization.  I have also asked Bill to review and authorize all legal and consulting fees.  I will not be responsible for fees and costs unless Bill reviews these in advance of the services being rendered for them.

I have asked Bill Sharp to make it clear to the Department of Justice attorneys and others involved in this case that Bill has the sole authority to make settlement offers or other commitments (whether as to substantive matters, procedural matters or otherwise).  I have already asked Bill to appoint and oversee my local counsel in Birmingham as well as to determine when and who shall be involved in various upcoming conference

CARLA D. FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007

Dr. Hoda Elemary
October 21, 2004
Page 2

<u>Confidential</u>

calls, hearings and meetings regarding the declaratory judgment proceeding.

I would still ask that you or your counsel discuss your continuing role in the qui tam matter with Bill Sharp. Again, you are not to take any action without first clearing it with Bill. Thank you for your continued cooperation.

Yours very truly,

*Bill Harbert*

Bill L. Harbert

cc:  Legal Team

BLH:vh

*I did not write this letter nor authorize anyone to sign on my behalf - Forgery*

*Bill Harbert*

CARLA D. FAILE
Notary Public, Jefferson County, Alabama
My Commission Expires March 21, 2007

*Carla W Faile*
*November 11, 2004*

# [ubiqus]

# MR. BILL L. HARBERT
# & DR. HODA ELEMARY

## Audio Transcription
## Track 2

## Telephone conversation frolabeled -
## "Bill 5-16-07"m an audiocassette tape

22 Cortlandt Street, Suite 802, New York, NY 10007
Tel : 212-227-7440 - Fax : 212-227-7524 - EIN# 13-2791733

# [ubiqus]

# Transcription
# Translation
# Interpretation



Ubiqus provides a full range of transcription, translation and interpretation services. Our core values match your needs: timeliness, accuracy and a relentless attention to detail.

Ubiqus has more than 10,000 clients around the world and has been in business for 15 years.

Our clients include corporations, meeting planners, government agencies, hospitals and law firms. We offer our services nationwide, with offices in New York and Northern and Southern California. We can also work with you on your European projects, thanks to our presence in London and Paris.

w w w . u b i q u s . c o m

AUDIO TRANSCRIPTION

[START TRACK 2]

BILL L. HARBERT:  Hello.

DR. HODA ELEMARY:  Hello darling, how are you?

MR. HARBERT:  Fine.

DR. ELEMARY:  Bill, this is Hoda.  Can you hear me well?

MR. HARBERT:  Yeah, I can hear you.

DR. ELEMARY:  I mean, of course, you know, who I am but I haven't spoken to you for a couple of days.  Have you had much thought with respect to this terrible $88 million verdict that came out in Washington on the false claims case?

MR. HARBERT:  No I haven't. I know about it, but I haven't thought about it.

DR. ELEMARY:  You know about it, yes, we talked; I think we talked; actually we talked Monday after it came out.  You know, I've heard that you're not getting all your information and you really should get your letters and stuff like that.  I mean they should not, you know, just isolate you or just, monitor your letters

AUDIO TRANSCRIPTION

1

2    and stuff like that.  They should let things

3    come through to you.

4        MR. HARBERT:  As far as I know.

5        DR. ELEMARY:  What, I can't hear you baby.

6        MR. HARBERT:  I do as far as I know.

7        DR. ELEMARY:  Well there are some things

8    they kind of take their time and they kind of

9    edit it a little bit.  And, you know, I've

10   always felt that that's not a fair way to treat

11   anybody.  I mean if it's addressed to Bill L.

12   Harbert, you should really get that stuff, so.

13       But darling I wanted to tell you I've been

14   bombarded by **Roger (Goldman)** and all these

15   people, they're going on about how upset you are

16   and so on.  And I know that's not true, you

17   know, but you're not in any way upset because

18   you have, I mean, we'll find some solution to

19   that $88 million.  I mean as it is the companies

20   are bankrupt and so on.  Are you feeling okay?

21       MR. HARBERT:  Oh yes. [Inaudible].

22       DR. ELEMARY:  Well you should but you

23   shouldn't over worry about it, that's the key

24   here.  **They are pushing a lot of stuff Bill and**

25   **the writing on your behalf and so on and so**

AUDIO TRANSCRIPTION

*forth, they are making a, all kinds of stuff*

*that you instructed them that you did not want*

*to hear from me, which, you know, I don't know.*

*Is that true?*

    *MR. HARBERT:  No.  [Inaudible]*

    *DR. ELEMARY:  I can't hear you.*

    *MR. HARBERT:  That's not true.*

    DR. ELEMARY:  Well okay, then, you know, I

mean what we going to do about them?  I mean

between Bradley Arant and Roger, and that Levine

is really, you know, he lost everything.  I mean

he just—everything he ever said never happened.

