UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| DR. HODA ELEMARY, *pro se*, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Civil Action No. 07-654 (RCL) |
| ) | |
| PHILLIP HOLZMANN A.G., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION & ORDER**

Defendant Bill L. Harbert, Sr. ("Harbert") has moved for partial summary judgment [40], contending no genuine issue of material fact exists as to his affirmative defense to plaintiff Dr. Hoda Elemary's ("Elemary") civil RICO claim.[1] (*See* Mem. Supp. Mot. Partial Summ. J. at 1.)

A court should grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact" suitable for trial. FED. R. CIV. P. 56(c). To ascertain whether an issue involves "material" facts, a court must look to the substantive law on which the claim or defense rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if its resolution could establish an essential element of the nonmoving party's challenged claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he party

---

[1] Plaintiff originally raised seven claims against seven defendants. This Court dismissed two defendants for lack of service. (Order of Jan. 7, 2008 [27]; Order of Jan. 31, 2008 [29].) Four more dropped out on orders granting motions to dismiss. (Order of Jan. 8, 2008 [28]; Order of Feb. 6, 2008 [30].) At present, plaintiff's claims against Harbert for breach of contract, quantum meruit, and civil RICO remain pending. (*See* Order of Feb. 6, 2008 [30] at 2.)

seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion," and of identifying the evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Id.* at 323.  The court must accept the nonmoving party's evidence as true and must draw "all justifiable inferences" in his favor. *Anderson*, 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge . . . ." *Id.* at 255.  Yet "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." *Id.* at 252.  This standard is "'very close' to the 'reasonable jury' directed verdict standard," and despite their distinct procedural postures, "the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or . . . is [instead] so one-sided that one party must prevail as a matter of law." *Id.* at 250-51.

Here, Harbert argues the evidence establishes as a matter of law that Elemary knowingly and voluntarily released him from liability for her civil RICO claim in a settlement agreement signed in October 1994.  (*Id.*)  To evaluate this argument, the Court must lay out the factual allegations underlying Elemary's claim and Harbert's affirmative defense.

To state a claim for civil RICO, a plaintiff must plead that the defendant foreseeably caused her injury by conducting an enterprise through a pattern of racketeering activity, *Sedima S.P.R.L. v. Imrex, Co., Inc.*, 473 U.S. 479, 496 (1985), and that he "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993).  Here, Elemary alleged that Harbert "organized a phantom equipment-lending transaction" and arranged for a Liechtenstein corporation to act as the putative lessee. (Compl. at 40.)  To the extent Harbert devised and directed this scheme, he played "*some* part in directing the

[corporation's] affairs." *Reves*, 507 U.S. at 179. Elemary further averred that from September 1989 to December 1992, the corporation wired regular lease payments totaling more than $4,000,000 from a Swiss bank to a bank in Alabama. (Compl. at 41.) These payments allowed Harbert to conceal his own companies' involvement in a conspiracy to rig bids on United States government-funded construction projects in Egypt. (*Id.* at 40.) Elemary served as Harbert's liaison with the Egyptian government during the bidding process, and her influence proved crucial to his companies' success. (*Id.* at 10.) Some years later, when the fraud came to light, Elemary, allegedly an innocent dupe, was tainted by her close association with the schemers and consequently lost significant professional credibility and income. (*See* Compl. at 12, 13, 43; Incorp. Sched. to Compl. at iii-iv.) These allegations comprise the basis for her civil RICO claim, which this Court found was adequately pleaded. (*See* Mem. Op. of Feb. 6, 2008 [31].)