Brian Lavine [phonetic].

    MR. HARBERT:  Yes, I know.

    DR. ELEMARY:  I mean is he—are you guys

happy with him or are you kind of fed up with

his?

    MR. HARBERT:  I just don't worry about it.

    DR. ELEMARY:  (Laugh) Well I like your

attitude Bill.  I've been very concerned about

Homer.  Has he been in touch with you?

    MR. HARBERT:  Homer [inaudible]?

    DR. ELEMARY:  Yes.

    MR. HARBERT:  No [inaudible].

AUDIO TRANSCRIPTION                Page 6 of 5

2      DR. ELEMARY:  Because I've put a call to

3    him, it's a concern of mine that he needs to

4    kind of deal with that issue that came up and,

5    you know, I don't know, what his disposition is.

6    But he's not getting along with Billy and that

7    doesn't help things.

8      So I don't know.  I've been talking to a

9    couple of people in the company and they are not

10    too happy with the verdict but, you know, that's

11    to be expected.

12      Did you hear what happened to Tommy?

13      MR. HARBERT:  Tommy who?

14      DR. ELEMARY:  Kitchens.

15      MR. HARBERT:  No.

16      DR. ELEMARY:  He came in to testify but they

17    won't let him testify.  I mean, you know, during

18    the trial.  The trial is over, of course.  But

19    they won't let him testify, which is, you know,

20    may be to your benefit that that happened.  But

21    it's neither here nor there Bill.

22      I am a little concerned about when you feel

23    that it's necessary to put an end to Levine

24    because he cannot continue to charge you money

25    when he delivered, you know, such a bad result.

1

2    I mean, you know, we've got to be honest Bill.

3        And I did have some attempt in communicating

4    with—and I let it be known, the issue regarding

5    Raymond (Harbert).  You remember when Raymond

6    went on the stand, the witness stand and he said

7    "my uncle stole the business from me and so on

8    and construction business and, you know, he and

9    Tommy Kitchens cheated me and all that stuff".

10   I talked to you about it on Monday.

11       MR. HARBERT:  Yes.

12       DR. ELEMARY:  Yes.  And I have been, you

13   know, making it very clear that, you know, this

14   kind of nonsense has got to stop.  I mean I

15   don't know what his purpose of is.  We've never

16   exposed each other publicly, you know.  Let's

17   hope we keep it that way.  I mean, you know,

18   it's sad that he is doing this.  Don't you

19   agree?  I mean it's.

20       MR. HARBERT:  I agree with you.

21       DR. ELEMARY:  There's a lot of issues that

22   are very unsettled because of that verdict.  And

23   a lot of, people are—some are writing, you know,

24   running to hide for cover.  Some are, you know,

25   riding a high horse, et cetera, et cetera, you

1

2    know. And we've got to deal with this

3    realistically and I just wish Bill that you kind

4    of monitor whatever it is that Billy is doing.

5    Because, you know, Billy can get a little wild

6    once in a while. So, you know, is Van

7    [phonetic] keeping an eye on things?

8         MR. HARBERT: I think so.

9         *DR. ELEMARY: Well I don't know. I'm also*

10    *wondering Bill if I should just ignore those*

11    *people that are saying, I should … you know,*

12    *that you instructed them, that you don't want to*

13    *hear from me and all that. And that, you know,*

14    *they write me that you have a severe case of*

15    *dementia and, you know, you should not be*

16    *contacted. I mean, you know, like they are*

17    *making you look like a classic, you know.*

18         MR. HARBERT: [Inaudible].

19         DR. ELEMARY: What? I can't hear you.

20         *MR. HARBERT: Don't pay any attention. I*

21    *don't know anything about that.*

22         *DR. ELEMARY: Yes, they are creepy. I mean*

23    *they are getting into, you know, the issues of*

24    *our relationship and all of that and I just*

25    *don't think they should do that, do you?*

AUDIO TRANSCRIPTION                    8

MR. HARBERT:  No not at all.

*DR. ELEMARY:  I mean I just, you know, Bill for 15 years we kept our thing very private and sacred and, we have to just go ahead and have attorneys, you know, just, going nuts on me over nothing.*  I mean I think maybe Billy is instructing them.  Do you think so?