Harbert's affirmative defense to this claim stems from an event that occurred in 1994. That year, a dispute arose between Elemary and Harbert over an unrelated business matter. (*See* Release, Ex. 1 to Hoover Decl., Ex. A to Mot. for Partial Summ. J., ¶ E.) Each filed suit against the other ("the 1994 lawsuits"). (*Id.*) Prior to trial in either case, they entered into a written settlement agreement. (*See generally* Release.) Harbert's affirmative defense rests on a single paragraph in that document:

> Elemary . . . and Harbert . . . fully and forever remise, release, and discharge each other . . . . of and from any and all claims . . . of whatever kind or nature, in law, equity, or otherwise, whether known or unknown, hidden or concealed, which either Elemary . . . or Harbert . . . had, may have had, now have, or hereafter can, shall or may have against [the other] . . . for or by reason of any matter, cause, or thing whatsoever, to and including the date of this Settlement Agreement, with respect to any and all claims which were, or might, or could have been asserted in connection with [the 1994 lawsuits], and with respect to any and all claims which were, or might, or could have been asserted against [the other] as a result of [four

3

specific events].

(Release ¶ 3.)  Because the "phantom equipment-lending transaction" allegedly occurred *before* Elemary signed this release, Harbert contends the quoted language absolves him liability for civil RICO.  (Mem. Supp. Mot. Partial Summ. J. at 5.)

It is axiomatic that "[a] person can validly waive his right to proceed in court if the waiver of the right . . . was made knowingly and voluntarily." *Johnson v. Wash. Gas Light Co.*, 404 F. Supp. 2d 179, 181 n.2 (D.D.C. 2005) (Leon, J.).  Here, to succeed on his motion for summary judgment, Harbert must demonstrate that no dispute exists concerning the following, material facts: (1) Elemary signed the release; (2) she did so knowingly and voluntarily; and (3) the quoted language embraces Elemary's civil RICO claim.  *See Celotex Corp.*, 477 U.S. at 323.

In her opposition to Harbert's motion, Elemary contests only this last element, and she does so on two bases.  First, she argues that triable issues exist as to the scope of the release.  (Opp'n at 8.)  She contends that under California law, which the parties agree governs the release, extrinsic evidence is admissible to establish its scope.  (*Id.* (citing *Jefferson v. Dep't of Youth Authority*, 48 P.3d 423, 430 (Cal. 2002)).)  Here, Elemary insists, the parties did not intend the release to reach any claims other than those embodied in the 1994 lawsuits, and the Court should consider extrinsic evidence of this intent in construing the release's language.  (*Id.* at 8-9.) Though she cites repeatedly to an "Elemary Declaration," (*see id.* at 7-9), no such exhibit is appended to her filing.  Thus, even assuming that California law permits this Court to consider extrinsic matters in interpreting the release, Elemary has offered not even "a scintilla of evidence in support of [her] position" concerning the parties' intent.  *See Anderson*, 477 U.S. at 252.

4

Absent such evidence, the bare allegations in her brief do not create triable issues of fact, and the release's plain language must govern this Court's analysis. *See* FED. R. CIV. P. 56(c) (court should examine "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," to ascertain whether triable issues exist).

Second, and in the alternative, Elemary argues that the release's plain language does not reach her civil RICO claim. By its terms, she observes, the release applies only to "claims which were, or might, or could have been asserted in connection with [the 1994 lawsuits]." (*See* Opp'n at 10; Release ¶ 3.) A civil RICO claims accrues – and thus can be asserted – once a plaintiff knows or should know of his injury. *Rotella v. Wood*, 528 U.S. 549, 554 (2000). Elemary contends the injury giving rise to her claim – the harm to her reputation and loss of income she suffered when Harbert's bid-rigging activities were exposed – "were not suffered . . . until 2004 at the earliest." (Opp'n at 10.) Hence, she reasons, she could not have asserted her civil RICO claim in her 1994 lawsuit, and the release does not apply to that claim. (*See id.*)

In his motion, Harbert appears to concur with Elemary's construction of the release:

> Plaintiff alleges that the "phantom equipment-leasing scheme" that is the basis for that claim ended in December of 1992, more than twenty months prior to her execution of the Release on October 20, 1994. Because this factual basis existed prior to the filing of the lawsuits that are the subject of the Release, it is clear that *Plaintiff's Civil RICO claim could have been brought in one or both of those law suits*. Accordingly, the Release, *which released Plaintiff's claims that "could have been asserted" in either of the lawsuits*, operated to release Plaintiff's Civil RICO claim that she now attempts to revive.