MR. HARBERT:  [Inaudible]

DR. ELEMARY:  Huh?

MR. HARBERT:  I don't really know.

*DR. ELEMARY:  Yes, it is upsetting.  I am, I mean Bill do you want me to kind of just divorce you … and I mean is that what you want?  You want me to just leave you alone?*

*MR. HARBERT:  No not at all*

*DR. ELEMARY:  You know, Bill, I mean we've had quite, I mean you and I were a striking couple when we were together.*  We just took on *the House of Saud.  We've done this, we kind of— did you get my card?  I'm back in the States now but I was—in fact, you won't believe where I am. I'm in Mobile, Alabama.  I'm going from Florida to a place called Tunica, Mississippi, your birth state.  Maybe if I run into Indianola*

[phonetic] I'll, you know.

MR. HARBERT:   [Laughs]

DR. ELEMARY:   I'll stop and say a prayer, you know.  Because I just think you need strength and you'll be just fine.  I just think a lot of people are just like, oh "Bill is this and Bill is that".  I don't think there is anything wrong with you.  And, you know, I've always felt that and, you know, I mean, I just, you know, you have been a wonderful, wonderful person.  You by yourself, I mean.  People around you are something else but you are just a top-drawer person and I just won't let these people— don't listen to them Bill.

MR. HARBERT:   No.

DR. ELEMARY:   You don't do you?

MR. HARBERT:   No.

DR. ELEMARY:   Good for you.  I mean it just— it's such a short time that we have had since, you know, we have—you were in control of everything and now I guess Billy is in control and I don't like it and you know that.  But, you know, I don't think he's really in control.  I just think he's doing his thing and if he can

2    *just stop interfering with us, things will be*

3    *fine but that's becoming impossible.*

4         *I mean he's a—you know, I was asked by his*

5    *people, you know, they wanted to know about, the*

6    *marriage we had in Egypt and stuff.  And, you*

7    *know, I wouldn't deal with them, you know.  I*

8    *mean I'm not interested.  Do you think I should*

9    *deal with Billy's people when they ask me*

10   *personal questions?*

11        *MR. HARBERT:  No not at all.  Don't say*

12   *anything.*

13        *DR. ELEMARY:  Well it's over 15 years and I*

14   *kept this whole marriage thing secret but, you*

15   *know, and that's how long you asked me to keep*

16   *it secret.  But Bill I'm not happy with the way*

17   *these attorneys are writing me, you know.  Mr.*

18   *Harbert doesn't want you to contact* him and all

19   of that and he's incapable of this and that and

20   he has this.

21        And, you know, I think that's all wrong.

22   And I think you should just tell them to—well

23   I'm not going to tell you what to do but anyway

24   let me work some more on Raymond to get him

25   around and, you know.  I mean that—he shouldn't

2    take the stand and fight you.

3        MR. HARBERT:  Okay.

4        *DR. ELEMARY:  You know, you remember the*

5    *good times we had Bill?*

6        *MR. HARBERT:  Oh yes.*

7        *DR. ELEMARY:  You remember Geneva and Paris*

8    *and…*

9        *MR. HARBERT:  Ya.*

10       *DR. ELEMARY:  You remember our union in*

11   *Egypt?*

12       *MR. HARBERT:  Yes.*

13       DR. ELEMARY:  Well you should really—you

14   want to go traveling to Europe?  I would love—

15   you want to go?

16       MR. HARBERT:  No I'm not traveling at all.

17   I quit that.

18       DR. ELEMARY:  You quit traveling?  Okay.

19   Well you take care of yourself Bill.  But I'm

20   mighty unhappy with these lawyers writing me all

21   that stuff.  But I'll try—would you like me to

22   send you what they write me or you don't want to

23   get upset with it?

24       MR. HARBERT:  [Inaudible]

25       DR. ELEMARY:  Okay.  I'll handle it.

AUDIO TRANSCRIPTION    12

2          MR. HARBERT:   Okay.

3          DR. ELEMARY:   All right darling.

4          MR. HARBERT:   Okay.

5          DR. ELEMARY:   Bye.

6          MR. HARBERT:   Bye.

7          [END TRACK 2]

C E R T I F I C A T E

I, Matt Williams, certify that the foregoing transcript of

Dr. Hoda Elemary was prepared using standard electronic

transcription equipment and is a true and accurate record.