(Mem. Supp. Mot. Partial Summ. J. at 5 (emphasis added).) His reply, however, sounds a different note. He now contends the release extends to three classes of claims: (1) those arising "'by reason of [a] matter' that occurred prior to the date of the Settlement Agreement"; (2) those

5

that were or could have been asserted in the 1994 lawsuits; and (3) those arising from the four specified events.  (Reply at 2-3 (quoting Release ¶ 3).)  He places Elemary's civil RICO claim in the first category.  (*See id.* at 3.)

On this Court's objective reading, however, the release's text does not support Harbert's reinterpretation.  The relevant paragraph begins with operative language: "Elemary . . . and Harbert . . . fully and forever remise, release, and discharge each other . . . . of and from any and all claims . . . ."  (Release ¶ 3.)  A string of modifying phrases follows, expressly delimiting the scope of this release: it applies to claims "of whatever kind or nature, in law, equity, or otherwise," arising "by reason of any matter, cause, or thing whatsoever" predating the release, regardless of whether the parties were then aware of them.  (*See id.*)  A final pair of modifying clauses – set off using a parallel construction – concludes the paragraph: the release applies (1) "with respect to any and all claims which were, or might, or could have been asserted in connection with [the 1994 lawsuits]," *and* (2) "with respect to any and all claims which were, or might, or could have been asserted against [the other] as a result of [four specific events]," whether or not such claims could have been asserted in the 1994 lawsuits.  (*See id.*)  Thus, although the release does apply to claims arising "by reason of" preexisting matters, this phrase does not describe a distinct category of covered claims.  Rather, the final two clauses modify the entire preceding sentence and delineate only two discrete categories of released claims.

Thus, the release's plain language limits its scope to claims that could have been brought in 1994 and claims arising from four specified events.  Harbert, who bears the initial evidentiary burden in seeking summary judgment as to his own affirmative defense, *see Celotex Corp.*, 477 U.S. at 323, has offered no evidence indicating that plaintiff's civil RICO claim falls into either

category. Though Elemary's complaint does not specify when her injury occurred (and thus when her claim accrued), (*see* Compl. ¶ 104), she represents that it happened after 1994, (Opp'n at 10). Further, it is undisputed that the United States did not begin investigating the bid-rigging scheme whose exposure caused that injury until June 1995.[2] *See generally United States ex rel. Miller v. Bill Harbert Int'l Construction, Inc.*, 505 F. Supp. 2d 1 (D.D.C. 2007) (Lamberth, J.) It would appear impossible for the fraud to have become publicly known before that date.

As observed above, "the party seeking summary judgment always bears the initial responsibility" to identify evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. Harbert, who points to no evidence supporting his contention that Elemary's civil RICO claim falls within the 1994 release's scope, has not met this burden.[3] Consequently, it is hereby

ORDERED that defendant's motion for partial summary judgment [40] is DENIED.

SO ORDERED.

Signed by Royce C. Lamberth, Chief Judge, August 18, 2008.

---

[2] Under Federal Rule of Evidence 201(c), the Court may take judicial notice of facts that are not subject to reasonable dispute. FED. R. EVID. 201(c). This Court presided over the *qui tam* action in which the United States recovered damages from Harbert's co-conspirators. The relator filed his initial complaint under seal in that case on June 30, 1995, triggering criminal and civil investigations, and the government had no knowledge of the fraud prior to that date.

[3] In light of this conclusion, the Court need not resolve the parties' dispute over the effect of a second paragraph in the release, in which each purportedly waived the application of California Civil Code section 1542, which essentially limits the scope of a general release to known or reasonably suspected claims. (*See* Release ¶ 4; Cal. Civ. Code § 1542 (West 2008)).