Signature _____

Date _____ 6-19-07 _____

# HILLIARD, SMITH & HUNT, LLC.

### ATTORNEYS and COUNSELORS
228 19th Street North
P.O. Box 12445
Birmingham, Alabama 35202-2445
(205) 326-8844
(205) 326-8898 fax

Earl F. Hilliard, Jr. *
Alexis L. Hilliard-Smith

Janice Hunt-Hilliard
Earl F. Hilliard**

March 8, 2005

Judge John M. Facciola
United States District Court
For The District of Columbia
Washington, D.C. 20001

RE:  United States of America, ex rel Richard F. Miller v. Phillip Holzman AG, et al.
     Case No.:  195CV01231 WBB

Your Honor,

As attorney of record for Bill L. Harbert, I am writing to appeal to the Court to consent to mediate the difference between the government and Bill L. Harbert, Sr.  While I was physically able to negotiate with the government, significant progress had been made to date in reducing the number of issues that are still outstanding.

Regrettably, I had a near fatal accident on March 2, 2005, and am writing you from the ICU of the University of Alabama Hospital at Birmingham.  My physicians have indicated to me that it will be as least several weeks before I am able to personally participate in negotiations through electronic communications, and six months to a year before I will be able to walk again.  Accordingly, I am requesting on behalf of Bill L. Harbert, Sr, that the Court remove our appearance on April 5, 2005 from its calendar and commence immediate mediation with the parties in early May 2005.

Thank you for your serious consideration of my request.  I have enclosed the police and medical reports related to my accident for your information.

Sincerely,

*Earl F. Hilliard*

Earl F. Hilliard
Of Counsel

EFH/jeh
enclosures (2)

---

* Admitted to practice in Georgia and Washington, D.C.
** Of Counsel



Newport Orthopedic Institute
PO Box 2597
Newport Beach, CA
92659
Phone:(949) 722- 7038 Ext.3604
Fax: (949) 630- 4935

# NEWPORT
## ORTHOPEDIC INSTITUTE

Elemary, Hoda A.
132335
06/28/2006

Hoda is a young lady I saw over a year ago. She had an injury when she was accosted at home and was pushed down and had a minimally displaced scapular fracture. I have not seen her in over a year. She presently states she has a therapist coming 3 times a week to her home, and she swims. She complains of a radicular pain in her shoulder, sort of in her axilla area, and running down her arms with certain motions. It comes and goes. She says when she does a back stroke in swimming, it bothers her.

**PHYSICAL EXAMINATION:** Her range of motion is not 100% but almost 90% of normal. She is just worried and wondering when this pain in her arm will get better.

**RADIOGRAPHIC EXAMINATION:** No x-rays were taken today.

**TREATMENT PLAN:** I feel probably her scapular fracture has healed, and the complaints she states are secondary to the trauma she had. At this time, no formal workup was done including neurological evaluation or MRI, which I am not sure would be beneficial at this time, but these symptoms began at the time of her injury and have not gone away.

Alexander H. Tischler, MD

AHT:pb/lm

1. COPIES TO:
*Laguna Niguel*

**SHERIFF'S DEPARTMENT**
**ORANGE COUNTY**
**SANTA ANA, CALIFORNIA**

2. CASE NO. 05-051073

MICHAEL S. CARONA, SHERIFF-CORONER

REPORT CONTINUATION

I asked Elemary to explain and she told me the following: Elemary is a Lobbyist in the U.S. Congress and she is affiliated with the World Peace Group out of Palm Springs. Billy Harbert Sr. of B.L. Harbert International LLC Group a large construction company out of Birmingham Alabama has retained Elemary as a Lobbyist. Elemary has been involved with various government committees, several U.S. Senators and the Department of Justice regarding bid rigging for federal contracts in the construction industry. Elemary and her partner Earl Hilliard assisted the DOJ committee and worked with Criminal Prosecutor Bill Dillon (404-331-7115) in a matter that ruled against B.L. Harbert International for bid rigging. Elemary is also in the process filing a civil suit against B.L. Harbert International and particularly B.L. Harbert Jr. for breach of contract.

Elemary is currently working with attorney Carolyn Mark (202-307-0256) of the Department of Justice in a civil case against B.L. Harbert International. Elemary is greatly concerned about the threatening phone call because of prior incident regarding a threat over the phone that occurred on 11-4-04 (See DR04-022613 for CPC 653M.) Also on 3-2-05, Elemary's partner Hilliard was recently involved in a suspicious car accident, with a piece of heavy construction equipment vehicle that occurred suspiciously in the middle of the night. Hilliard's injuries are so severe that he will not be able to walk for 6- 12 months. Elemary handed me numerous letters from various individuals to support what she was saying (See attached). Sgt. B. Lumm was advised of the situation.

I talked to Department of Justice Attorney Carolyn Mark on the phone later that day. Carolyn Mark confirmed what Elemary had said about working with D.O.J. and she told me that Elemary was a credible individual. Mark told me that Elemary was involved in the Criminal case against B.L Harbert International and she dealt with DOJ Prosecutor Bill Dillon. Sgt. Lumm was advised.

I asked Elemary if she had an idea who may try to harm her. Elemary felt that anyone affiliated with B.L Harbert International or his or her associates are possible but she isn't sure.

| 33. INVESTIGATING OFFICERS | REPORT BY<br>Dep. E. Hutchinson #463 | DATE OF REPORT<br>3/18/05 | APPROVED |
| --- | --- | --- | --- |

PAGE 2 OF 2



1
2

**Partial Transcript of December 7, 2006 Telephone Conversation**

**Between Congressman Earl Hilliard and Dr. Hoda Elemary**

3
4
5

**Dr. Elemary:** It greatly upset me to learn that Billy (Harbert) kept creating problems with your daughter-in-law, I mean that is just uncalled for when you are in a coma.

6

**Congressman Hilliard:** Yeah, he was, he was a bad apple.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**Dr. Elemary:** I fully understand your predicament not wanting to involve your children because whatever happened to you they are not part of the Harbert situation...I very much appreciate that you live in the State of Alabama and that these people have, you don't have to tell me, I know Bill Harbert... Let me put it to you that way Congrressman. the statements you stated to me during our last conversation, and the assurances and knowledge, it is a knowledge, it's not that we are thinking about it and scratching our heads, it is the knowledge that the Harberts, specifically Billy Harbert is behind this, is something that cannot be forgotten. Whether or not it is addressed depends entirely on the fact that if you do address it that you are entitled to a huge compensation. I understand why you do not want to address it and I am not in any way taking a position that you Congressman Hilliard need to join our suit, I certainly understand the risk involved in a place like Birmingham  I come often to Birmingham...risking innocent grandchildren lives perhaps that should be the priority. It is your call and I respect it, but the fact that Billy gets away again, it doesn't help, but you can't be the social police at the expense of your family's security. I take it that you made that decision and it is final.

**Congressman Hilliard:** Well, I think that's it. It takes so much away from you in

**Page One**

Partial Transcript between Congressman Earl Hilliard and Dr. Hoda Elemary

1
2  terms of your resources and we are a small family (legal)
3  firm trying to get back on our feet. I was knocked out of
4  service for a good year. It's been a year and a half since
5  the accident and I'm still struggling with medical bills and
6  I'm still creating them because I'm still have therapy. I
7  can't protect myself the way I used to. And I definitely
8  don't want any problems for my family.

**Dr. Elemary:**    That is understandable...you have never met him (Billy
9  Harbert)?

10 **Congressman Hilliard:** A looong time ago.

11 **Dr. Elemary:**    Did you meet with him?

12 **Congressman Hilliard:** Yes, I did.

**Dr. Elemary:**    If this happens to you then what's left of a nation that
13  upholds the laws. If it happened to an ordinary guy you
14  can say that's life in various parts of the world. But, a
15  Congressman of The United States should not have to go
16  through what you went through. Well, are you, are you
17  then forgiving Billy, or what's your position I don't know
18  if I am turning you into a Christian . I don't know if that
19  was what was intended by forgiveness. Well, I don't
20  know, <u>are you</u> <u>trying to forgive him</u> (Billy
21  Harbert)?

**Congressman Hilliard:**    <u>Well, I'm just trying to keep it out of my</u>
22  <u>mind.</u> <u>You know it is hard to forgive and</u>
23  <u>forget</u>. But when you are sick and still have
24  pains and hurt every now and then,

25

Page Two

Partial Transcript Between Congressman Earl Hilliard and Dr. Hoda Elemary

**Congress Hilliard:** you forget about it and try to keep your mind off of that and try not to even deal with the situation, because you know your just trying to get well. You always feel that once you get well you can handle anything that comes your way.

**Dr. Elemary:** I am sorry for what happened and I'm sorry that I was indirectly responsible. You understand I had no role in what happened to you, but I introduced you to the (Harbert) situation.

**Congressman Hilliard:** No one can blame you.

**Dr. Elemary:** I appreciate that, but it weighs heavy on my conscience when I think of the fact that this happened to you because I guess I brought Bill Harbert one day to your office.

Page Three